Constance Van Kley
Rylee Sommers-Flanagan
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com

Joel Krautter
  Netzer Law Office P.C.
  1060 S. Central Ave. Ste. 2
  Sidney, MT 59270
  (406) 433-5511
  joelkrautternlo@midrivers.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; and DONALD SEIFERT,<br><br>*Plaintiffs*,<br><br>vs.<br><br>CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State,<br><br>*Defendant.* | Cause No. _____<br><br>**Complaint**<br><br>Three-Judge Panel Requested |

INTRODUCTION

1. Montana's Public Service Commission ("PSC") districts are unconstitutionally malapportioned as a result of legislative indifference. Drawn in 2003, the boundaries have remained unchanged through two decennial censuses, even as population growth created a new federal congressional district.

2. Census data confirms what Montanans already know—the population is stable to declining along the Hi-Line and rural southeastern Montana; steadily growing in Billings and throughout western Montana; and exploding in Bozeman and surrounding areas.

3. Even so, the legislature has done nothing to modify PSC district boundaries, and the Montana Code does not require it to revise districts to ensure population equality.

4. Montana's current PSC districts violate the Fourteenth Amendment's one-person, one-vote rule. "Maximum deviations above 10% are presumptively impermissible." *Evenwel v. Abbott*, 578 U.S. ___, 136 S. Ct. 1120, 1124 (2016). Between PSC districts, however, deviations exceeding 10% are the norm. Today, the deviation between PSC District 3—comprising southwestern Montana—and District 1—extending from

Cascade County to the North Dakota border—reaches nearly 25%. The deviation between District 1 and District 5—which extends from Flathead County to Lewis and Clark County—is greater than 21%. Indeed, the population deviation between District 1 and *each other district* exceeds 10%.

5. If the legislature does not act—and no statutory provision requires it to—voters will be underrepresented in the 2022 election, in violation of the Fourteenth Amendment's one-person, one-vote rule.

6. Plaintiffs ask the Court to: declare Montana's current PSC district plan unconstitutional; enjoin Defendant from using the current district plan in the 2022 election and all future elections; and implement a new PSC district plan that meets the constitutional requirements of the one-person, one-vote rule.

## JURISDICTION AND VENUE

7. Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the

United States and involve the assertion of a deprivation, under color of state law, of a right under the Constitution of the United States.

8. This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and injunctive relief under Federal Rule of Civil Procedure 65.

9. This Court has personal jurisdiction over Defendant Christi Jacobsen. Defendant Jacobsen resides in and maintains her office in Montana.

10. Venue is proper in the Helena Division of the District of Montana because Lewis and Clark County, Montana, is home to Defendant Jacobsen and the Secretary of State's Office. 28 U.S.C. § 1391; D. Mont. L.R. 3.2(b).

11. Plaintiffs challenge "the apportionment of [a] statewide legislative body," and "[a] district court of three judges shall be convened." 28 U.S.C. § 2284(a). Plaintiffs therefore ask that this Court notify the Chief Judge of the United States Court of Appeals for the Ninth Circuit of this action and request that two judges be added to this Court. 28 U.S.C. § 2284(b).

## PARTIES

12. Plaintiffs are residents of Montana, citizens of the United States, and registered to vote in Montana.

13. Plaintiff Bob Brown is a resident of Flathead County, which falls within Public Service Commission District 5. Plaintiff Brown intends to vote in the 2022 election for District 5 Commissioner.

14. Plaintiff Hailey Sinoff is a resident of Gallatin County, which falls within Public Service Commission District 3. She intends to vote in the 2024 election for District 3 Commissioner.

15. Plaintiff Donald Seifert is a resident of Gallatin County, which falls within Public Service Commission District 3. He intends to vote in the 2024 election for District 3 Commissioner.

16. Defendant Christi Jacobsen is the Montana Secretary of State and the "chief election officer of [the] state." Mont. Code Ann. § 13-1-201. Her duties include receiving declarations for nomination to public office, Mont. Code Ann. § 13-10-201, certifying candidate names for inclusion on ballots, Mont. Code Ann. § 13-21-201, and certifying election results, Mont. Code Ann. § 2-15-401(f).

## FACTUAL ALLEGATIONS

### I. Structure of the Public Service Commission

17. The Montana legislature created the Board of Railroad Commissioners, the precursor to the modern PSC, in 1907. The Board was later expanded to oversee public utilities and renamed the Public Service Commission.

18. Before 1974, the PSC comprised three commissioners elected statewide. In 1974, the legislature expanded the PSC to include five commissioners, each elected from a regional district.

19. The PSC is a state executive branch agency and the head of the department of public service regulation. Mont. Code Ann. §§ 2-15-2601, 2-15-2602; *Williamson v. Mont. Pub. Serv. Comm.*, 272 P.3d 71, 82 (Mont. 2012). Prior to the Executive Reorganization Act of 1971, the PSC was considered "an arm of the legislature in the performance of its functions." *State Bar of Mont. v. Krivec*, 632 P.2d 707, 711 (Mont. 1981).

