Constance Van Kley
Rylee Sommers-Flanagan
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com

Joel G. Krautter
  Netzer Law Office P.C.
  1060 S. Central Ave. Ste. 2
  Sidney, MT 59270
  (406) 433-5511
  joelkrautternlo@midrivers.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; and DONALD SEIFERT, <br><br> *Plaintiffs*, <br><br> vs. <br><br> CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State, <br><br> *Defendant*. | Cause No. 6:21-cv-92-DWM <br><br><br> **Plaintiffs' Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction** |

# Table of Contents

Table of Authorities ...................................................................iv

Exhibit List ........................................................................ xiii

Introduction ...........................................................................1

Background ............................................................................2

I.    As one of relatively few states with an elected commission, one of very few with a districted commission, and one of only two states with a districted commission that has not been redistricted in the last ten years, Montana is an outlier. ................................................................. 2

II.   Montana's PSC performs a wide range of government duties, including quasi-legislative tasks, as a representative body serving Montanans' interests. ......... 5

III.  Despite extreme disparities between districts, the district boundaries have not been redrawn since 2003, and legislative history suggests that a fix is not forthcoming. ......................................................... 10

Legal Standard .......................................................................15

Argument .............................................................................16

I.    Plaintiffs are likely to succeed on the merits because the maximum population deviation exceeds 24%, and no justification exists for the State's failure to redistrict. .... 9

      A. The PSC is subject to the one-person, one-vote rule because Commissioners are popularly elected and exercise general governmental powers throughout Montana. ........................ 17

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

B. The maximum population deviation grossly exceeds 10%, triggering a presumption of unconstitutionality. ....................................... 20

C. Legislative history demonstrates that the deviation is caused by legislative indifference and administrative burden. ........................... 21

II. Plaintiff Brown and other voters within District 5 will be irreparably injured if District 5 candidates are certified prior to redistricting. ....................................................... 22

III. The balance of equities tips in Plaintiffs' favor because Plaintiffs demonstrate diligence, the Court will have time to adjudicate this case on the merits, and the State has failed to produce a legislative solution despite having both opportunity and power. ..................................................... 23

IV. An injunction is in the public interest because it would preserve democratic values and prevent uncertainty regarding the validity of candidates for the 2022 election. .......................................................................................... 27

Conclusion ......................................................................................... 28

## Table of Authorities

## Cases

*Ariz. Dream Act. Coal. v. Brewer*, 757 F.3d 1053, 1069

   (9th Cir. 2014) ..................................................................24

*Avery v. Midland Cty.*, 390 U.S. 474 (1968) ................................18, 19, 20

*Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ......................25, 26, 27

*Bd. of Estimate of City of N.Y. v. Morris*, 489 U.S. 688 (1989) .18, 19, 20

*Brown v. Thomson*, 462 U.S. 835, 842 (1983) .........................................21

*DeJulio v. Georgia*, 290 F.3d 1291, 1295 (11th Cir. 2002) ...............17, 19

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) .................................................23

*Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 (2016) ........................17, 20, 21

*Gorin v. Karpan*, 775 F. Supp. 1430, 1438 (D. Wyo. 1991) ...................22

*Hadley v. Junior Coll. Dist. of Met. Kansas City*, 397 U.S. 50, 56

   (1970) ........................................................................ 1, 16, 17, 18, 20

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421

   (2006) ..............................................................................5

*Mahan v. Howell*, 410 U.S. 315, 326 (1973) ............................................21

*Miss. State Conf. of NAACP v. Barbour*, 2011 WL 1870222 (S.D. Miss.

   May 16, 2011) ..................................................................25

*Brief in Support of Motion for Temporary Restraining Order
or Preliminary Injunction*

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ...............23, 27

*Nat'l Urban League v. Ross*, No. 20-cv-5799-LHK, 2020 WL 7488068, at

   *4 (N.D. Cal. Dec. 13, 2020) ...........................................................27

*Nken v. Holder*, 556 U.S. 418, 435 (2009) ...............................................27

*Reynolds v. Sims*, 377 U.S. 533, 579 (1964) ....................................22, 26

*S.C. State Conf. of the NAACP v. McMaster*, No. 3:21-cv-03302-JMC,

   2021 WL 5853172 (D.S.C. Dec. 9, 2021) ........................................25

*Schatzle v. Kirkpatrick*, 456 U.S. 966 (1982) ........................................25

*Shayer v. Kirkpatrick*, 541 F. Supp. 922, 925 (W.D. Mo. 1982) ............25

*State Bar v. Krivec*, 632 P.2d 707, 711 (1981) .........................................6

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

   (9th Cir. 2001) ................................................................................16

*Trump v. New York*, No. 20-366 (U.S. Nov. 30, 2020) ...........................28

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) .......24

*Vander Linden v. Hodges*, 193 F.3d 268, 273 (4th Cir. 1999) ...............17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ....15, 16, 28

## Montana Statutes

Mont. Code Ann. § 2-15-102 ........................................................6

Mont. Code Ann. § 2-15-102(11) ...............................................20

Mont. Code Ann. § 13-10-201(7) ...............................................24

Mont. Code Ann. § 13-10-325 ...................................................23

Mont. Code Ann. tit. 69, ch. 3 ....................................................6

Mont. Code Ann. § 69-1-102 ...............................................2, 3, 4

Mont. Code Ann. § 69-1-103 .....................................................18

Mont. Code Ann. § 69-1-104 .....................................................10

Mont. Code Ann. § 69-2-101 .....................................................19

Mont. Code Ann. § 69-3-101(1) ...................................................7

Mont. Code Ann. § 69-3-101(2) ...................................................7

Mont. Code Ann. § 69-3-102 ................................................7, 19

Mont. Code Ann. § 69-3-110 .....................................................19

Mont. Code Ann. § 69-3-301 .....................................................19

Mont. Code Ann. § 69-3-310 .....................................................19

Mont. Code Ann. § 69-3-321 .....................................................20

Mont. Code Ann. § 69-3-314 .....................................................19

Mont. Code Ann. § 69-3-1405 ...................................................19

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

Mont. Code Ann. § 69-12-209 ....................................................19

Mont. Code Ann. § 69-13-203 ....................................................19

## State Statutes and Constitutional Provisions

Ala. Code § 37-1-1 .........................................................................2

Ala. Code § 37-1-3 .........................................................................3

Alaska Stat. § 42.04.010 ............................................................2, 3

