IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BOB BROWN, HAILEY SINOFF, and DONALD SEIFERT,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State,<br><br>Defendants. | CV 21–92–H–DWM<br><br><br>ORDER |

Plaintiffs Bob Brown, Hailey Sinoff, and Donald Seifert (collectively "Plaintiffs")[1] allege that the districts established by Montana's Public Service Commission ("the Commission") are malapportioned in violation of the Fourteenth Amendment of the United States Constitution. (Doc. 1.) According to Plaintiffs, the Commission's five districts do not reflect the realities of Montana's population distributions, and these distortions run afoul of the one person, one vote principle. (*Id.* ¶¶ 4, 42–46.) Defendant Christi Jacobsen, who has been sued in her official capacity as the Montana Secretary of State, has not yet appeared in the case. Plaintiffs now move for a temporary restraining order or preliminary injunction.

---

[1] Plaintiff Brown is a resident of District 5, while Defendants Sinoff and Seifert are residents of District 3. (Doc. 1 at ¶¶ 13–15.)

1

(Doc. 5.) Specifically, Plaintiffs seek a temporary restraining order and/or a preliminary injunction to prevent Jacobsen from certifying candidates for commissioner in Districts 1 and 5 pending a determination on the constitutionality of the Commission's districting plan. (Doc. 6 at 14.) According to Plaintiffs, "Commissioners for Districts 1 and 5 will be elected in the 2022 election." (Doc. 1 at ¶ 40.) Plaintiffs state that candidate filing for commissioner in both of these districts opens on January 13, 2022, and they consequently request preliminary relief prior to that date. (*Id.* at 15.)

I. **Threshold Requirements for Issuing a Temporary Restraining Order**

The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Stulbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant must show a likelihood of success on the merits, a likelihood of irreparable injury, that the balance of equities favors preliminary relief, and that preliminary relief is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). However, Rule 65 of the Federal Rules of Civil Procedure imposes two additional requirements if no notice has been provided to the adverse party. Specifically,

> [t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

2

>  (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "[C]ircumstances justifying the issuance of an ex parte order are extremely limited." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

Here, Plaintiffs assert that the opposing party has "actually receive[d] notice of the application for a restraining order," and so "the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." (Doc. 6 at 28–29 (quotation marks omitted).) Plaintiffs' assertion is consistent with the 1966 advisory committee notes, which clarify that "subdivision [(b)] is amended to make it plain that informal notice, which may be communicated to the attorney rather than the adverse party, is to be preferred to no notice at all." Fed. R. Civ. P. 65(b) advisory committee's note to 1966 amendment. Plaintiffs' brief includes a certificate of service that the Office of the Secretary of State and the Office of the Attorney General were served by certified mail with the application for a temporary restraining order. (*Id.* at 42.) Additionally, Plaintiffs filed this action on December 6, 2021, (Doc. 1), and the Complaint was served on the Offices of the Secretary of State and the Attorney General on December 8, 2021, (Doc. 2). Thus, Plaintiffs' application for a temporary restraining order comes nearly two weeks after Jacobsen received notice that the case was pending against her, and this

3

timing (as well as Federal Rule of Civil Procedure 65(b)(4)) alleviates the concern that Jacobsen will not have an opportunity to respond. Ultimately, given that Jacobsen has thus received written notice—albeit informally—the additional requirements imposed under Rule 65(b) do not apply.

## II.  *Winter* Evaluation

As stated above, where the inquiry for a temporary restraining order is identical to the inquiry for a preliminary injunction—as is the case here—Plaintiffs "must establish that [they] are likely to succeed on the merits, that [they] are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. At this stage in the litigation, Plaintiffs have met their burden and the factors tip in favor of a temporary restraining order.

### A.  **Likelihood of Success on the Merits**

To secure a temporary restraining order, Plaintiffs must prove they are likely to succeed on the merits of their challenge. At the core of Plaintiffs' case is the allegation that the Commission's districting scheme is unconstitutional because it denies every voter his "constitutional right to have his vote counted with substantially the same weight as that of any other voter." (Doc. 1 at ¶ 42 (quoting *Hadley v. Junior Coll. Dist. of Met. Kansas City*, 397 U.S. 50, 53 (1970).) The Supreme Court has emphasized that "[s]tates must draw congressional districts

4

with populations as close to perfect equality as possible." *Evenwel v. Abbott*, 578 U.S. 54, 59 (2016). This requirement means that when a state

> decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

*Hadley*, 397 U.S. at 56. The Supreme Court has further established that "[w]here the maximum population deviation between the largest and smallest district is less than 10% . . . a state or local legislative map presumptively complies with the one-person, one-vote rule." *Evenwel*, 578 U.S. at 60. Put in the inverse, where the difference between the deviation in the largest district and the deviation in the smallest district exceeds 10%, the map at issue may only be constitutional if the state shows that the districts accommodate for some type of "traditional districting objective" such as "preserving the integrity of political subdivisions, maintaining communities of interest, and creating geographic compactness." *Id.* at 59.

