AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
  *Lieutenant General*
DAVID M.S. DEWHIRST
  *Solicitor General*
BRENT MEAD
  *Assistant Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; AND DONALD SIEFERT,<br><br>            Plaintiffs,<br><br>    v.<br><br>CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State,<br><br>            Defendant. | Case No. 6:21-cv-00092<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES ...................................................iv

EXHIBIT LIST..................................................................vii

INTRODUCTION ..............................................................1

ARGUMENT ....................................................................3

I.      Plaintiffs' challenge is not ripe for adjudication ........................6

    A. The Montana Legislature hasn't received adequate opportunity to address the 2020 census. ....................................7

    B. Legislative history demonstrates the Montana Legislature must be given adequate opportunity to reapportion based on the 2020 census.......................................................10

    C. Montana legislators have already begun to consider and address reapportionment of PSC districts.................................13

II.     Plaintiffs aren't entitled to a preliminary injunction because the equitable factors strongly favor allowing the Montana Legislature an adequate opportunity to reapportion. ............................15

    A. Plaintiffs aren't likely to succeed on the merits because the Montana Legislature has not had an adequate opportunity to reapportion. .......................................16

    B. Plaintiffs cannot demonstrate a likelihood of irreparable injury because the State need not reapportion until the next legislative session ...............................................18

    C. The balance of equities tips strongly in favor of allowing the Montana Legislature reapportion rather than federal courts    ....................................................20

D. The public interest supports allowing the Montana Legislature reapportion PSC districts. ......................................23

CONCLUSION .........................................................................26

CERTIFICATE OF COMPLIANCE .......................................27

CERTIFICATE OF SERVICE ................................................27

## TABLE OF AUTHORITIES

**Cases**

*Benisek v. Lamone,*
  138 S. Ct. 1942 (2018) ..................................................................... 8, 15

*Bernhardt v. L.A. Cty,*
  339 F.3d 920 (9th Cir. 2003) ............................................................. 23

*Chapman v. Meier,*
  420 U.S. 1 (1975) ............................................................................. 3-4

*Connor v. Finch,*
  431 U.S. 407 (1977) ....................................................................... 4, 24

*Garcia v. Google, Inc.,*
  786 F.3d 733 (9th Cir. 2015) ............................................................. 16

*Growe v. Emison,*
  507 U.S. 25 (1993) .................................................................... *passim*

*League of United Latin Am. Citizens v. Perry,*
  548 U.S. 399 (2006) .......................................................... 2, 4, 19, 25

*Mahan v. Howell,*
  410 U.S. 315 (1973) ........................................................................... 11

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) ........................................................................... 16

*Old Person v. Cooney,*
  230 F.3d 1113 (9th Cir. 2000) .......................................... 2, 5, 18, 19

*Purcell v. Gonzalez,*
  549 U.S. 1 (2006) ............................................................................... 21

*Reynolds v. Sims,*
  377 U.S. 533 (1964) .................................................................. *passim*

*Texas v. United States,*
  523 U.S. 296 (1998) ............................................................................. 6

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) ........................................................ 6

*Trump v. Int'l Refugee Assistance Project,*
    137 S. Ct. 2080 (2017) ................................................... 20

*United States v. Winstar Corp.,*
    518 U.S. 839 (1996) ........................................................ 8

*Upham v. Seamon,*
    456 U.S. 37 (1982) ........................................................ 4

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ...................................................... 23

*Wheat v. Brown,*
    85 P.3d 765 (Mont. 2004) .................................... 5, 18, 19

*White v. Weiser,*
    412 U.S. 783 (1973) ................................... 3, 4, 6, 23

*Willems v. State,*
    325 P.3d 1204 (Mont. 2014) ......................... 5, 18, 19, 24

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ....................................................... 16

*Wise v. Lipscomb,*
    437 U.S. 535 (1978) ............................................... 4, 23

*Wolfson v. Brammer,*
    616 F.3d 1045 (9th Cir. 2010) ........................................ 6

*Younger v. Harris,*
    401 U.S. 37 (1971) ............................................ 1, 17, 21

## Other Authorities

## Montana Constitution

    Art. II, § 8 ................................................................ 24

    Art. V, § 6 ...................................................... 3, 5, 9, 17

Art. V, § 14(4) ................................................................. 5

## Montana Code Annotated

§ 5-5-230 ....................................................................... 9

§ 61-1-104 ..................................................................... 11

## Legislative Materials

63rd Leg. Reg. Sess., Senate Bill 153 ................................ 12

63rd Leg. Reg. Sess., Senate Bill 153, § 2(1)(b) ................ 11

65th Leg. Reg. Sess., Senate Bill 210, § 1 ........................ 11

66th Leg. Reg. Sess. House Joint Resolution 41 ................ 12

66th Leg. Reg. Sess., Senate Bill 246, § 1 ........................ 12

66th Leg. Reg. Sess., Senate Bill 246, § 2(1)(b) ................ 11

66th Leg. Reg. Sess., Senate Bill 309, § 1 ........................ 12

66th Leg. Reg. Sess., Senate Bill 309, § 2(1)(b) ................ 11

67th Leg. Reg. Sess., Senate Bill 160 ................................ 12

House Journal , 67th Leg. Reg. Sess., April 29, 2021 ......... 2

Senate Journal, 67th Leg. Reg. Sess, April 29, 2021 ........... 3

## EXHIBIT LIST

Representative Zolnikov ETIC Letter ........................................ Exhibit 1

Senator Hertz Bill Draft Request ............................................. Exhibit 2

SB 153 (2013) ....................................................................... Exhibit 3

Montana House Districts ......................................................... Exhibit 4

Montana Senate Districts ........................................................ Exhibit 4

Affidavit of Brent Mead ......................................................... Exhibit 5

Defendant Montana Secretary of State Christi Jacobsen hereby submits this response to Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction.

This challenge presents a straightforward question to the Court. Who gets first opportunity to reapportion districts following the release of the decennial census: the Montana Legislature or federal courts? The answer must be the legislature. *See Reynolds v. Sims*, 377 U.S. 533, 586 (1964) ("[J]udicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."). Principles of comity and federalism counsel staying federal judicial action in a quintessentially state-level political function. *See Younger v. Harris*, 401 U.S. 37, 44 (1971). Federalism, as the Supreme Court put it, "always endeavors" "to vindicate and protect federal rights and federal interests … in ways that will not unduly interfere with the legitimate activities of the States." *Id.* .