20. The PSC is "invested with full power of supervision, regulation and control of" certain private, investor-owned natural gas, electric, telephone, water, and private sewer companies that operate in Montana. Mont. Code Ann. §§ 69-3-101, 69-3-102. The PSC also

regulates certain motor carriers and oversees rail and pipeline safety regulations.

21. To carry out its statutory obligations, the PSC performs a wide range of duties, including, *inter alia*: rulemaking, Mont. Code Ann. §§ 69-3-103, 69-3-310; setting rates, Mont. Code Ann. §§ 69-3-301 through 69-3-308, 69-3-901 through 69-3-910; investigating utilities' business and affairs, Mont. Code Ann. § 69-3-106; hearing ratepayers' and utilities' complaints, Mont. Code Ann. §§ 69-3-321, 69-3-323; and regulating utilities' securities and liens, Mont. Code Ann. § 69-3-501.

## II. Commission Districting

22. Montana Code Annotated § 69-1-104 designates five PSC districts, "with one commissioner elected from each district." Neither § 69-1-104 nor any other state statute includes a mechanism for redistricting these PSC districts.

23. Following the 2000 Census, in 2003, the legislature amended § 69-1-104 to reapportion districts for the purpose of achieving population equality. The legislature has not since amended the statute, and the district boundaries are the same today as they were in 2003.

24. The map included below, published on the PSC's official website, shows the current PSC district boundaries. District 1 includes Blaine, Cascade, Chouteau, Daniels, Dawson, Fergus, Garfield, Hill, Judith Basin, Liberty, McCone, Petroleum, Phillips, Richland, Roosevelt, Sheridan, Toole, Valley, and Wibaux counties. Mont. Code Ann. § 69-1-104(1). District 2 includes Big Horn, Carbon, Carter, Custer, Fallon, Powder River, Prairie, Rosebud, Treasure, and Yellowstone counties. Mont. Code Ann. § 69-1-104(2). District 3 includes Beaverhead, Broadwater, Deer Lodge, Gallatin, Golden Valley, Jefferson, Madison, Meagher, Musselshell, Park, Silver Bow, Stillwater, Sweet Grass, and Wheatland counties. Mont. Code Ann. § 69-1-104(3). District 4 includes Granite, Lincoln, Mineral, Missoula, Powell, Ravalli, and Sanders counties. Mont. Code Ann. § 69-1-104(4). District 5 includes Flathead, Glacier, Lake, Lewis and Clark, Pondera, and Teton Counties. Mont. Code Ann. § 69-1-104(5).



## III. Disparities in Population

25. Decennial censuses have been conducted twice since 2003, in 2010 and again in 2020. Census data shows significant shifts in population between districts. Because the PSC has not been redistricted since 2003, the districts are now wildly disparate.

26. In 2020, the United States Census Bureau conducted the decennial census required by Article I, Section 2 of the United States Constitution. The Secretary of Commerce delivered the initial results

from the 2020 Census to the President on April 26, 2021. The Census Bureau released data to the states on August 12, 2021.

27. According to 2020 Census results, Montana's population is now 1,084,225. This marks an increase of nearly 100,000 residents since the 2010 Census, when 989,415 people resided in Montana, and an increase of more than 180,000 residents since the 2000 Census, when 902,195 people resided in Montana.

28. Population growth has been inconsistent between counties and between PSC districts. If Montana's population, as indicated by the 2020 Census, were divided equally into five PSC districts, 216,845 would reside in each district (the "ideal population").

29. The table below shows the population of each district as of the three most recent decennial censuses. The table also calculates the ideal population by census year and each district's deviation and percent deviation from the ideal population as of the 2020 Census.

|  | 2000 Population | 2010 Population | 2020 Population | Deviation from Ideal (2020) | Percent Deviation (2020) |
|---|---|---|---|---|---|
| District 1 | 184,217 | 181,393 | 186,616 | -30,229 | -13.94% |
| District 2 | 180,769 | 199,537 | 216,532 | -313 | -0.14% |
| District 3 | 179,569 | 204,851 | 239,748 | 22,903 | 10.46% |
| District 4 | 174,830 | 194,940 | 208,963 | -7,882 | -3.63% |
| District 5 | 182,810 | 208,694 | 232,366 | 15,521 | 7.16% |
| Ideal | 180,439 | 197,883 | 216,845 | 0 | 0 |

Complaint 10

30. The least populous district, District 1, includes only 186,616 residents, representing a deviation of negative 13.94% percent from the ideal population.

31. The most populous district, District 3, holds 239,748 Montanans, representing a deviation of 10.56% from the ideal population. The second most populous district, District 5, encompasses counties with a total population of 232,366 residents, representing a deviation of 7.16% from the ideal population.

32. The maximum population deviation—the deviation between District 3 and District 1—equals 24.5%. *See Evenwel*, 136 S. Ct. at 1124 n.2 ("Maximum population deviation is the sum of the percentage deviations from perfect population equality of the most- and least-populated districts.").

33. The population deviation between District 1 and every other district exceeds 10%. The population deviation between District 5 and District 1 is greater than 21%. The population deviation between District 2 and District 1 is 13.8%. The population deviation between District 4 and District 1 equals 10.31%.