Ariz. Const. art. XV, § 1.B .........................................................3

Ark. Stat. § 23-2-101 ..................................................................2, 3

Cal. Const. art. XII........................................................................2, 3

Colo. Const. art. XXV ....................................................................2

Colo. Rev. Stat. Ann. § 40-2-101.................................................3

Conn. Gen. Stat. Ann. § 16-2.....................................................2, 3

Del. Code tit. 26, § 103 ...............................................................2, 3

D.C. Code § 1-2043.93 ..................................................................2

Fla. Stat. Ann. § 350.011 .............................................................2

Fla. Stat. Ann. § 350.031 .............................................................3

Ga. Code Ann. § 46-2-1 ..........................................................2, 3, 4, 5

Haw. Stat. § 269-2 .....................................................................2, 3

Idaho Code § 61-201 ..................................................................2, 3

*Brief in Support of Motion for Temporary Restraining Order
or Preliminary Injunction*

220 Ill. Comp. Stat. Ann. 5/2-101 ........................................................2, 3

Ind. Code § 8-1-1-2 ..............................................................................2, 3

Iowa Code Ann. § 474.1 .......................................................................2, 3

Kan. Stat. Ann. § 74-601 ......................................................................2, 3

Ky. Rev. Stat. Ann. § 278.040................................................................2

Ky. Rev. Stat. Ann. § 278.050................................................................3

La. Const. art. IV, § 21 .........................................................................2, 3

Me. Rev. Stat. Ann. tit. 35-A, § 103 ....................................................2

Me. Rev. Stat. Ann. tit. 35-A, § 105 ....................................................3

Md. Code Ann., Pub. Utils. § 2-101 ......................................................2

Md. Code Ann., Pub. Utils. § 2-102 ......................................................3

Mass. Gen. Laws Ann. ch. 25, § 1 .......................................................2

Mass. Gen. Laws Ann. ch. 25, § 2 .......................................................3

Mich. Comp. Laws Ann. § 460.1 ..........................................................2, 3

Minn. Stat. § 216A.01 ..........................................................................2

Minn. Stat. § 216A.03 ..........................................................................3

Miss. Code Ann. § 77-1-1 .....................................................................2, 3, 4

Miss. Code Ann. § 9-3-1 .......................................................................4

Mo. Ann. Stat. § 386.040 .....................................................................2

*Brief in Support of Motion for Temporary Restraining Order
or Preliminary Injunction*

Mo. Ann. Stat. § 386.050.................................................................................3

Neb. Rev. Stat. § 75-101 ..............................................................................2

Neb. Rev. Stat. § 75-101.01 ....................................................................3, 4

Nev. Rev. Stat. 703.020 ...............................................................................2

Nev. Rev. Stat. 703.030.................................................................................3

N.H. Rev. Stat. Ann. § 363:1 .......................................................................2

N.H. Rev. Stat. Ann. § 363:3 ........................................................................3

N.J. Stat. Ann. § 48:2-1 ............................................................................2, 3

N.M. Const. art. XI, § 1 .........................................................................2, 3, 4

N.M. Stat. Ann. §§ 1-3-13, 8-7-5, 8-7-12 ................................................3, 4

N.Y. Pub. Serv. Law § 4 ...........................................................................2, 3

N.C. Gen. Stat. § 62-10 .................................................................................3

N.C. Gen. Stat. § 62-30 .................................................................................2

N.D. Cent. Code § 49-01-02 .........................................................................2

Ohio Rev. Code Ann. § 4901.02 ...............................................................2, 3

Okla. Const. art. IX, § 15 ..............................................................................2

Or. Rev. Stat. § 756.014 ...........................................................................2, 3

66 Pa. Cons. Stat. Ann. § 301 ..................................................................2, 3

*Brief in Support of Motion for Temporary Restraining Order
or Preliminary Injunction*

R.I. Gen. Laws § 39-1-3 ................................................................. 2

R.I. Gen. Laws § 39-1-4 ................................................................. 3

S.C. Code § 58-3-10 ....................................................................... 2

S.C. Code § 58-3-20 ....................................................................... 3

S.D. Codified Laws § 49-1-2 ........................................................... 3

S.D. Codified Laws § 49-1-8 ........................................................... 2

Tenn. Code Ann. § 65-1-101 ....................................................... 2, 3

Tex. Util. Code § 12.001 ................................................................ 2

Tex. Util. Code § 12.051 ................................................................ 3

Utah Code § 54-1-1 ........................................................................ 3

Utah Code § 54-1-1.5 ..................................................................... 3

Va. Const. art. IX, § 1 .................................................................... 3

Vt. Stat. Ann. tit. 30, § 3 ............................................................... 3

Vt. Stat. Ann. tit. 30, § 3(b) .......................................................... 3

Wash. Rev. Code § 80.01.010 ......................................................... 3

Wis. Stat. § 15.06 .......................................................................... 3

Wis. Stat. § 15.79 .......................................................................... 3

W. Va. Code Ann. § 24-1-1 ............................................................. 3

W. Va. Code Ann. § 24-1-3 ............................................................. 3

*Brief in Support of Motion for Temporary Restraining Order*
*or Preliminary Injunction*

Wyo. Stat. Ann. § 37-2-10 ............................................................3

Wyo. Stat. Ann. § 37-2-101 ..........................................................3

## Legislative Materials

H.J. 41, 66th Leg., Reg. Sess. (Mont. 2019) ......................................10, 14

House Comm. on Judiciary, Hrg. on S.B. 153, 58th Leg., Reg. Sess.

(March 21, 2013) .......................................................14

S.B. 153, 63rd Leg., Reg. Sess. (Mont. 2013) ....................................12, 13

S.B. 160, 67th Leg., Reg. Sess. (Mont. 2021) .........................................15

S.B. 160 § 5, 67th Leg., Reg. Sess. (Mont. 2021) ......................................9

S.B. 210, 65th Leg., Reg. Sess. (Mont. 2017) ..........................................14

S.B. 220, 58th Leg., Reg. Sess. (Mont. 2003) ..........................................10

S.B. 246, 66th Leg., Reg. Sess. (Mont. 2019) ..........................................14

S.B. 309, 66th Leg., Reg. Sess. (Mont. 2019) ..........................................14

Sen. Comm. on Energy, Hrg. on S.B. 160, 67th Leg., Reg. Sess. (Jan. 25,

2013) .......................................................................9

Sen. Comm. on Energy & Telecommunications, Hrg. on S.B. 153 at

15:20, 58th Leg., Reg. Sess. (Feb. 19, 2013) ...................................10

Sen. Comm. on State Admin., Hrg. on S.B. 153, 58th Leg., Reg. Sess.