Here, Plaintiffs have included evidence from the United States Census pertaining to Montana, (Docs. 6-1, 6-2), to calculate each district's respective deviation from the ideal population utilizing the formula from *Evenwel*.[2] The

---

[2] Plaintiffs also cite to Doc. 6-3 in support of their claim that they are likely to succeed on the merits, but this document did not properly upload to the docket.

5

population of the smallest district, District 1, apparently downwardly deviates approximately 14% from the ideal population while the population of the largest district, District 3, apparently upwardly deviates approximately 10%. (Doc. 6 at 24.) Under the *Evenwel* formula, the maximum population deviation is roughly 24%, which exceeds the presumptively reasonable 10% deviation. *See* 578 U.S. at 60. Because such a significant deviation potentially magnifies the weight carried by a vote in District 1 while potentially diminishing the weight carried by a vote in District 3, Plaintiffs are likely to succeed in showing that the current districts are presumptively unconstitutional. Thus, because it is likely—though not certain—that Plaintiffs will succeed on the merits of their claim, this factor tips in their favor.

### B. Irreparable Harm

Plaintiffs must establish that the prospect of irreparable harm is not merely possible, but that it is "likely." *Winter*, 555 U.S. at 22. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Index Newspaper LLC v. United States Marshals Serv.*, 977 F.3d 817, 837 (9th Cir. 2020) (quotation marks omitted). Consequently, because the record indicates that at least two of the Commission's districts are presumptively unconstitutional as they appear to dilute or concentrate certain votes to an

impermissible level, Plaintiffs have demonstrated that they are likely to suffer irreparable harm.

### C. Balance of the Equities

In balancing the equities, Plaintiffs have shown that their potential harm in the absence of a restraining order is greater than the potential harm to the state if the commission certification process is temporarily restrained. As explained above, Plaintiffs have shown they are likely to suffer irreparable constitutional harm based on a violation of the one person, one vote principle. By contrast, the most serious harm that may come to the state is temporary delay in certifying candidates for the districts, and the state is free to move to dissolve the temporary restraining order or modify it consistent with Federal Rule of Civil Procedure 65(b)(4). Accordingly, this factor favors Plaintiffs.

### D. Public Interest

Plaintiffs persuasively point to several reasons that a temporary restraining order is in the public interest. First, the public has an interest in "fair and effective representation," which is furthered by voting districts that comport with the one person, one vote rule. *See Evenwel*, 578 U.S. at 73. Again, as explained above, Plaintiffs have convincingly shown that the current districts do not comply with that rule. Second, the public has an interest in "orderly elections" that may be furthered by temporarily restraining the candidate certification process while the

Commission's districts are under review. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). Temporarily restraining the candidate certification process sends a message to prospective candidates and the public that the current process is under review to ensure an orderly election in the future. Finally, the public has an interest in "equal voting strength for each voter." *Hadley*, 397 U.S. at 58. Temporarily restraining the certification process will permit review of the Commission's current districts to either affirm that such districts achieve that goal or rule they do not and then take such action as is necessary to meet that goal.

## III. Conclusion

Pursuant to Rule 65(d), the temporary restraining order is issued because Plaintiffs have demonstrated they are likely to suffer irreparable harm in the absence of an injunction of the certification process. Moreover, temporarily restraining the certification of candidates on the basis of the Commission's present districts will indicate to potential candidates that the districting system is under review, which may allow them to assess the strategy of their prospective campaigns at the earliest possible juncture.

Additionally, the terms of the temporary restraining order are such that the defendant, Christi Jacobsen, shall be enjoined from certifying candidates for the Commission based on the current districts. However, given the timing of the certification of candidates in District 1 and 5 for the 2022 election cycle, the

8

temporary restraining order is limited in its reach. Plaintiffs ask to temporarily restrain the candidate certification process only in District 1 and District 5 at this stage in the litigation. Therefore, in order to respond to the most imminent potential harm as precisely as possible, the temporary restraining order means that Jacobsen shall certify no candidates for Commissioner in District 1 and District 5 while Plaintiffs' challenge is under review. This restriction shall last until the parties appear for a hearing on Plaintiffs' request for a preliminary injunction. Accordingly,

IT IS ORDERED that Plaintiffs' request for a temporary restraining order or a preliminary injunction, (Doc. 5), is GRANTED IN PART. It is granted insofar as Jacobsen is temporarily restrained as explained above. The Court reserves ruling on the remainder of Plaintiffs' motion until the parties appear for a hearing on the request for a preliminary injunction.

IT IS FURTHER ORDERED that a hearing on the motion for preliminary injunction is set for January 7, 2022 at 9:00 a.m. at the Russell Smith Courthouse in Missoula, Montana.

DATED this 22nd day of December, 2021.

11:57 A.M.

Donald W. Molloy, District Judge
United States District Court

9