"In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State … has begun to address that highly political task itself." *Growe v.*

*Emison*, 507 U.S. 25, 33 (1993).  To that end, courts begin with the necessary presumption that plans are constitutionally apportioned. *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006) ("States operate under the legal fiction that their plans are constitutionally apportioned throughout the decade, a presumption that is necessary to avoid constant redistricting, with accompanying costs and instability.").

Montana's decennial reapportionment cycle runs from elections in the fourth year of the decade to elections in the second year of the following decade.  *Cf. Old Person v. Cooney*, 230 F.3d 1113, 1118 (9th Cir. 2000) (under Montana's Constitution, reapportionment of representative districts occurs in the third year—*e.g.* 1993, 2003, 2013, etc., in advance of elections occurring in the fourth year— *e.g.* 1994, 2004, 2014, etc.).  In this case, the Montana Legislature must reapportion in advance of the 2024 elections, not the 2022 elections.

Further, the Montana Legislature has not had an adequate opportunity to reapportion based on the 2020 census.  The 2021 Montana Legislature adjourned its biennial session *sine die* on April 29, 2021.  *See* House Journal, 67th Leg. Reg. Sess., April 29, 2021, 35 (Mont. 2021);

Senate Journal, 67th Leg. Reg. Sess., April 29, 2021, 24–25 (Mont. 2021). The Census Bureau released its 2020 data on August 12, 2021. (Doc. 1, ¶ 26). The Montana Legislature reconvenes for its next regular session in 2023. *See* Mont. Const. art. V, § 6. So the first adequate opportunity to reapportion following the 2020 census will occur the next time the Montana Legislature convenes.

Because Plaintiffs' lawsuit is premature, this Court should deny the requested relief or, in the alternative, stay intervention until the Montana Legislature has had adequate opportunity to address reapportionment under the 2020 census in time for the 2024 elections.

## ARGUMENT

"[T]he Constitution leaves with the States primary responsibility for apportionment" of their representative districts. *Growe*, 507 U.S. at 34. Courts recognize "that 'reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.'" *White v. Weiser*, 412 U.S. 783, 794–95 (1973) (quoting *Reynolds v. Sims*, 377 U.S. 533, 586 (1964)); *see also*

*Chapman v. Meier*, 420 U.S. 1, 27 (1975) ("We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court."); *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978); *Connor v. Finch*, 431 U.S. 407, 414–15 (1977) ("[R]eapportionment is primarily a matter for legislative consideration and determination, for a state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality.").   State redistricting, thus, enjoys the presumption of constitutionality.   *See League of United Latin Am. Citizens*, 548 U.S. at 421.

Judicial intervention "becomes appropriate only when a legislature fails to reapportion … in a timely fashion *after having had an adequate opportunity to do so*." *Upham v. Seamon*, 456 U.S. 37, 41 (1982) (emphasis added) (quoting *White*, 412 U.S. at 794–95).  The 2021 Montana Legislature adjourned its biennial 90-day regular session on April 29, 2021. The Census Bureau released its 2020 census data on August 12, 2021. Thus, there hasn't been any opportunity, much less adequate opportunity

for the Montana Legislature to reapportion the PSC districts based on the 2020 census data.

In Montana, the legislature meets in odd-numbered years for regular sessions.  *See* Mont. Const. art. V, § 6.  The practical effect of this provision shifts redistricting to the third year in each decade.  Using legislative redistricting as an example, the Montana Redistricting Commission meets in the second year to submit a map to the legislature in the third year, for use in elections in the fourth year.  *See* Mont. Const. art. V, § 14(4) ("The commission shall submit its plan for legislative districts to the legislature at the first regular session after its appointment or after the census figures are available."); *see also Old Person*, 230 F.3d at 1118; *Wheat v. Brown*, 85 P.3d 765, 767 (Mont. 2004) (the 2000 Redistricting Commission submitted its map in 2003); *Willems v. State*, 325 P.3d 1204, 1206 (Mont. 2014) (the 2010 Redistricting Commission submitted its map in 2013).  The Montana Legislature will convene in 2023, and at that time, it will have the opportunity to reapportion both PSC and legislative districts based on the 2020 census.

# I.  Plaintiffs' challenge is not ripe for adjudication

"[Ripeness] is peculiarly a question of timing.  Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985).  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citation and quotation omitted); *see also Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010).

Judicial intervention in reapportionment should occur only after the legislature fails to timely perform its duty.  *See White*, 412 U.S. at 794–95.  Plaintiffs' claims rely on the assumption that the Montana Legislature, when given opportunity, will fail to reapportion based on the 2020 census.  (Doc. 6 at 26–28).  But such assumptions are unfounded and must fail for numerous reasons.  First, the claims at issue involve only the 2020 census and the Montana Legislature hasn't yet convened to consider reapportionment under the latest census data.  Second, Plaintiffs' reliance on legislative history between 2013 and 2021 only confirms that even if the Montana Legislature had acted under any measure cited

by Plaintiffs, the practical situation before this Court would remain the same.  The Montana Legislature will only be able to consider necessary reapportionment of PSC districts during its next session, which is currently scheduled for 2023.  Finally, there is already ample evidence that current legislators and holdover legislators will address this issue through the 2021–22 interim and in the 2023 regular session.

### A. The Montana Legislature hasn't received adequate opportunity to address the 2020 census.

This case, importantly, involves only apportionment under the 2020 census.  *See* (Doc. 6 at 33–34); (Doc. 1, ¶¶ 25–33, 43).  Plaintiffs rely exclusively on population deviations based on the 2020 census.  *See* (Doc. 6 at 34) (District 3 has "a 10.46% deviation," and District 1 has "a 13.94% deviation."); (Doc. 1, ¶¶ 30–33).  The entire breadth of Plaintiffs' arguments concerning the current Montana Legislature's alleged failure to reapportion based on the 2020 census numbers is limited to the assertion

that "no interim committee currently is tasked with studying the PSC districting plan or preparing recommendations." (Doc. 6 at 38).[1]

Plaintiffs rely on legislative histories from 2013 to 2021, but they do not call into question the current district map as applied to the 2010 census. This makes sense because they cannot explain their failure to timely bring that challenge. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (plaintiffs failed to demonstrate "reasonable diligence" in bringing claims because they waited six years, and three general elections, after a map was adopted). The alleged legislative inaction following the 2010 census cannot be at issue here because that is not the source of Plaintiffs' claims. Only the 2020 census is at issue and that is all the Court should consider.