## IV. Likelihood of a Legislative Solution

34. No Montana statute requires review of PSC district boundaries following release of decennial census data. No legislative interim committee is currently tasked with proposing new PSC districts.

35. The publication of 2010 Census data had no effect on the PSC districts. Then-State Senator Fred Thomas introduced Senate Bill 153 ("SB153") in 2013 to reapportion the PSC districts. S.B. 153, 63rd Leg., Reg. Sess. (Mont. 2013). Although the PSC initially supported SB153, it later withdrew its support, representing to the House Judiciary Committee in writing that "the complexity of the issues raised by this legislation require more time, research and deliberation than can be sufficiently addressed by the Montana State Legislature at this time." Then-Chairman Bill Gallagher continued: "By the time of the next elections, these census numbers will be 6 years old," suggesting that the 2013 bill was stale because it relied on data from 2010. SB153 died in committee.

36. In 2017, then-State Senator Sue Malek introduced Senate Bill 210, which would have changed the method of selecting commissioners

from election to appointment. S.B. 210, 65th Leg., Reg. Sess. (Mont. 2017). The bill died in committee.

37. Two bills were introduced in 2019 to create a process for redistricting the PSC to accommodate changes in population: Senate Bill 246 and Senate Bill 309. S.B. 246, 66th Leg., Reg. Sess. (Mont. 2019); S.B. 309, 66th Leg., Reg. Sess. (Mont. 2019). Under either proposal, a committee would review Census data during the 2021–2022 interim and make recommendations to the legislature to revise PSC districts. Both bills included provisions to ensure ongoing redistricting following publication of new Census data and to apportion districts "as equal as practicable based on population." S.B. 246 § 2; S.B. 309 § 2. Both bills died in committee.

38. A third bill was introduced in 2019 to request an interim study of the PSC, with the topics to be examined to include "options for providing for greater equalization among districts." H.J. 41, 66th Leg., Reg. Sess. (Mont. 2019). That bill, too, died in committee.

39. In 2021, State Senator Doug Kary introduced Senate Bill 160 ("SB160") to reorganize the PSC. S.B. 160, 67th Leg., Reg. Sess. (Mont. 2021). Had the bill passed, the method of selecting commissioners would

have changed from election to appointment. PSC Commissioner Tony O'Donnell testified in opposition to SB160 before the Senate Energy and Telecommunications Committee. Commissioner O'Donnell stated that, in his opinion, elections must be maintained to ensure that commissioners adequately "represent the public." *Hearing on SB160 Before the Senate Energy and Telecommunications Act*, 67th Leg. Reg. Sess. 16:05. SB160 died in process.

40. PSC Commissioners for Districts 1 and 5 will be elected in the 2022 election. Candidate filing opens on January 13, 2022, and closes on March 14, 2022. The legislature is not scheduled to be in session prior to the close of candidate filing. No other entity has been tasked with redistricting the PSC.

41. In the absence of action by this Court, if the legislature does not act quickly to redistrict the PSC, the 2022 election will be held using unconstitutional maps.

## CLAIM FOR RELIEF

### COUNT I: Violation of the Fourteenth Amendment to the United States Constitution

### 42 U.S.C. § 1983

42. A state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Under the Fourteenth Amendment's one-person, one-vote rule, a voter "has a constitutional right to have his vote counted with substantially the same weight as that of any other voter." *Hadley v. Junior Coll. Dist. of Met. Kansas City*, 397 U.S. 50, 53 (1970). Districts must be apportioned on a population basis. *Reynolds v. Sims*, 377 U.S. 533, 568 (1964).

43. A district plan with a maximum population deviation of 10% or greater establishes a prima facie case for violation of the Fourteenth Amendment. *Brown v. Thomson*, 462 U.S. 835, 842–43 (1983). The maximum population deviation between PSC districts nears 25%.

44. Montana's PSC districts are not apportioned according to population, and Montana has no plan to equalize population between districts.

45. Montana's PSC district plan unconstitutionally dilutes the votes of voters in overpopulated districts, including Plaintiffs.

46. Continued use of Montana's PSC district plan would violate Plaintiffs' Fourteenth Amendment rights.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a. Notify the Chief Judge of the United States Court of Appeals for the Ninth Circuit of this action and request that two other judges be designated to form a three-judge district court;

b. Declare that the current configurations of Montana's Public Service Commission districts, as defined in Montana Code Annotated § 69-1-104, violate the Fourteenth Amendment to the United States Constitution;

c. Enjoin Defendant from implementing or enforcing Montana's current Public Service Commission district plan;

d. Establish a schedule that will enable the Court to adopt and implement a new Public Service Commission district plan by a date certain;

e. Should the State fail to act, implement a new Public Service Commission district plan that complies with the Fourteenth Amendment to the United States Constitution;

    f.    Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

    g.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 6th day of December, 2021.

/s/*Constance Van Kley*
Constance Van Kley
Rylee K. Sommers-Flanagan
Upper Seven Law

/s/*Joel Krautter*
Joel Krautter
Netzer Law Office P.C.

*Attorneys for Plaintiffs*