(Jan. 25, 2013).........................................................12, 13

*Brief in Support of Motion for Temporary Restraining Order*
*or Preliminary Injunction*

## Rules

Admin. R. Mont. tit. 38 ...............................................................19

D. Mont. Local Rule 7.1 .......................................................26, 30

La. State. Leg. J. Rule 21(D)(2) ................................................5

Fed. R. Civ. P. 65 ........................................................................15

## Other Materials

JenniferFielder.com, *Public Service* ........................................8

Mont. Pub. Radio, *James Brown: 2020 General Election Q&A* ..............8

Mont. Pub. Radio, *Tony O'Donnell: 2020 General Election Q&A* ...........9

Mont. Pub. Serv. Comm'n, *Public Participation* .......................................5

Mont. Pub. Serv. Comm'n, *What We Do for You: How Utility Rates Are Set* .......................................................................7

Mont. Pub. Serv. Comm'n, *What We Do for You: Jurisdiction*.................6

Paul Braun, Baton Rouge Pub. Radio, *Here's What You Need to Know as Louisiana Lawmakers Kick Off Redistricting Process* (Oct. 13, 2021) .......................................................................4

Wright & Miller, Fed. Practice & Proc. § 2951.......................................15

U.S. Census Bureau, *Montana: 2020 Census* (Aug. 25, 2021) ..............11

## Exhibit List

Montana State and County Population Totals ........................... Exhibit 1

Excerpts from U.S. Census Bureau,

     Montana: 2010 (Sept. 2012) ............................................ Exhibit 2

Current PSC Map ....................................................................... Exhibit 3

Map Showing Deviation as of 2013 ........................................... Exhibit 4

SB153 Proposed Map ................................................................. Exhibit 5

Letter from Chairman Bill Gallagher to Sen. State Admin.

     Comm. (Jan. 25, 2013) ........................................................ Exhibit 6

Letter from Chairman Bill Gallagher to House Judiciary

     Comm. (March 12, 2013) ..................................................... Exhibit 7

Affidavit of Bob Brown................................................................. Exhibit 8

## INTRODUCTION

> [W]henever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

*Hadley v. Junior Coll. Dist. of Met. Kansas City*, 397 U.S. 50, 56 (1970).

In Montana, commissioners to the Public Service Commission ("PSC") are selected from separate districts by popular election.  But the State has failed to ensure—or even to reasonably attempt—equality in population between districts.  Unchanged since 2003, despite confirmation of significant population shifts, the districting plan for the Montana PSC violates the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs therefore seek a temporary restraining order and/or preliminary injunction to prevent Montana Secretary of State Christi Jacobsen from certifying candidates for PSC Districts 1 and 5 pending this Court's determination of the PSC districting plan's constitutionality. Plaintiffs recognize that the 2022 primaries are close at hand and will

soon file a motion for summary judgment, which, if granted, would be dispositive. Because candidate filing opens on January 13, 2022, Plaintiffs request preliminary relief prior to that date. Plaintiffs welcome an expedited briefing or case management schedule.

## BACKGROUND

I. **As one of relatively few states with an elected commission, one of very few with a districted commission, and one of only two states with a districted commission that has not been redistricted in the last ten years, Montana is an outlier.**

All 50 states and the District of Columbia have a public service commission (or its equivalent) tasked with setting rates for and regulating utilities and other covered entities.[1] In 39 states,

---

[1] Ala. Code § 37-1-1; Alaska Stat. § 42.04.010; Ariz. Const. art. XV; Ark. Stat. § 23-2-101; Cal. Const. art. XII; Colo. Const. art. XXV; Conn. Gen. Stat. Ann. § 16-2; Del. Code tit. 26, § 103; D.C. Code § 1-2043.93; Fla. Stat. Ann. § 350.011; Ga. Code Ann. § 46-2-1; Haw. Stat. § 269-2; Idaho Code § 61-201; 220 Ill. Comp. Stat. Ann. 5/2-101; Ind. Code § 8-1-1-2; Iowa Code Ann. § 474.1; Kan. Stat. Ann. § 74-601; Ky. Rev. Stat. Ann. § 278.040; La. Const. art. IV, § 21; Me. Rev. Stat. Ann. tit. 35-A, § 103; Md. Code Ann., Pub. Utils. § 2-101; Mass. Gen. Laws Ann. ch. 25, § 1; Mich. Comp. Laws Ann. § 460.1; Minn. Stat. § 216A.01; Miss. Code Ann. § 77-1-1; Mo. Ann. Stat. § 386.040; Mont. Code Ann. § 69-1-102; Neb. Rev. Stat. § 75-101; Nev. Rev. Stat. 703.020; N.H. Rev. Stat. Ann. § 363:1; N.J. Stat. Ann. § 48:2-1; N.M. Const. art. XI, § 1; N.Y. Pub. Serv. Law § 4; N.C. Gen. Stat. § 62-30; N.D. Cent. Code § 49-01-02; Ohio Rev. Code Ann. § 4901.02; Okla. Const. art. IX, § 15; Or. Rev. Stat. § 756.014; 66 Pa. Cons. Stat. Ann. § 301; R.I. Gen. Laws § 39-1-3; S.C. Code § 58-3-10; S.D. Codified Laws § 49-1-8; Tenn. Code Ann. § 65-1-101; Tex. Util. Code

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

commissioners are appointed by the governor or selected by the legislature.[2] Voters in 11 states elect commissioners;[3] that number will drop to 10 in 2023, as a result of constitutional amendment in New Mexico, N.M. Const. art. XI, § 1.  Voters in six of those 11 states select

_____

§ 12.001; Utah Code § 54-1-1; Vt. Stat. Ann. tit. 30, § 3; Va. Const. art. IX, § 1; Wash. Rev. Code § 80.01.010; W. Va. Code Ann. § 24-1-1; Wis. Stat. § 15.79; Wyo. Stat. Ann. § 37-2-10.