As previously stated, the 2021 Montana Legislature adjourned on April 29, 2021. 2020 census data became available on August 12, 2021. The 2021 Montana Legislature could not have reapportioned based on census data that wasn't yet available. This is not a matter of legislative

---

[1] The use of prior negative legislative history simply doesn't work here. Plaintiffs' argument would effectively use prior legislative inaction as controlling the intent for the current legislature and future legislatures. This violates the basic principle that one legislature may not bind the legislative authority of its successors. *Cf. United States v. Winstar Corp.*, 518 U.S. 839, 872–74 (1996).

inaction.  It is a matter of temporal reality and constitutional limitations. *See* Mont. Const. art. V, § 6 (limiting the Montana Legislature's regular sessions to biennial 90-day affairs).

But even the factual premise on which Plaintiffs stake their entire case is flawed.  Contrary to their assertions that "no interim committee is tasked with studying the PSC districting plan or making recommendations," (Doc. 6 at 38), the Energy and Telecommunications Interim Committee possesses ongoing authority over "administrative rule review, draft legislation review, program evaluation, and monitoring functions for the department of public service regulation and the public service commission."  MCA § 5-5-230.  Representative Zolnikov recently asked the interim committee specifically to review PSC district apportionment. *See Mead Aff.*, Exhibit 1.  Thus, even though reapportionment cannot be officially considered until the Montana Legislature next convenes, interim committees are tasked with reviewing issues involving the PSC, including reapportionment.

Under *Reynolds* and its progeny, this Court cannot intervene until "a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to

do so." 377 U.S. at 586.  The Montana Legislature has not had an oppor-

tunity to reapportion based on the census data released less than five

months ago, and until it does have such an opportunity this Court must

stay its hand.

### B. Legislative history demonstrates the Montana Legislature must be given adequate opportunity to reapportion based on the 2020 census.

This Court should disregard the legislative history cited by Plain-

tiffs because it is inapplicable to their claims.   Plaintiffs present a scat-

tershot of legislative proposals involving PSC reform vis-à-vis the 2010

census.  But these proposals have no connection to solving the matter at

hand:  malapportionment of current PSC districts after the *2020* census.

(Doc. 6 at 23–28).  And, even if these proposals could be considered for

purposes of the 2020 census, they are still irrelevant to Plaintiffs' claims

because they would not actually remedy the asserted injuries.

Plaintiffs only raise claims related to the 2020 census, but the leg-

islative history from 2013 to 2021 concerns the 2010 census.  Legislative

inaction doesn't automatically render the current districts unconstitu-

tional under the 2010 census.  Plaintiffs make no showing that the Mon-

tana Legislature was required to act following the 2010 census and fail

to establish that the population deviation fell outside permissible bounds given Montana's interest in maintaining the integrity of political subdivisions. *See Mahan v. Howell*, 410 U.S. 315, 328 (1973) (holding a population variance of 16.4% didn't offend the 'one-person, one-vote' requirement because the districts furthered the rational state policy of not splitting political subdivisions). The PSC districts, under the 2010 census, contained a population variance of 13.79%. (Doc. 6-4). Current PSC districts follow county boundaries and reapportionment proposals likewise required adherence to county lines. *See* MCA § 61-1-104; Senate Bill 153, § 2(1)(b), 63rd Leg. Reg. Sess. (Mont. 2013) ("District boundaries must coincide with the boundaries of counties of the state."); Senate Bill 246, § 2(1)(b), 66th Leg. Reg. Sess. (Mont. 2019) (same); Senate Bill 309, § 2(1)(b), 66th Leg. Reg. Sess. (Mont. 2019) (same). Thus, even if prior legislative inaction were relevant, Plaintiffs fail to establish that the Montana Legislature was under an obligation to reapportion PSC districts following the 2010 census.

Two of the six cited prior introduced bills—which would have made the PSC an appointed, rather than elected body—have no discernable impact on Plaintiffs' claims. *See* Senate Bill 210, 65th Leg. Reg. Sess. (Mont.

2017); Senate Bill 160, 67th Leg. Reg. Sess. (Mont. 2021). Plaintiffs'
claims involve a dilution of their vote compared to voters in other dis-
tricts. (Doc. 1, ¶ 45). Plaintiffs cannot contend the solution to the current
problem necessitates eliminating the ability to vote for PSC commission-
ers altogether.

Two other cited bills would have required the 2021–22 Energy and
Telecommunications Interim Committee to propose reapportioned dis-
tricts to the 2023 Montana Legislature. *See* Senate Bill 246, § 1, 66th
Leg. Reg. Sess. (Mont. 2019); Senate Bill 309, § 1, 66th Leg. Reg. Sess.
(Mont. 2019).[2] Under these bills, the first adequate opportunity for the
Montana Legislature to reapportion PSC districts based on the 2020 cen-
sus would still occur in 2023.

Finally, the 2013 redistricting proposal would result in similar pop-
ulation deviations following the 2020 census. *See* Senate Bill 153, 63rd
Leg. Reg. Sess. (Mont. 2013). Senate Bill 153 would have resulted in

---

[2] Plaintiffs also cite H.J. 41, 66th Leg. Reg. Sess. (Mont. 2019). Defendant notes
that Plaintiffs' counsel, Joel Krautter, served as a legislator during the 66th Regular
Session. Former Representative Krautter voted *against* H.J. 41. *See* H.J. 41, Third
Reading, vote seq. no. 1954 (April 18, 2019). It is disingenuous, at best, for Plain-
tiffs' counsel to argue that the Montana Legislature failed to act on this issue in 2019
when Plaintiffs' counsel opposed legislation that they now argue would address the
alleged problem.

districts with a population deviation exceeding fifteen percent following the 2020 census.  *See Mead Aff.*, Exhibit 3; (Doc. 6-1 at 34).  Thus, even if Senate Bill 153 had passed, the 2023 Montana Legislature would still need to consider reapportionment following the 2020 census.

The reality is that Plaintiffs would be in the same situation, or worse, had the Montana Legislature passed any of the cited measures. Nothing cited by Plaintiffs, moreover, contradicts the central proposition that this Court should wait to intervene until the Montana Legislature convenes and has had adequate opportunity to reapportion based on the 2020 census.