[2] Alaska Stat. § 42.04.010; Ark. Stat. § 23-2-101(d)(1); Cal. Const. art. XII, § 1; Colo. Rev. Stat. Ann. § 40-2-101; Conn. Gen. Stat. Ann. § 16-2; Del. Code tit. 26, § 103; Fla. Stat. Ann. § 350.031; Haw. Stat. § 269-2; Idaho Code § 61-201; 220 Ill. Comp. Stat. Ann. 5/2-101; Ind. Code § 8-1-1-2; Iowa Code Ann. § 474.1; Kan. Stat. Ann. § 74-601; Ky. Rev. Stat. Ann. § 278.050; Me. Rev. Stat. Ann. tit. 35-A, § 105; Md. Code Ann., Pub. Utils. § 2-102; Mass. Gen. Laws Ann. ch. 25, § 2; Mich. Comp. Laws Ann. § 460.1; Minn. Stat. § 216A.03; Mo. Ann. Stat. § 386.050; Nev. Rev. Stat. 703.030; N.H. Rev. Stat. Ann. § 363:3; N.J. Stat. Ann. § 48:2-1; N.Y. Pub. Serv. Law § 4; N.C. Gen. Stat. § 62-10; Ohio Rev. Code Ann. § 4901.02; Or. Rev. Stat. § 756.014; 66 Pa. Cons. Stat. Ann. § 301; R.I. Gen. Laws § 39-1-4; S.C. Code § 58-3-20; Tenn. Code Ann. § 65-1-101; Tex. Util. Code § 12.051; Utah Code § 54-1-1.5; Vt. Stat. Ann. tit. 30, § 3(b); Va. Const. art. IX, § 1; Wash. Rev. Code § 80.01.010; W. Va. Code Ann. § 24-1-3; Wis. Stat. § 15.06; Wyo. Stat. Ann. § 37-2-101.

[3] Ala. Code § 37-1-3; Ariz. Const. art. XV, § 1.B; Ga. § 46-2-1; La. Const. art. IV, § 21; Miss. Code Ann. § 77-1-1; Mont. Code Ann. § 69-1-102; Neb. Rev. Stat. § 75-101.01; N.D. Const. art. V, § 2; Okla. Const. art. IX, § 15; S.D. Codified Laws § 49-1-2.  The New Mexico Constitution recently was amended to change the method of selecting commissioners from election to gubernatorial appointment, with the terms of the current commissioners expiring on January 1, 2023.  N.M. Const. art. XI, § 1. Previously, redistricting occurred on a regular basis, as provided by statutory law.  N.M. Stat. Ann. §§ 1-3-13, 8-7-5, 8-7-12.

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

commissioners to represent specific districts;[4] because New Mexico is one of the six, that number will drop to five in 2023, N.M. Const. art. XI. § 1.

Even among the six states with districted commissions, Montana's failure to redistrict is unusual. As indicated, New Mexico has reformed its commission via constitutional amendment, and the districts will be void in 2023. N.M. Const. art. XI. § 1. The Nebraska legislature already completed redistricting and updated its code to reflect the 2020 Census. Neb. Rev. Stat. § 75-101.01. According to media reporting, Louisiana currently is undertaking the task of redistricting multiple government bodies, including the Louisiana Public Service Commission. Paul Braun, Baton Rouge Pub. Radio, *Here's What You Need to Know as Louisiana Lawmakers Kick Off Redistricting Process* (Oct. 13, 2021), https://www.wrkf.org/news/2021-10-13/heres-what-you-need-to-know-as-louisiana-lawmakers-kick-off-redistricting-process. When completed, the Louisiana plan is likely to satisfy the Fourteenth Amendment: Louisiana requires its Commission districts to be "substantially equal in

---

[4] Ga. Code Ann. § 46-2-1; Miss. Code Ann. §§ 77-1-1, 9-3-1; Mont. Code Ann. § 69-1-102; Neb. Const. art. IV, § 20; N.M. Stat. Ann. §§ 1-3-13, 8-7-5, 8-7-12.

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

population," and a plan is rejected if it "has an absolute deviation of population which exceeds plus or minus five percent of the ideal district population."   La. State. Leg. J. Rule 21(D)(2).   Georgia has not redistricted its Public Service Commission following the 2020 Census, but the current map is not yet ten years old.  Ga. Code Ann. § 46-2-1; *see League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006) ("States operate under the legal fiction that their plans are constitutionally apportioned throughout the decade, a presumption that is necessary to avoid constant redistricting, with accompanying costs and instability.").  This leaves just two states—Mississippi and Montana— with stale maps and no discernible plans to remedy malapportioned districts.

## II.  Montana's PSC performs a wide range of government duties, including quasi-legislative tasks, as a representative body serving Montanans' interests.

By its own reckoning, Montana's PSC "directly affects the safety, well-being, and finances of Montanans from every corner of the state and all walks of life."   Mont. Pub. Serv. Comm'n, *Public Participation*, https://psc.mt.gov/Documents-Proceedings/Public-Participation   (last visited Dec. 13, 2021).   For example, the PSC sets rates for monopoly

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

power companies, licenses and regulates passenger motor carriers (e.g., taxis and Uber), promulgates rules to promote railway and pipeline safety, and regulates garbage trucks. *See generally* Mont. Code Ann. tit. 69, ch. 3; Mont. Pub. Serv. Comm'n, *What We Do for You: Jurisdiction*, https://psc.mt.gov/About-Us/What-We-Do (last visited Dec. 13, 2021).

Once considered "an arm of the legislature in the performance of its functions," the PSC currently is classified as an executive branch agency. *State Bar v. Krivec*, 632 P.2d 707, 711 (1981). Its duties are varied and include overlapping quasi-legislative and quasi-judicial functions. *Id.*; *see also* Mont. Code Ann. § 2-15-102 ("'Quasi-legislative function' generally means making or having the power to make rules or set rates and all other acts connected with or essential to the proper exercise of a quasi-legislative function."). The PSC has broad regulatory authority over most entities:

> that own, operate, or control any plant or equipment, any part of a plant or equipment, or any water right within the state for the production, delivery, or furnishing for or to other persons, firms, associations, or corporations, private or municipal:
>
> (a) heat;
>
> (b) street-railway service;

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

6

(c) light;

(d) power in any form or by any agency;

(e) [with the exception of municipal utilities], water for business, manufacturing, household use, or sewerage service, whether within the limits of municipalities or towns or elsewhere; [or]

(f) regulated telecommunications service.