### C. Montana legislators have already begun to consider and address reapportionment of PSC districts.

Recent actions of the 2021 Montana Legislature acutely undermine Plaintiffs' claims.  Following the release of the Census Bureau's data on August 12, 2021, Montana legislators introduced a bill draft to reapportion PSC districts and moved the appropriate interim committee to take up this issue.

On December 22, 2021, Senator Greg Hertz requested a bill draft to "redistrict the PSC districts."  *See Mead Aff.*, Exhibit 2.  A bill draft at

this stage ensures the 2023 Montana Legislature will have a legislative vehicle to reapportion the PSC districts.

On December 30, 2021, Representative Zolnikov sent a member request for the Energy and Telecommunications Interim Committee to add the specific issue of PSC reapportionment to its agenda. *See Mead Aff.*, Exhibit 1 ("It is ETIC's responsibility to begin the discussion of redistricting the PSC in a public setting."). The interim committee next meets on January 18, 2022. *Id.* During the interim, the committee will be able to take public comment and input regarding reapportionment proposals in order to draft recommendations to the 2023 Montana Legislature.

In short, The Montana Legislature is considering, and will continue to consider, the August census data. Plaintiffs' speculation that "a fix is not forthcoming," (Doc. 6 at 23), is belied by the actual, concrete steps current Montana legislators are taking.

No one contests Montana experienced population growth between 2010 and 2020. Nor does anyone contest that Montana's population growth varied by region and county resulting in large deviations across

representative political districts.[3]   But Plaintiffs' challenge cannot be considered until the Montana Legislature "fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Reynolds*, 377 U.S. at 586.  The Montana Legislature hasn't had an adequate opportunity to draw new districts in advance of the 2024 elections because it is out-of-session and less than five months have passed since the release of the August 12, 2021, data.  Thus, Plaintiffs' claims aren't yet ripe for consideration.

## II. Plaintiffs aren't entitled to a preliminary injunction because the equitable factors strongly favor allowing the Montana Legislature an adequate opportunity to reapportion.

"[A] a preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek*, 138 S. Ct. at 1943 (internal citation and quotation omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[3] *See Mead Aff.*, ¶ 3, Exhibit 4.  House District 65 is 64% above the ideal district size, while House District 41 is 15% below the ideal size.  Senate District 33 is 33% above the ideal and Senate District 21 is 12% below the ideal.  These deviations of 79% and 45%, of course, necessitate reapportionment, but that reapportionment will not occur until 2023 and will not go into effect until the 2024 general election.

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs must make a "clear showing" they are entitled to a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  Plaintiffs fail to carry this burden.

### A. Plaintiffs aren't likely to succeed on the merits because the Montana Legislature has not had an adequate opportunity to reapportion.

Likelihood of success on the merits "is a threshold inquiry." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  "When a 'plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements.'" *Id.* (cleaned up).  To succeed on their malapportionment claims in this case, Plaintiffs must demonstrate the Montana Legislature (1) failed to act "in a timely fashion," after (2) "having had an adequate opportunity to do so." *Reynolds*, 377 U.S. at 586.  They cannot and, therefore, their request for a preliminary injunction should be denied.

First, Plaintiffs fail to identify the adequate opportunity foregone by the Montana Legislature.  As previously stated, the Montana Legislature adjourned its 90-day biennial session prior to the release of the 2020

census data in August.  Under the Montana Constitution, the Montana Legislature will next reconvene for a regular session in 2023.  MONT. CONST. ART. V, § 6.  The Montana Constitution creates this timeline.  *See Reynolds*, 377 U.S. at 586; *Younger*, 401 U.S. at 44 (federalism and comity counsel federal court deference to state constitutional process).  The first adequate opportunity to review both PSC and legislative districts will occur when the Montana Legislature next convenes.  That event has not happened.  Plaintiffs, therefore, cannot demonstrate a likelihood of success as a matter of law.

Second, Plaintiffs have not shown that the Montana Legislature has failed to timely reapportion.  Nor can they.  The Montana Legislature cannot fail to timely reapportion until after it next convenes.  In the interim, current Montana legislators have demonstrated a good-faith effort to put into motion the reapportionment process for PSC districts.  *See Mead Aff.*, Exhibits 1–2; *see also Growe*, 507 U.S. at 34 ("Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it.").

The Fourteenth Amendment merely requires reapportionment in "a timely fashion." *Reynolds*, 377 U.S. at 586. In Montana, constitutional strictures dictate the 2023 regular session as the first regular legislative opportunity to reapportion. The legislature can complete reapportionment during the next legislative session and well before the general election in 2024. This would satisfy the Fourteenth Amendment's timeliness requirement. *See Old Person*, 230 F.3d at 1118; *Wheat*, 85 P.3d at 767; *Willems*, 325 P.3d at 1206.

Finally, as stated, Plaintiffs' argument that the current legislature has failed to timely act because of previous legislative actions following the 2010 census must fail. First, Plaintiffs' claims arise entirely out of the 2020 census, not the 2010 census. Second, Plaintiffs cannot impute the motivations and intent of prior legislatures onto the intent of this legislature, especially in light of the recent, concrete steps taken by current legislators. *See supra* Part I(A)–(B).

**B. Plaintiffs cannot demonstrate a likelihood of irreparable injury because the State need not reapportion until the next legislative session**

Plaintiffs fail to demonstrate irreparable harm because they cannot show the Montana Legislature failed to timely redistrict and Plaintiffs don't possess a right to mid-cycle reapportionment.

Plaintiffs' entire claim begins on August 12, 2021, when the Census Bureau released the 2020 data. Their argument that Montana uses a stale map, because no reapportionment occurred after the 2010 census, fails. They aren't challenging the map under the 2010 census. Even if they were, they haven't demonstrated they would be entitled to any relief under the 2010 map. *See supra.* Part I(A)–(B).

In Montana, the 2022 general election maps operate under the maps drawn as part of the 2010 redistricting cycle. *See Old Person*, 230 F.3d at 1118; *Wheat*, 85 P.3d at 767; *Willems*, 325 P.3d at 1206 (collectively stating the first election in Montana's redistricting cycle occurs in the fourth year of the decade); *see also League of Latin Am. Citizens,* 548 U.S. at 421 ("States operate under the legal fiction that their plans are constitutionally apportioned throughout the decade, a presumption that is necessary to avoid constant redistricting, with accompanying costs and instability."). Plaintiffs' alleged injury doesn't apply to the 2022 election cycle because the Plaintiffs based their claims on the 2020 census. To the

extent Plaintiffs suffer an injury, that injury will not ripen until the 2020 census redistricting cycle begins with the 2024 elections.