Mont. Code Ann. § 69-3-101(1); *see* Mont. Code Ann. § 69-3-102 ("The commission is . . . invested with full power of supervision, regulation, and control of [regulated utilities].").[5]

Much of the PSC's work involves setting rates for regulated entities, and commissioners are conscious of their roles as popularly elected officials in negotiation with monopoly utilities. On its website, the PSC explains to its constituents: "The PSC must allow utilities an opportunity to earn just enough profit so that utility owners will have the incentive to provide adequate service to customers. No more, no less. It is this *public interest protection* that makes the PSC unique." Mont. Pub. Serv.

---

[5] The PSC does not regulate private water and sewer systems, county or municipal water or sewer districts, or certain non-operator owners of plants or equipment exempted from regulation by order of the PSC. Mont. Code Ann. § 69-3-101(2).

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*                                                      7

Comm'n, *What We Do for You: How Utility Rates Are Set*, https://psc.mt.gov/About-Us/What-We-Do (last visited Dec. 13, 2021) (emphasis added).

As democratically elected officials, commissioners campaign on platforms of consumer protection and representative democracy, selling themselves as advocates working on behalf of Montanans in dealing with too-powerful corporations.  For example, while campaigning for election during the 2020 cycle, all three successful candidates spoke directly to democratic ideals.  Now-Chair James Brown pledged that, if elected, he would "put the interests of Montana energy consumers ahead of out-of-state corporations and special interest groups."  Mont. Pub. Radio, *James Brown: 2020 General Election Q&A*, https://www.mtpr.org/ candidate-questionnaires/2020-10-09/james-brown-2020-general-election-q-a (Oct. 9, 2020).  On her campaign website, now-Commissioner Jennifer Fielder wrote: "Although each commissioner represents a different part of the state, the Commission makes decisions that affect nearly every household, business, and visitor in our state.  That is why, no matter where you live, it is important to support Jennifer!"  JenniferFielder.com, *Public Service*, https://jenniferfielder.com/about-psc (last visited Dec. 13,

2021).  And recently reelected Commissioner Tony O'Donnell pointed to his record, which he said "demonstrates better than any words that I am looking out for the ratepayers instead of favoring the shareholders of utilities. . . .  [R]atepayers, especially, those on fixed incomes and economically fragile, don't pay an extra penny over what they have to pay."  Mont. Pub. Radio, *Tony O'Donnell: 2020 General Election Q&A*, https://www.mtpr.org/candidate-questionnaires/2020-10-09/tony-odonnell-2020-general-election-q-a (Oct. 9, 2020).

Commissioner O'Donnell echoed these sentiments during the 2021 legislative session.  Senator Doug Kary sponsored a bill to provide for the appointment (rather than election) of commissioners, who would be required by law to have experience as an attorney, engineer, accountant, or financial professional.  S.B. 160 § 5, 67th Leg., Reg. Sess. (Mont. 2021). Speaking on behalf of the PSC, Commissioner O'Donnell testified in opposition to the measure, explaining that "what is guaranteed by someone being elected rather than appointed" is that elected officials better represent Montanans because they "have the nerve and the gumption to run for public office and stand before the public."  Sen. Comm. on Energy, Hrg. on S.B. 160, 67th Leg., Reg. Sess. (Jan. 25, 2013).

### III. Despite extreme disparities between districts, the district boundaries have not been redrawn since 2003, and legislative history suggests that a fix is not forthcoming.

The Montana Legislature drew the current PSC district map in 2003 to incorporate the results of the 2000 Census and to balance the population between PSC districts.[6]  Mont. Code Ann. § 69-1-104, S.B. 220, 58th Leg., Reg. Sess. (Mont. 2003) ("An Act Revising the Public Service Commission Districts for the Purpose of Population Equality . . . ."). Since 2003, however, Census data has been published twice, and the legislature has failed to redistrict.  Indeed, the legislature has rebuffed efforts not only to redistrict but even to study the issue between legislative sessions. *See* H.J. 41, 66th Leg., Reg. Sess. (Mont. 2019).

Now, because of the legislature's failure to act, the PSC districts are wildly disparate, and there is no plan to correct the ensuing constitutional harm.  If divided into five equal districts, Montana's total population of 1,084,225 would create an ideal district of 216,845

---

[6] Prior to 2003, the PSC had never been redistricted.  As Senator Fred Thomas later testified, legislative services division staff noticed the malapportionment revealed by the 2000 census and brought it to his attention, prompting him to sponsor the 2003 redistricting bill.  Sen. Comm. on Energy & Telecommunications, Hrg. on S.B. 153 at 15:20, 58th Leg., Reg. Sess. (Feb. 19, 2013).

residents.  *U.S. Census Bureau, Montana: 2020 Census* (Aug. 25, 2021), https://www.census.gov/library/stories/state-by-state/montana-population-change-between-census-decade.html; *see* Ex. 1, Montana State and County Population Totals.  The actual districts diverge significantly from that ideal.  The least populous district, District 1, includes only 186,616 residents, representing a deviation of negative 13.94% percent from the ideal population.  The most populous district, District 3, holds 239,748 Montanans, representing a deviation of 10.46% from the ideal population.  The second most populous district, District 5, encompasses counties with a total population of 232,366 residents, representing a deviation of 7.16% from the ideal population.  The table below shows each district's population as of the three most recent decennial censuses and calculates each district's deviation and percent deviation from the ideal population as of the 2020 Census.

| | 2000 Population | 2010 Population | 2020 Population | Deviation from Ideal (2020) | Percent Deviation (2020) |
|---|---|---|---|---|---|
| District 1 | 184,217 | 181,393 | 186,616 | -30,229 | -13.94% |
| District 2 | 180,769 | 199,537 | 216,532 | -313 | -0.14% |
| District 3 | 179,569 | 204,851 | 239,748 | 22,903 | 10.46% |
| District 4 | 174,830 | 194,940 | 208,963 | -7,882 | -3.63% |
| District 5 | 182,810 | 208,694 | 232,366 | 15,521 | 7.16% |
| Ideal | 180,439 | 197,883 | 216,845 | 0 | 0 |

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

Ex. 1, Montana State and County Population Totals; Ex. 2, Excerpts from

*U.S. Census Bureau, Montana: 2010* (Sept. 2012)[7]; Ex. 3, Current PSC

Map.

Notably, by the time of the 2010 Census, the PSC districts already

fell far from the ideal. This much is unsurprising. What is surprising is

what happened next: nothing, even though the legislature knew about

the problem. Senator Fred Thomas—the same legislator who sponsored

the 2003 bill—introduced Senate Bill 153 ("SB153") in 2013, asking the

legislature to not only redistrict the PSC but also to create a legal

mechanism to ensure regular redistricting. S.B. 153, 63rd Leg., Reg.