Plaintiffs fail to articulate a ripe claim and therefore aren't likely to suffer irreparable injury. The Court should find this factor weighs heavily against granting a preliminary injunction.

### C. The balance of equities tips strongly in favor of allowing the Montana Legislature reapportion rather than federal courts

The balance of equities tips in favor of allowing Montana to conduct orderly elections in the same manner it has for fifty years. The balance of the equities involves "the relative harms to applicant and respondent, as well as the interests of the public at large." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal citation and quotation omitted).

Plaintiffs characterize their requested relief as "modest." (Doc. 6 as 37). But in reality, it is unprecedented. They ask the Court to draw a map based on less than five-month-old census data before the Montana Legislature has had any meaningful opportunity to consider the data and reapportion districts. Further, the effect of their relief would be to create a one-time exception to Montana's normal redistricting schedule and set

the PSC aside for a new map in 2022, while all other state electoral districts are drawn in time for the 2024 elections. *See Reynolds*, 377 U.S. at 586; *Younger*, 401 U.S. at 44 (Federal courts should defer to the state until it is clear that the state will not timely reapportion given adequate opportunity.).

Montana possesses an uncontested interest in orderly elections. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5, (2006). Plaintiffs argue voter confusion will result if candidates file in districts later redrawn by the Court. (Doc. 6 at 36). But Plaintiffs requested relief could exacerbate this concern. Consider a hypothetical situation under this paradigm: A voter in District 5 will be able to cast a ballot this year under the current map. That voter might find themselves in, for example, District 4 after a court-drawn map, and thus ineligible to vote in 2022. Following reapportionment in the 2023 legislative session, that voter could be back in District 5 and again ineligible to vote for their PSC commissioner in 2024. Montana has conducted its elections, with attendant filing deadlines, for fifty years on the understanding that reapportionment occurs prior to the general elections in the fourth year of a decade. Plaintiffs' requested

relief upsets the established procedure in a way that risks harms to voters and candidates alike.

But this Court need not wade into such precarious waters. Judicial intervention is unnecessary at this juncture because 2022 represents a mid-cycle election and the Montana Legislature should be allowed to reapportion when it next convenes. *See Reynolds*, 377 U.S. at 586.

Plaintiffs cite *South Carolina State Conference of the NAACP v. McMasters*, No. 3:21-cv-03302-JMC (D.S.C.) in support of their position. (Doc. 6 at 38). *McMasters* should actually inform this Court. There, the district court stayed proceedings because the plaintiffs' claims were not yet ripe. *See McMasters*, ECF No. 63 at 13 (November 12, 2021 Order Staying Proceedings). The district court correctly recognized that the state must be afforded adequate opportunity to reapportion based on the census data released in August. *Id.* at 11–12. This Court should do the same.

The equities favor allowing the Montana Legislature the opportunity to reapportion in accordance with the schedule set by the Montana Constitution and staying any judicial intervention into that redistricting

process.   Should the Montana Legislature fail to act in a timely fashion, this Court may intervene at that time.

### D. The public interest supports allowing the Montana Legislature reapportion PSC districts.

"[I]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  "The public interest inquiry primarily addresses impact on non-parties rather than parties." *Bernhardt v. L.A. Cty*, 339 F.3d 920, 931 (9th Cir. 2003).

Federalism and comity dictate that the interests of the Montana Legislature, a non-party, must be paramount in a redistricting case.  *See Growe*, 507 U.S. at 34; *White*, 412 U.S. at 794–95; *Wise*, 437 U.S. at 539 ("The Court has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt.").  Initiating court-led redistricting and reapportionment, at this early stage, invades the province of the Montana Legislature.  The Supreme Court's clear language requires this Court to stay judicial intervention until the Montana Legislature fails to

timely act after having an adequate opportunity to do so.  *See Reynolds*, 377 U.S. at 586.

Granting Plaintiffs' mid-cycle reapportionment request would also result in harm to the Montana voting public.  Redistricting will inevitably disenfranchise some Montana voters.  *See Willems*, 325 P.3d at 1210.  Because PSC commissioners are elected on staggered terms, redistricting entails changing when some voters will have a choice at the ballot box.  As the Montana Supreme Court has stated, courts cannot remedy this inevitable issue because "the purported violation of the right of suffrage would not be cured at all; it would simply be shifted to another set of voters."  *Id.* .  This delicate, political choice must be left to the State, not to the federal courts.  *See Connor*, 431 U.S. at 414–15.

Montana has enshrined a right to public participation in government.  MONT. CONST. ART. II, § 8.  Montanans, throughout 2021, demonstrated an intense interest in participating in the redistricting process.  The 2020 Montana Redistricting Commission met 15 times in 2021 in considering new congressional districts.  *See Mead Aff*, ¶ 4.  By its September 17, 2021, meeting, the Commission received 231 maps submitted by the public and hundreds of pages of public comment, in addition to the

hours of public testimony heard by the Commission.  *See Mead Aff*, ¶ 4. The Montana public will enjoy similar opportunity to engage publicly in PSC reapportionment through the 2021–22 legislative interim committee process and 2023 Montana legislative session.  Plaintiffs' litigation cuts out public input in favor of an opaque process in which only parties to this litigation may participate.  Such an opaque process runs counter to Montana's constitutional design favoring transparent government.

Plaintiffs don't possess a constitutional right to mid-cycle reapportionment.  *See League of United Latin Am. Citizens*, 548 U.S. at 421.  Yet Plaintiffs rely on alleged constitutional harm to support their public interest arguments.  Without a cognizable constitutional injury related to the 2022 general election, the public interest cannot favor Plaintiffs.

Defendant Jacobsen agrees this matter represents an early stage in the process.  *See* (Doc. 6 at 40).  This matter is so early in the process, in fact, that Plaintiffs' claims aren't ripe.  The latest census numbers came out less than five months ago.  The legislature, which is currently out-of-session, must be afforded the opportunity in the ordinary course of Montana redistricting to reapportion PSC districts based on the latest census.