Sess. (Mont. 2013). In support of the bill, Senator Thomas shared a map

showing the deviation between districts as of the 2010 Census. Sen.

Comm. on State Admin., Hrg. on S.B. 153, 58th Leg., Reg. Sess. (Jan. 25,

2013); Ex. 4, Map Showing Deviation as of 2013.[8] Even then, District 1

deviated from the ideal population by negative 8.33%, and District 5

exceeded the ideal population by 5.46%, resulting in a maximum

---

[7] The full report is available at https://www2.census.gov/library/publications/decennial/2010/cph-2/cph-2-28.pdf.

[8] Exhibits to the January 25, 2013 hearing are available for download from https://leg.mt.gov/bills/2013/minutes/senate/130125STS_Sm1.pdf.

*Brief in Support of Motion for Temporary Restraining Order*
*or Preliminary Injunction*                                          12

deviation of 13.79%.  *See* Ex. 4, Map Showing Deviation as of 2013. Senator Thomas proposed a modest change to the district boundaries which would have reduced the maximum deviation to less than 3% while continuing to use county lines as boundaries.  Sen. Comm. on State Admin., Hrg. on S.B. 153, 58th Leg., Reg. Sess. (Jan. 25, 2013); Ex. 5, SB153 Proposed Map.  The bill also would have assigned a committee the task of studying and proposing changes to the PSC districts "[i]n each interim following the release of county population figures for each federal population census."  SB153 § 1.

The PSC initially supported SB153 unanimously "as to the intent of the equalization of the population within the Commission districts." Sen. Comm. on State Admin., Hrg. on S.B. 153, 58th Leg., Reg. Sess. (Jan. 25, 2013); Ex. 6, Letter from Chairman Bill Gallagher to Sen. State Admin. Comm. (Jan. 25, 2013).  Then-Chair Bill Gallagher testified as a proponent before the State Administration Committee on January 25, 2013.  Sen. Comm. on State Admin., Hrg. on S.B. 153, 58th Leg., Reg. Sess. (Jan. 25, 2013).  Less than two months later, however, the PSC withdrew its support, writing that it "strongly believe[s] that now is not the time to be addressing this matter.   There are no clearly

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

demonstrated[,] current population discrepancies existing between the districts." House Comm. on Judiciary, Hrg. on S.B. 153, 58th Leg., Reg. Sess. (March 21, 2013); Ex. 7, Letter from Chairman Bill Gallagher to House Judiciary Comm. (March 12, 2013).[9]   Pointing to growth in the Bakken region, then-Chair Gallagher continued: "By the time of the next elections, these census numbers will be 6 years old, and will not take into account any population shifts that have, or are likely to occur." *Id.*

Since 2013, there have been several attempts to redistrict or otherwise reform the PSC. Each has failed. *See* S.B. 210, 65th Leg., Reg. Sess. (Mont. 2017) (seeking to change method of selecting commissioners to appointment); S.B. 246, 66th Leg., Reg. Sess. (Mont. 2019) (seeking to establish interim committee to propose redistricting following publication of 2020 Census data and ensure ongoing reapportionment); S.B. 309, 66th Leg., Reg. Sess. (Mont. 2019) (same); H.J. 41, 66th Leg., Reg. Sess. (Mont. 2019) (seeking to create interim study for purposes of proposing redistricting legislation).

---

[9] This letter and other exhibits to the March 12, 2013 hearing are available for download from https://leg.mt.gov/bills/2013/minutes/senate/130125STS_Sm1.pdf.

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

14

Most recently, during the 2021 legislative session, Senator Doug Kary introduced a bill that would have changed the method of selecting commissioners from election to appointment. S.B. 160, 67th Leg., Reg. Sess. (Mont. 2021). Appearing on behalf of the PSC, Commissioner Tony O'Donnell testified in opposition to the bill, *see supra* p. 9, shortly before the bill died.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

A temporary restraining order operates to prevent irreparable injury "before the hearing for a preliminary injunction required by Rule 65(a) can be held." Wright & Miller, Fed. Practice & Proc. § 2951. Where, as here, "the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary

injunction and the proceeding is not subject to any special requirements." *Id.* The standard for a temporary restraining order is the same as for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

## ARGUMENT

The *Winter* elements are satisfied, and Plaintiffs respectfully request that the Court grant their motion for relief prior to January 13, 2021. <u>First</u>, Plaintiffs have a strong case on the merits because the State cannot justify the presumptively unconstitutional maximum population deviation. <u>Second</u>, Plaintiff Brown, like all voters in District 5, will suffer irreparable injury if Defendant Jacobsen is not enjoined from certifying candidates in reliance on the unconstitutional map. <u>Third</u> and <u>fourth</u>, because Plaintiffs make a strong showing of likely constitutional harm, the balance of equities tips in Plaintiffs' favor and an injunction is in the public interest.

**I.    Plaintiffs are likely to succeed on the merits because the maximum population deviation exceeds 24%, and no justification exists for the State's failure to redistrict.**

Plaintiffs are likely to succeed on the merits of their claim.  As a popularly elected body that performs government duties on behalf of all

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

16

Montanans, the PSC is subject to the one-person, one-vote rule. *Hadley*, 397 U.S. at 53. Thus, PSC districts must be apportioned roughly equally, and a maximum population deviation exceeding 10% is presumptively unconstitutional. *Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 (2016). Because the maximum population deviation is greater than 24%, the PSC map is presumptively unconstitutional. *Id.* The State will be unable to overcome the presumption of unconstitutionality—legislative history conclusively demonstrates that there is no rational justification for the malapportionment.

### A. The PSC is subject to the one-person, one-vote rule because Commissioners are popularly elected and exercise general governmental powers throughout Montana.

The one-person, one-vote rule applies "where the elected officials exercise[] 'general governmental powers over the entire geographic area served by the body.'" *Hadley*, 397 U.S. at 53. *Hadley* created a two-part test for determining whether the one-person, one-vote principle applies: the official must (1) be popularly elected and (2) perform "governmental functions." *Id.* at 56; *see DeJulio v. Georgia*, 290 F.3d 1291, 1295 (11th Cir. 2002); *Vander Linden v. Hodges*, 193 F.3d 268, 273 (4th Cir. 1999). There is no question here that Commissioners are popularly elected, *see*

Mont. Code Ann. § 69-1-103, so the operative question is whether the PSC performs governmental functions.