If, and only if, the Montana Legislature fails to act after having an actual, adequate opportunity to reapportion can this case go forward. Re-apportioned maps aren't required until 2024 and the Montana Legislature possesses ample time and has already demonstrated a willingness to take up this issue in 2023.

## CONCLUSION

For the reasons stated, this Court should deny the preliminary injunction.

DATED this 3rd day of January, 2022.

AUSTIN KNUDSEN
Montana Attorney General

KRISTIN HANSEN
  *Lieutenant General*

DAVID M.S. DEWHIRST
  *Solicitor General*


  */s/ Brent Mead*
BRENT MEAD
  *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
p. 406.444.2026
brent.mead2@mt.gov

*Attorney for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 4,936 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/    *Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: January 3, 2022         /s/    *Brent Mead*
BRENT MEAD

# Defendant's Exhibit 1

# Representative Zolnikov ETIC Letter

*Montana State Legislature*

# MONTANA HOUSE OF REPRESENTATIVES

**Representative Katie Zolnikov**
House District 45

DURING THE SESSION
State Capitol Building
PO Box 200400
Helena MT 59620-0400
Phone: (406) 444-4800
leg.mt.gov

HOME ADDRESS
PO Box 51343
Billings MT 59105
Phone: (406) 690-1684
katie.zolnikov@mtleg.gov

Energy and Telecommunication Interim Committee,                    12/30/2021

I would like to request that the Energy and Telecommunication Interim Committee (ETIC) discuss redistricting the Montana Public Service Commission during our upcoming meeting on January 18, 2022. Montana received the decennial population data in August 2021. The data shows that Montana's population shift trends have become more accentuated. Per Montana law, the Montana legislature maintains statutory authority to address changes to PSC districts. This is unlike the Districting and Apportionment Commission that is currently in the process of redistricting the legislature. ETIC was formed as a legislative committee that was intended to oversee and interact with the Public Service Commission in a public forum which makes it the appropriate committee to begin discussion on this matter.

A bill draft has already been submitted to address this concern. It is ETIC's responsibility to begin the discussion of redistricting the PSC in a public setting. The upcoming legislative session is the opportune time to adjust current districts as this will be the first session to realign districts using new 2021 data. This will co-inside with the legislature reviewing new legislative districts.

With proper action and public input, ETIC and the Montana Legislature has the opportunity to roll out realigned PSC districts alongside Montana's realigned Legislative and Congressional districts prior to the 2024 election cycle.

Sincerely,

*Katie Zolnikov*

Katie Zolnikov

# Defendant's Exhibit 2

## Senator Hertz Bill Draft Request

-----Original Message-----
From: Everts, Todd
Sent: Wednesday, December 22, 2021 9:08 AM
To: Greg Hertz <greg.hertz@mtleg.gov>; Coles, Jaret <JColes@mt.gov>
Cc: Fox, Susan <sfox@mt.gov>
Subject: RE: bill draft

Senator Hertz,

We have received your email and will log this bill draft request into our system once
it is up and running late this Spring.  Happy Holidays to you and your family.


Todd M. Everts
Director of Legal Services/Code Commissioner Montana Legislative Services
Division Montana State Legislature teverts@mt.gov Office Phone: (406) 444-4023
FAX: (406) 444-3036


-----Original Message-----
From: Greg Hertz <greg.hertz@mtleg.gov>
Sent: Wednesday, December 22, 2021 8:27 AM
To: Coles, Jaret <JColes@mt.gov>; Everts, Todd <teverts@mt.gov>
Cc: Fox, Susan <sfox@mt.gov>
Subject: [EXTERNAL] bill draft

Jaret/Todd

I would like to enter a bill draft for next session. My intent of this bill would be to
redistrict the PSC districts.

Let me know if you have any questions.


Senator Greg Hertz
greg.hertz@mtleg.gov
406-253-9505 cell
Legislators are publicly elected officials. Legislator emails sent or received involving
legislative business may be subject to the Right to Know provisions of the Montana
Constitution and may be considered a "public record" pursuant to Montana law. As
such, email, sent or received, its sender and receiver, and the email contents, may
be subject to public disclosure, except as otherwise provided by Montana law.

# Defendant's Exhibit 3

# SB 153 (2013)

1       SENATE BILL NO. 153

2       INTRODUCED BY THOMAS, BERRY, LARSEN, OLSON

3

4       A BILL FOR AN ACT ENTITLED: "AN ACT REVISING PUBLIC SERVICE COMMISSION DISTRICTS FOR THE

5       PURPOSE OF POPULATION EQUITY; REQUIRING THE ENERGY AND TELECOMMUNICATIONS INTERIM

6       COMMITTEE TO REVIEW PUBLIC SERVICE COMMISSION DISTRICTS; ESTABLISHING A PROCESS FOR

7       THE REVIEW OF DISTRICTS; AND AMENDING SECTION 69-1-104, MCA."

8

9       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MONTANA:

10

11      NEW SECTION. **Section 1. Energy and telecommunications interim committee -- redistricting for**

12      **public service commission.** (1) In each interim following the release of county population figures for each

13      federal population census, the energy and telecommunications interim committee provided for in 5-5-230 shall

14      review the public service commission districts provided for in 69-1-104.

15      (2) In developing a plan for revising public service commission districts, the committee shall:

16      (a)  comply with the requirements of [section 2];

17      (b)  complete its work before September 15 of the year preceding a legislative session; and

18      (c)  submit its recommendations to the legislature in the form of draft legislation or in the form of a report

19      if draft legislation is not needed and changes in the district are unnecessary.

20      (3)   The committee may consult with the public service commission and with the districting and

21      apportionment commission provided for in Title 5, chapter 1, part 1, in preparing the plan.

22      (4)  (a) Before the committee submits a public service commission redistricting plan to the legislature,

23      it shall hold at least one public hearing on the plan at the state capitol.

24      (b) The committee may hold other hearings as it considers necessary.

25

26      NEW SECTION. **Section 2. Redistricting criteria.** (1) In the development of public service commission

27      districts, a plan must provide for five public service commission districts, with one commissioner elected from

28      each district, distributed as follows:

29      (a)  The districts must be as equal as practicable based on population.

30      (b)  District boundaries must coincide with the boundaries of counties of the state.

1    (c)  The districts must be contiguous, meaning that the district must be in one piece.