Although there is no exhaustive list of government functions subjecting entities to the one-person, one-vote rule, precedent provides helpful guidance. The Supreme Court has applied the rule to the elections of: junior college trustees, *Hadley*, 397 U.S. at 53–54; county commissioners, *Avery v. Midland Cty.*, 390 U.S. 474 (1968); and members of the New York City Board of Estimate, *Bd. of Estimate of City of N.Y. v. Morris*, 489 U.S. 688 (1989).

These officials perform varied governmental functions, including: "levy[ing] and collect[ing] taxes, issu[ing] bonds with certain restrictions, hir[ing] and fir[ing] teachers, mak[ing] contracts, collect[ing] fees, supervis[ing] and disciplin[ing] students, pass[ing] on petitions to annex school districts, acquir[ing] property by condemnation, and in general manag[ing] the operations of the junior college," *Hadley,* 397 U.S. at 53–54 (junior college trustees); appointing and hiring officials, making contracts, "administer[ing] the county's welfare system, perform[ing] numerous duties in connection with elections, set[ting] the county tax rate, issu[ing] bonds, adopt[ing] the county budget, and serv[ing] as a

board of equalization for tax assessments," *Avery,* 390 U.S. at 476 (county commissioners); and "calculating sewer and water rates, tax abatements, and property taxes on urban development projects, . . . manag[ing] all city property[,] exercise[ing] plenary zoning authority[,] dispens[ing] all franchises and leases on city property[,] fix[ing] generally the salaries of all officers and persons compensated through city moneys[,] and grant[ing] all city contracts," *Morris*, 489 at 695. *See DeJulio*, 290 F.3d at 1295.

For its part, Montana's PSC performs a wide range of government functions, including, *inter alia*: setting rates for utilities, Mont. Code Ann. § 69-3-301, *et seq.*; promulgating rules to govern rate-setting, Mont. Code Ann. §§ 69-2-101, 69-3-310; promulgating rules to regulate natural gas and electric companies, railroads, waste hauling companies, passenger transportation companies, investor-owned water companies, telecommunications companies, and intrastate pipelines, Mont. Code Ann. § 69-3-102; *see generally* Admin. R. Mont. tit. 38; licensing regulated entities, *see, e.g.*, Mont. Code Ann. §§ 69-3-1405, 69-12-314; exercising enforcement authority over regulated entities, *see, e.g.*, Mont. Code Ann. §§ 69-3-110, 69-12-209, 69-13-203; and investigating consumer

complaints against regulated entities, Mont. Code Ann. § 69-3-321.  Like the duties deemed "governmental" in *Hadley*, *Avery*, and *Morris*, these duties are undertaken by the PSC on behalf of its constituents.

For purposes of the Fourteenth Amendment, there is no meaningful "distinction between authority exercised by [the legislature] and the general governmental powers delegated by [the legislature] to" the PSC. *Morris*, 489 U.S. at 693.  Further, unlike the entities considered in *Hadley*, *Avery*, and *Morris*, the PSC operates statewide and performs duties expressly classified as "quasi-legislative."  Mont. Code Ann. § 2-15-102(11).  The PSC is subject to the one-person, one-vote rule.

### B. The maximum population deviation grossly exceeds 10%, triggering a presumption of unconstitutionality.

"Maximum population deviation is the sum of the percentage deviations from perfect population equality of the most- and least-populated districts."  *Evenwel*, 136 S. Ct. at 1125 n.2.  "Maximum deviations above 10% are presumptively impermissible."  *Id.* at 1124.

The most populated PSC district is District 3, comprising southwestern Montana (including Gallatin County).  *See* Ex. 1, Montana State and County Population Totals; Ex. 3, Current PSC Map.  239,748

individuals reside in District 3, representing a 10.46% deviation from the ideal district size of 216,845.   Ex. 1, Montana State and County Population Totals.   The least populated district is District 1, which stretches from Cascade and Toole counties to the North Dakota border. *Id.*   186,616 individuals reside in District 1, representing a 13.94% deviation from the ideal district size.   *Id.*   The maximum population deviation, calculated using the formula outlined in *Evenwel*, exceeds 24%.   Montana's PSC districting plan therefore is "presumptively unconstitutional."   *Evenwel*, 136 S. Ct. at 1124.

### C. Legislative history demonstrates that the deviation is caused by legislative indifference and administrative burden.

The State cannot overcome the presumption of unconstitutionality. The legislature did not choose to create unequal districts to serve a legitimate government interest. *See, e.g.*, *Mahan v. Howell*, 410 U.S. 315, 326 (1973) (maximum deviation exceeding 10% permissible in light of legislative intent to preserve county and city boundaries); *Brown v. Thomson*, 462 U.S. 835, 842 (1983).   Rather, the legislature drew constitutional boundaries in 2003, failed to create a mechanism for redistricting, and rejected later attempts to redistrict or otherwise

remedy the disparities caused by a shifting population.  The reason for the malapportionment is either inertia or political pressure, neither of which justifies violating Montanans' Fourteenth Amendment rights.

"[T]he state must prove that it made an honest and good faith effort to construct legislative districts as nearly of equal population as is practicable by showing that the population inequalities are unavoidable or justified upon any legally acceptable ground." *Gorin v. Karpan*, 775 F. Supp. 1430, 1438 (D. Wyo. 1991).  The State has made no such effort.  No "rational state policy" can excuse the Montana legislature's indifference to the Fourteenth Amendment.  *Reynolds v. Sims*, 377 U.S. 533, 579 (1964).  Instead, as the legislative history conclusively demonstrates, the legislature has rejected every attempt at redistricting.  *See supra* pp. 10–15.

## II.   Plaintiff Brown and other voters within District 5 will be irreparably injured if District 5 candidates are certified prior to redistricting.

Plaintiff Brown intends to vote in the 2022 election for District 5 Commissioner.  *See* Ex. 8, Aff. of Bob Brown. ¶¶ 4–5 (Dec. 16, 2021).  232,366 Montanans reside in District 5—15,521 (7.16%) more than the ideal population, and 45,750 more than the population of District 1, the

other district in play in the 2022 election.  Ex. 1, Montana State and County Population Totals.  The population deviation between the two districts exceeds 20%.