2    (2) A district may not be drawn for the purpose of favoring a political party or an incumbent public service

3    commissioner. The following data or information may not be considered in the development of a plan:

4    (a)  addresses of incumbent public service commissioners;

5    (b)  political affiliations of registered voters;

6    (c)  partisan political voter lists; and

7    (d)  previous election results unless required as a remedy by a court.

8

9    **Section 3.**  Section 69-1-104, MCA, is amended to read:

10    **"69-1-104. Public service commission districts.** In this state there are five public service commission

11    districts, with one commissioner elected from each district, distributed as follows:

12    (1)  first district: Blaine, Cascade, Chouteau, Daniels, Dawson, Fergus, Garfield, <u>Glacier,</u> Hill, Judith

13    Basin, Liberty, McCone, Petroleum, Phillips, ~~Pondera,~~ <u>PRAIRIE,</u> Richland, Roosevelt, Sheridan, Toole, Valley, and

14    Wibaux Counties;

15    (2)  second district: Big Horn, Carbon, Carter, Custer, Fallon, <u>MUSSELSHELL,</u> Powder River, ~~Prairie,~~

16    Rosebud, Treasure, and Yellowstone Counties;

17    (3)  third district: Beaverhead, Broadwater, ~~Deer Lodge,~~ <u>DEER LODGE,</u> Gallatin, Golden Valley, Jefferson,

18    Madison, Meagher, ~~Musselshell,~~ Park, Silver Bow, Stillwater, Sweet Grass, and Wheatland Counties;

19    (4)  fourth district: ~~Deer Lodge,~~ Granite, Lincoln, Mineral, Missoula, ~~Powell,~~ <u>POWELL,</u> Ravalli, and Sanders

20    Counties;

21    (5)  fifth  district:  Flathead, ~~Glacier,~~ Lake, Lewis and Clark, ~~Pondera, Powell,~~ <u>PONDERA,</u> and Teton

22    Counties."

23

24    <u>NEW SECTION.</u>  **Section 4.  Transition.** For the purposes of the 2014 election, the secretary of state

25    shall declare which district a sitting commissioner represents for any public service commissioner whose district

26    is not up for election and shall use as criteria the residence of the respective commissioner on [the effective date

27    of this act].

28

29    <u>NEW SECTION.</u>  **Section 5.  Notification to tribal governments.** The secretary of state shall send a

30    copy of [this act] to each tribal government located on the seven Montana reservations and to the Little Shell

1    Chippewa tribe.

2

3           <u>NEW SECTION.</u>  **Section 6.  Codification instruction.** [Sections 1 and 2] are intended to be codified

4    as an integral part of Title 69, chapter 1, part 1, and the provisions of Title 69, chapter 1, part 1, apply to [sections

5    1 and 2].

6

7           <u>NEW SECTION.</u>  **Section 7.  Saving clause.** [This act] does not affect rights and duties that matured,

8    penalties that were incurred, or proceedings that were begun before [the effective date of this act].

9                                                - END -



*Authorized Print Version* - SB 153

# Defendant's Exhibit 4

# Montana House Districts

| House District | Population | Deviation |
|---:|---:|---:|
| 1 | 9502 | -12.36% |
| 2 | 10175 | -6.15% |
| 3 | 11053 | 1.95% |
| 4 | 11613 | 7.11% |
| 5 | 11490 | 5.98% |
| 6 | 11940 | 10.13% |
| 7 | 10459 | -3.53% |
| 8 | 12747 | 17.57% |
| 9 | 10789 | -0.49% |
| 10 | 11480 | 5.88% |
| 11 | 11068 | 2.08% |
| 12 | 11372 | 4.89% |
| 13 | 11024 | 1.68% |
| 14 | 10724 | -1.09% |
| 15 | 9485 | -12.52% |
| 16 | 9992 | -7.84% |
| 17 | 10194 | -5.98% |
| 18 | 9375 | -13.53% |
| 19 | 10668 | -1.60% |
| 20 | 10908 | 0.61% |
| 21 | 10028 | -7.51% |
| 22 | 9638 | -11.10% |
| 23 | 10508 | -3.08% |
| 24 | 9596 | -11.49% |
| 25 | 9803 | -9.58% |
| 26 | 10429 | -3.81% |
| 27 | 10186 | -6.05% |
| 28 | 9833 | -9.31% |
| 29 | 9773 | -9.86% |
| 30 | 9947 | -8.25% |
| 31 | 9947 | -8.25% |
| 32 | 10712 | -1.20% |
| 33 | 9762 | -9.96% |
| 34 | 10456 | -3.56% |
| 35 | 11491 | 5.99% |
| 36 | 9877 | -8.90% |
| 37 | 10499 | -3.16% |
| 38 | 9928 | -8.43% |
| 39 | 9521 | -12.18% |
| 40 | 10462 | -3.50% |
| 41 | 9157 | -15.54% |
| 42 | 9842 | -9.22% |
| 43 | 11029 | 1.72% |
| 44 | 10849 | 0.06% |
| 45 | 11362 | 4.80% |
| 46 | 10380 | -4.26% |

| | | |
|---|---|---|
| 47 | 9608 | -11.38% |
| 48 | 10016 | -7.62% |
| 49 | 9543 | -11.98% |
| 50 | 9741 | -10.15% |
| 51 | 11994 | 10.63% |
| 52 | 9960 | -8.14% |
| 53 | 15754 | 45.31% |
| 54 | 12606 | 16.27% |
| 55 | 10854 | 0.11% |
| 56 | 10586 | -2.36% |
| 57 | 9468 | -12.67% |
| 58 | 10473 | -3.40% |
| 59 | 9895 | -8.73% |
| 60 | 11042 | 1.84% |
| 61 | 11393 | 5.08% |
| 62 | 13624 | 25.66% |
| 63 | 13538 | 24.87% |
| 64 | 14503 | 33.77% |
| 65 | 17805 | 64.22% |
| 66 | 11032 | 1.75% |
| 67 | 12962 | 19.55% |
| 68 | 11642 | 7.38% |
| 69 | 11888 | 9.65% |
| 70 | 12435 | 14.69% |
| 71 | 10992 | 1.38% |
| 72 | 10422 | -3.87% |
| 73 | 9907 | -8.62% |
| 74 | 10362 | -4.43% |
| 75 | 10581 | -2.41% |
| 76 | 10776 | -0.61% |
| 77 | 10507 | -3.09% |
| 78 | 9793 | -9.68% |
| 79 | 10777 | -0.60% |
| 80 | 11776 | 8.61% |
| 81 | 11332 | 4.52% |
| 82 | 10576 | -2.45% |
| 83 | 10268 | -5.29% |
| 84 | 10729 | -1.04% |
| 85 | 10831 | -0.10% |
| 86 | 10918 | 0.70% |
| 87 | 11091 | 2.30% |
| 88 | 11334 | 4.54% |
| 89 | 9322 | -14.02% |
| 90 | 10236 | -5.59% |
| 91 | 10413 | -3.96% |
| 92 | 10588 | -2.34% |
| 93 | 10677 | -1.52% |