If the election goes forward pursuant to the unconstitutionally malapportioned map, Plaintiff Brown's and other District 5 residents' votes will be significantly diluted.  "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The certification of candidates prior to the Court's decision on the merits will cause confusion to voters and potential candidates and increase the likelihood of injury if the district lines later are drawn in compliance with the Fourteenth Amendment.

Potential candidates presently residing in Districts 1 and 5 may not be eligible for election if the Court ultimately grants relief.  Plaintiffs seek to enjoin candidate certification now to avoid further complications in the event of Plaintiffs' success on the merits.  *See* Mont. Code Ann. § 13-10-325 (providing that a candidate who withdraws may not receive a refund of fees paid).

**III.    The balance of equities tips in Plaintiffs' favor because Plaintiffs demonstrate diligence, the Court will have time to adjudicate this case on the merits, and the State has failed to produce a legislative solution despite having both opportunity and power.**

"By establishing a likelihood that [the map] violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act. Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).  It is inequitable "to allow the state . . . to violate the requirements of federal law."  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

What is more, the relief sought through this motion is modest—Plaintiffs ask that the Court enjoin Secretary Jacobsen from certifying candidates for PSC Districts 1 and 5, both of which will be elected in 2022. Candidate filing is scheduled to open on January 13, 2022, and to close on March 14, 2022.  Mont. Code Ann. § 13-10-201(7).  Plaintiffs intend to file a dispositive motion for summary judgment on a timeline that will allow decision prior to the filing cutoff of March 14, 2022.

The State has had more than enough time to redraw district lines and to create a mechanism for redistricting.  Although the issue has been brought before the legislature with considerable frequency, the

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

legislature has refused to act.  No interim committee currently is tasked with studying the PSC districting plan or preparing recommendations. *See, e.g., S.C. State Conf. of the NAACP v. McMaster*, No. 3:21-cv-03302-JMC, 2021 WL 5853172, at *1 (D.S.C. Dec. 9, 2021) (convening three-judge panel to hear districting challenge on a parallel timeline because the South Carolina legislature currently is adjourned).  The current map is over 18 years old, and there is no plan to fix it.  *See, e.g., Miss. State Conf. of NAACP v. Barbour*, 2011 WL 1870222 (S.D. Miss. May 16, 2011) (allowing 2011 election to proceed using 2002 map because it was not yet 10 years old); *see also Shayer v. Kirkpatrick*, 541 F. Supp. 922, 925 (W.D. Mo. 1982) (resuming stayed proceeding when state legislature adjourned special legislative session without redistricting), *aff'd sub. nom Schatzle v. Kirkpatrick*, 456 U.S. 966 (1982).

Meanwhile, Plaintiffs have demonstrated reasonable diligence in seeking a preliminary injunction. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ("unnecessary, years-long delay in asking for preliminary injunctive relief weighed against [plaintiffs'] request").  The Census Bureau released data to Montana less than four months before Plaintiffs filed this lawsuit.  *See McMaster*, 2021 WL 5853172 at *5

("[T]he timeframe for action is necessarily compressed because the publication of the 2020 census results was delayed.  If it becomes apparent by January that no constitutionally appropriate redistricting maps have been proposed, the federal court has a duty to step in.").

The present motion was filed less than two weeks after the complaint and prior to Defendant's deadline for appearance.  Secretary Jacobsen will respond to this motion on or before January 3, 2021, at which time the motion will be fully briefed.   D. Mont. L.R. 7(d)(1)(D).  Because the issues relevant to Plaintiffs' sole claim for relief are purely legal and relatively straightforward, Plaintiffs intend to file a motion for summary judgment without delay.  This case can be fully resolved on the merits in time to prevent constitutional harm during the 2022 election cycle.

Finally, there is no "legal uncertainty" regarding the availability of the relief ultimately sought. *Benisek*, 138 S. Ct. at 1945.  Federal courts may draw district maps to protect voters' constitutional rights.  *See Reynolds*, 377 U.S. at 585.  This matter presents neither questions of fact nor novel issues of law.

## IV.   An injunction is in the public interest because it would preserve democratic values and prevent uncertainty regarding the validity of candidates for the 2022 election.

A preliminary injunction would also serve the public interest by preventing constitutional harm. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[Harm to the opposing party and the public interest[] merge when the Government is the opposing party."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (cleaned up).

The "public interest in orderly elections" likewise supports Plaintiffs' motion. *Benisek*, 138 S. Ct. at 1944. Certifying candidates for election to malapportioned districts will create confusion if the candidates are no longer eligible for election in the district. "[J]udicial relief is 'more manageable at an earlier stage'" of this case "because redoing apportionment or redistricting would 'be like having to unscramble the eggs.'" *Nat'l Urban League v. Ross*, No. 20-cv-5799-LHK, 2020 WL 7488068, at *4 (N.D. Cal. Dec. 13, 2020) (quoting Oral Arg. Tr. at 8:19–15, *Trump v. New York*, No. 20-366 (U.S. Nov. 30, 2020)) (brackets removed).

* * *

Each of the four *Winter* factors are satisfied: Plaintiffs are likely to succeed on the merits of their claim; an injunction would prevent irreparable injury to Plaintiff Brown and other voters in the 2022 election; the balance of equities tips in favor of Plaintiffs; and an injunction would serve the public interest.

## CONCLUSION

Plaintiffs respectfully ask the Court to (1) grant their motion for a temporary restraining order and/or preliminary injunction and (2) enjoin Secretary Jacobsen from certifying candidates for PSC Districts 1 and 5 pending a final determination of this matter.

Respectfully submitted this 17th day of December, 2021.

/s/ *Constance Van Kley*
Constance Van Kley
Rylee Sommers-Flanagan
Upper Seven Law

/s/ *Joel G. Krautter*
Joel G. Krautter
Netzer Law Office P.C.

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(2)(E), I hereby certify that this brief includes 5,643 words, excluding caption, certificates, tables, and exhibit index.  The word count was calculated using Microsoft Word.

/s/ *Constance Van Kley*
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document was served upon the following on December 17, 2021, by certified mail:

Montana Secretary of State
Montana Capitol Building, Rm 260
P.O. Box 202801
Helena, MT 59620-2801

Office of the Attorney General
Justice Building, Third Floor
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

I further certify that courtesy copies were provided via email to chief legal counsel for the Montana Secretary of State and to the Montana Solicitor General.

/s/ *Constance Van Kley*
Attorney for Plaintiffs

*Brief in Support of Motion for Temporary Restraining Order or Preliminary Injunction*