| | | |
|---|---|---|
| 94 | 10676 | -1.53% |
| 95 | 10776 | -0.61% |
| 96 | 13101 | 20.84% |
| 97 | 10715 | -1.17% |
| 98 | 10716 | -1.16% |
| 99 | 10234 | -5.61% |
| 100 | 10364 | -4.41% |
| Ideal District | 10842 | |

# Defendant's Exhibit 4

# Montana Senate Districts

| Senate District | Population | Percent Deviation |
|---|---|---|
| 1 | 19677 | -9.26% |
| 2 | 22666 | 4.52% |
| 3 | 23430 | 8.05% |
| 4 | 23206 | 7.01% |
| 5 | 22269 | 2.69% |
| 6 | 22440 | 3.48% |
| 7 | 21748 | 0.29% |
| 8 | 19477 | -10.18% |
| 9 | 19569 | -9.76% |
| 10 | 21576 | -0.50% |
| 11 | 19666 | -9.31% |
| 12 | 20104 | -7.29% |
| 13 | 20232 | -6.70% |
| 14 | 20019 | -7.68% |
| 15 | 19720 | -9.06% |
| 16 | 20659 | -4.73% |
| 17 | 20218 | -6.77% |
| 18 | 21368 | -1.46% |
| 19 | 20427 | -5.80% |
| 20 | 19983 | -7.85% |
| 21 | 18999 | -12.39% |
| 22 | 21878 | 0.89% |
| 23 | 21742 | 0.26% |
| 24 | 19624 | -9.50% |
| 25 | 19284 | -11.07% |
| 26 | 21954 | 1.24% |
| 27 | 28360 | 30.78% |
| 28 | 21440 | -1.13% |
| 29 | 19941 | -8.04% |
| 30 | 20937 | -3.45% |
| 31 | 25017 | 15.37% |
| 32 | 28041 | 29.31% |
| 33 | 28837 | 32.98% |
| 34 | 24604 | 13.46% |
| 35 | 24323 | 12.17% |
| 36 | 21414 | -1.25% |
| 37 | 20269 | -6.53% |
| 38 | 21357 | -1.51% |
| 39 | 20300 | -6.39% |
| 40 | 22553 | 4.00% |
| 41 | 21908 | 1.03% |
| 42 | 20997 | -3.17% |
| 43 | 21749 | 0.30% |
| 44 | 22425 | 3.41% |
| 45 | 19558 | -9.81% |
| 46 | 21001 | -3.15% |

| | | |
|---|---|---|
| 47 | 21353 | -1.53% |
| 48 | 23877 | 10.11% |
| 49 | 21431 | -1.17% |
| 50 | 20598 | -5.01% |
| Ideal District Size | 21685 | |

# Defendant's Exhibit 5

# Mead Affidavit

AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
 *Lieutenant General*
DAVID M.S. DEWHIRST
 *Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; AND DONALD SIEFERT, | Case No. 6:21-cv-00092 |
| Plaintiffs, | **AFFIDAVIT OF BRENT MEAD** |
| v. | |
| CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State, | |
| Defendant. | |

I, Brent Mead, being first duly sworn upon his oath, state as follows

based on my personal knowledge:

1.    I am counsel for the Defendant in the above action, am over the age of 18, am competent to testify as to the matters set forth herein, and make this Affidavit based upon my own personal knowledge and/or belief. I am generally familiar with the claims, materials, documents, and pleadings regarding this matter.

2.    The United States Census Bureau released population data to the State of Montana on August 16, 2021. The Public Law 94-171 data, containing Montana census block data, revealed detailed population shifts and is used to determine the current population size of municipalities, counties, legislative districts, and Public Service Commission Districts.

3.    Exhibit 4 is a true and accurate representation of the population size of each current Montana legislative district based on the 2020 census data. Data was extrapolated using the Dave's Redistricting tool recommended by the 2020 Montana Districting & Apportionment Commission at https://mtredistricting.gov/participate/. A link to the 2020 Montana State House district data is available at https://davesredistricting.org/maps#stats::fe2f2ff5-f70e-459d-8a1f-48b3786c8e64. A link to the 2020 Montana State Senate district data is

available at https://davesredistricting.org/maps#stats::0312ecba-7989-480c-bed4-777e2e06c178.

4.    Records for the 2020 Montana Districting & Apportionment Commission are available online at the official website, https://mtredistricting.gov/.    Meeting information, including public comment and testimony is available online at, https://mtredistricting.gov/meeting-info/.    Commission records indicate that the public submitted 231 proposed maps before the September 17, 2021, meeting.    https://mtredistricting.gov/submitted-congressional-maps/.    Commission records indicate 144 pages of public comment received prior to September 15, 2021, and 25 pages of public comment received between September 15, 2021 and September 17, 2021. https://mtredistricting.gov/september-17-2021-meeting/.

5.    Exhibit 1 is a true and accurate copy of the letter sent by Montana State Representative Zolnikov to the Montana Energy and Telecommunications Interim Committee.

6.    Exhibit 2 is a true and accurate copy of Montana State Senator Hertz requesting a bill draft to "redistrict the PSC districts."

7.    Exhibit 3 is a true and accurate copy of the final version of Senate Bill 153, 63rd Leg. Reg. Sess. (Mont. 2013).

Dated this 3rd day of January, 2022

BRENT MEAD

STATE OF MONTANA          )
                          :ss
COUNTY OF LEWIS & CLARK )

Signed and Sworn to (or affirmed) before me this _3_ day of January, 2022, by Brent Mead.

Notary

KELLY RAE MOUGEOT
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
July 18, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 349 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/ Brent Mead
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: January 3, 2022        /s/   Brent Mead
BRENT MEAD