Constance Van Kley
Rylee Sommers-Flanagan
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com

Joel G. Krautter
  Netzer Law Office P.C.
  1060 S. Central Ave. Ste. 2
  Sidney, MT 59270
  (406) 433-5511
  joelkrautternlo@midrivers.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; and DONALD SEIFERT,<br><br>*Plaintiffs*,<br><br>vs.<br><br>CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State,<br><br>*Defendant*. | Cause No.<br>6:21-cv-92-PJW-DWM-BMM<br><br>**Plaintiffs' Reply in Support of Motion for Temporary Restraining Order or Preliminary Injunction** |

# Table of Contents

Table of Authorities ............................................................................... iii

Introduction ...............................................................................................1

Argument ...................................................................................................1

    I.    Plaintiffs' claim is ripe because the PSC has not been redistricted for over 18 years, and no legal mechanism guarantees future redistricting. ...........................................................................1

        A. The only evidence supporting likely redistricting in 2023 arose in response to this lawsuit and does not affect justiciability. ....2

        B. PSC redistricting is not scheduled to occur at regular intervals. .......................................................................................................4

    II.   The Winter factors counsel in favor of a preliminary injunction. .......................................................................................................8

        A. Plaintiffs are likely to succeed on the merits because the legislature has failed to timely act to reapportion the PSC. ......8

        B. Plaintiff Brown and other voters within District 5 will be irreparably injured in the absence of an injunction. ................10

        C. The balance of the equities weighs in favor of the requested injunction. ..............................................................................11

        D. An injunction is in the public interest. .....................................12

Conclusion ..............................................................................................14

# Table of Authorities

## Cases

*Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ..................................13

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (2000) ..............3

*Democratic Nat'l Comm. v. Watada*, 198 F. Supp. 2d 1193, 1197 (D. Haw. 2002) ...........................................................................................3

*Growe v. Emison*, 507 U.S. 25, 34 (1993) ...........................................7, 13

*Index Newspaper LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 837 (9th Cir. 2020) ...................................................................................11

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006) ................................................................................5, 10, 13

*Mahan v. Howell*, 410 U.S. 315, 319–20 (1973) .........................................5

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) .......................12

*Old Person v. Cooney*, 230 F.3d 1113, 1118 (9th Cir. 2000) ....................6

*Reynolds v. Sims*, 377 U.S. 533, 583 (1964) .....................................5, 7, 9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ..................8

## Constitutional Provisions

Mont. Const. art. V, § 14(4) ......................................................................6

*Reply in Support of Motion for Temporary Restraining Order*         iii
*or Preliminary Injunction*

## Rules

Fed. R. Civ. P. 12 ...................................................................................8

Local Rule 7.1(2)(E) ..............................................................................15

## Other Authorities

Sen. Comm. on Energy & Telecommunications, Hrg. on S.B. 153 at

    15:20, 58th Leg., Reg. Sess. (Feb. 19, 2013) ....................................7

# INTRODUCTION

In her Response to Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction, Defendant Montana Secretary of State Christi Jacobsen (the "State") presents almost no argument on the merits, focusing instead on justiciability. Tellingly, the State submits evidence that, *after this lawsuit was filed*, legislators began making plans to redistrict Montana's Public Service Commission ("PSC"). Far from demonstrating that Plaintiffs' claim is unripe, the State's Response thus demonstrates the necessity of this litigation.

Plaintiffs respectfully request that the Court grant their Motion.

# ARGUMENT

I. **Plaintiffs' claim is ripe because the PSC has not been redistricted for over 18 years, and no legal mechanism guarantees future redistricting.**

The State argues that Plaintiffs' claim are both stale—because Plaintiffs did not timely challenge the Legislature's failure to redistrict following the 2010 Census—and unripe—because Plaintiffs cannot yet challenge the failure to redistrict based on the 2020 Census. These arguments are nothing more than misdirection. Because the current map is over 18 years old, Plaintiffs' challenge is ripe.

*Reply in Support of Motion for Temporary Restraining Order
or Preliminary Injunction*  1

No mechanism provides for PSC reapportionment in the third year following each decennial census, and no historical pattern suggests that such reapportionment is likely to occur in 2023. The legislature has failed to fulfill its obligation to create a constitutional map. Plaintiffs may therefore exercise their right to challenge the existing map. Publication of recent census data does not limit Plaintiffs' claim: 2020 Census data is available, and the map should be drawn using the most accurate, up-to-date information in time for the 2022 election.

### A. The only evidence supporting likely redistricting in 2023 arose in response to this lawsuit and does not affect justiciability.

No viable evidence supports the State's contention that the legislature will redistrict the PSC in 2023 absent judicial intervention. In its regular session, the 2021 Legislature did not prepare to redistrict the PSC in 2023. Nor did prior legislatures. (Doc. 6 at 25–28.) Notably, the PSC opposed the failed 2013 redistricting bill on the grounds that the issue required more "time, research and deliberation" than could occur during the regular session. (*See* Doc. 6-7 at 2.)

The State now offers evidence that, after this lawsuit was filed, two legislators sent communications suggesting their intent to redistrict the

PSC in 2023. (Doc. 8 at 36, 38.) This is welcome news. But it is not evidence that Plaintiffs' claim is premature.

Dated after the Complaint was filed, neither communication affects ripeness, which is determined at the time of filing. *Democratic Nat'l Comm. v. Watada*, 198 F. Supp. 2d 1193, 1197 (D. Haw. 2002) (collecting cases). Indeed, if these communications—which show only that two legislators, presumably after learning of this lawsuit, are now thinking about redistricting—have any effect, it is to support Plaintiffs' claim that redistricting is due.

Perhaps more to the point, these documents also do not moot this case. *Cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (2000) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). Importantly, no real action has been taken. On December 30, 2021, Representative Katie Zolnikov asked that the Energy and Telecommunications Committee "discuss redistricting the [PSC]" on January 18, 2022. (Doc. 8 at 36.) Senator Greg Hertz sent an email to enter a bill draft on December 22, 2021, which reads only: "I would like to enter a bill draft for next session. My intent of this bill would be to

redistrict the PSC districts." (Doc. 8 at 38.) Particularly in light of extensive legislative history showing the intractability of the current PSC map, (*see* Doc. 6 at 25–28), evidence that two legislators may try to do something about the unconstitutional map in the future does not affect justiciability.

Indeed, this is the State's primary argument: that the Court should not remedy the unconstitutional maps because the legislature might redistrict the PSC in 2023. But aside from the paper-thin evidence of legislative intent in Representative Zolnikov's letter and Senator Hertz's email, *nothing* suggests that legislative action is likely in 2023.

**B. PSC redistricting is not scheduled to occur at regular intervals.**

The State argues that the redistricting cycle applicable to state legislative districts also applies—or perhaps is relevant—to the PSC districts. Not so. The legislature has only once redistricted the PSC since it was established in 1974, and it has not acted in over 18 years. There is no established redistricting cycle that would be disrupted by Court action.

Had the legislature redistricted the PSC in 2013, it would have until 2023 to update the map, even though the districts would be

*Reply in Support of Motion for Temporary Restraining Order* 4
*or Preliminary Injunction*

unequally distributed during the 2022 election: it would benefit from the "legal fiction" that "plans are constitutionally apportioned throughout the decade." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006). But, despite having before it a bill that would have equalized districts and maintained county boundaries,[1] the 2013 Legislature declined to update the PSC map. Nor has the legislature subsequently taken action to redistrict the PSC or to ensure regular redistricting. *See Reynolds v. Sims*, 377 U.S. 533, 583 (1964) ("[W]e do not regard the Equal Protection Clause as requiring daily, monthly, annual, or biennial reapportionment, so long as a State has a reasonably conceived plan for period readjustment of legislative representation.").

The State argues that redistricting occurs in the third year following each census. (Doc. 8 at 9, 12.) This is true for legislative

---

[1] The State argues that the failure to redistrict post-2010 is excusable because of its interest in preserving the integrity of political subdivisions. Notably, SB153 (either as introduced or as amended) would not have split counties. (Docs. 6-5; 8 at 40–42.) There is no viable argument that the legislature's inaction is attributable to a legitimate state interest in preserving county boundaries. *See Mahan v. Howell*, 410 U.S. 315, 319–20 (1973) (upholding map when "it was *impossible* to draft district lines to overcome unconstitutional dispar[i]ties and still maintain [the integrity of political subdivisions]") (emphasis added).

*Reply in Support of Motion for Temporary Restraining Order*     5
*or Preliminary Injunction*

districts because the Constitution requires the Montana Redistricting Commission to create a districting plan for state Senate and House districts ahead of the third-year regular legislative session. Mont. Const. art. V, § 14(4); *Old Person v. Cooney*, 230 F.3d 1113, 1118 (9th Cir. 2000). But neither the Montana Constitution nor statutory law tasks the Commission—or anyone else—with preparing a PSC districting plan. The Commission has never prepared a PSC map, and it will not do so prior to the 2023 session. Rather than supporting the State's position, the Commission's consideration of legislative districting in 2022 highlights the absence of a similar mechanism to ensure regular reapportionment of the PSC.

Nor does the "[l]egislative history demonstrate[] the Montana Legislature must be given adequate opportunity to reapportion based on the 2020 census." (Doc. 8 at 17.) Setting aside the significance of the many bills introduced to redistrict or alter the PSC, (*see* Doc. 6 at 25–28), the simple fact is that the legislature has not redistricted the PSC for over 18 years. The more detailed legislative history is nonetheless evidence of: (1) the PSC's historic opposition to redistricting or altering the PSC's structure; (2) the rarity with which redistricting has

*Reply in Support of Motion for Temporary Restraining Order or Preliminary Injunction* 6

occurred—once in 2003, since the five-district PSC was established in 1974[2]; (3) the apparent difficulty of passing a redistricting bill or other bill that would affect the viability of this action; and (4) the continued absence of a legal mechanism to ensure future redistricting.

In short, the legislature's failure to redistrict the PSC for over 18 years—regardless of the reasons for that failure—conclusively establishes the ripeness of Plaintiffs' claim. There is no rule that litigants must present their districting challenges at a specific time after each election, but there is a requirement that states "timely" redistrict legislative bodies. *Reynolds*, 377 U.S. at 586; *see, e.g.*, *Growe v. Emison*, 507 U.S. 25, 34 (1993) (federal court erred in redrawing districts in 1992 based on 1990 Census data when districts had been drawn in 1983 and state redistricting proceedings were ongoing). Because the legislature has neither timely redistricted nor made a concrete plan to do so, Plaintiffs' claim is ripe.

---

[2] Senator Fred Thomas testified in 2013 that legislative services division staff brought the issue to his attention, prompting him to sponsor the 2003 redistricting bill. SB153, the 2013 bill, would have therefore not only redistricted the PSC but provided for future redistricting. Sen. Comm. on Energy & Telecommunications, Hrg. on S.B. 153 at 15:20, 58th Leg., Reg. Sess. (Feb. 19, 2013).

II. **The *Winter* factors counsel in favor of a preliminary injunction.**

Plaintiffs have established: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm; (3) that the balance of equities supports preliminary relief; and (4) that an injunction would advance the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). (See Doc. 7.) The State's arguments under *Winter* are largely duplicative of their justiciability argument, and they fail for the same reasons.

A. **Plaintiffs are likely to succeed on the merits because the legislature has failed to timely act to reapportion the PSC.**

The State's arguments on the merits overlap substantially with its position on ripeness. Except for asserting that the legislative history indicates a probability of redistricting in 2023, the State does not dispute the points raised in Plaintiffs' opening brief. It therefore concedes, at least for purposes of the pending preliminary injunction motion, both the applicability of the one-person, one-vote rule to the PSC and that the maximum population deviation exceeds 10%.[3] Thus, by the State's own

---

[3] In its brief, the State does not dispute the underlying population figures or the calculations presented in Plaintiffs' Complaint, (Doc. 1), or opening brief, (Doc. 6). Defendant was served on December 10, 2021, (Docs. 4, 4-1), but has not filed an Answer or other responsive pleading. *See* Fed. R.

*Reply in Support of Motion for Temporary Restraining Order*     8
*or Preliminary Injunction*

estimation, Plaintiffs are likely to succeed on the merits of this case if: (1) their claim is ripe, *see supra* p. 2–8; and (2) the legislature "failed to act 'in a timely fashion'" after "having had an adequate opportunity to do so." (Doc. 8 at 23 (quoting *Reynolds*, 377 U.S. at 586).)

The legislature has had an "adequate opportunity" over the last 18 years to redistrict the PSC or, at minimum, to ensure that redistricting will occur following the 2020 Census. It failed to do so, despite the clarity with which the issue was presented during the 2013 legislative session, at which time 2010 Census data showed a maximum population deviation of 13.79%. (Docs. 6 at 25–26; 6-3.) And this failure makes Montana an extreme outlier among states. (Doc. 6 at 15–18.) Had the legislature passed Senate Bill 153 ("SB153") as originally drafted, the current maximum population deviation would be just over 11%.[4]

---

Civ. P. 12 (setting forth 21-day deadline for answering a complaint). Thus, it is unclear whether the State admits or denies the allegations in the Complaint.

[4] The State argues that SB153, if enacted as amended, would result in a maximum deviation exceeding 15% following the 2020 Census. This argument is irrelevant: "undoubtedly reapportioning no more frequently than every 10 years leads to some imbalance in the population of districts toward the end of the decennial period." *Reynolds*, 377 U.S. at 583. Further, under Senator Fred Thomas's proposed map, (Doc. 6-5), the current maximum population deviation would be just over 11%—close, in

Reply in Support of Motion for Temporary Restraining Order    9
or Preliminary Injunction

Further, the legislature would have the benefit of a ten-year grace period to redistrict, and Plaintiffs' claim truly would be unripe. *League of United Latin Am. Citizens*, 548 U.S. at 421.

The legislature has failed to timely redistrict or ensure future redistricting because, again, it has allowed over 18 years to elapse without taking action. Thus, Plaintiffs' claim is not, as the State contends, based exclusively on the publication of 2020 Census data. Rather, the entire history of legislative inaction is relevant to the current lawsuit. That new census data recently has become available presents an opportunity to create a map consistent with the current population distribution; it is not the sole precipitating factor for this lawsuit, and each decennial census is not a reset button that excuses the legislature's long history of indifference to one-person, one-vote principals.

### B. Plaintiff Brown and other voters within District 5 will be irreparably injured in the absence of an injunction.

Plaintiffs have demonstrated the likelihood of irreparable harm absent an injunction because Plaintiff Bob Brown, like other voters in

---

other words, to the presumptively constitutional 10% deviation, (*see* Docs. 6-1, 6-5). In any event, a 15% deviation is much closer to the constitutional floor than the current 24% deviation.

District 5, will be deprived of their right to cast an equal vote if the election proceeds under the malapportioned map. *See Index Newspaper LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 837 (9th Cir. 2020). In its Order partially granting Plaintiffs' motion, the Court found that "the record indicates that at least two of the Commission's districts are presumptively unconstitutional as they appear to dilute or concentrate certain votes to an impermissible level." (Doc. 7 at 6–7.)

In response, the State raises only the same arguments regarding justiciability discussed at length above. It does not dispute that, if Plaintiffs' claim is ripe, the alleged constitutional harm would rise to the level of irreparable injury. Because Plaintiffs' claim is justiciable, this factor weighs heavily in favor of a preliminary injunction.

### C. The balance of the equities weighs in favor of the requested injunction.

As the Court recognized in its Order, the balance of equities weighs in favor of an injunction. (Doc. 7 at 7.) Again, the relief sought in this motion is only a delay in candidate certification pending final disposition of this case. Particularly given the State's apparent agreement with the underlying facts alleged in the Complaint, *see supra* p. 9 & n.3, this case can be resolved in time to avoid interference with the 2022 election.

Reply in Support of Motion for Temporary Restraining Order or Preliminary Injunction

11

In its analysis of this factor, the State rehashes its argument that Plaintiffs' claim is not ripe until the 2023 regular session has passed. (Doc. 8 at 27–30.) In support of its position, it presents a hypothetical to suggest that Court action may disenfranchise voters. (Doc. 8 at 28–29.) But it is easy to avoid the result the State suggests. Only two districts are in play in 2022. Although one is overpopulated by 15,521 voters, the other is underpopulated by 30,229. In other words, approximately 15,000 *more voters* should be selecting a commissioner in 2022. Notably, if the Court abstains, approximately 15,000 Montanans will vote in neither the 2022 nor the 2024 election because they will need to be shifted from Districts 2, 3, and/or 4 into District 1. If it is the State's position that any districting plan should minimize disenfranchisement—a worthy position, to be sure—then it may advocate for that result in the remedy stage.

### D. An injunction is in the public interest.

Finally, an injunction would serve the public's interests in preventing constitutional harm and in ensuring the orderliness of the 2022 election. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). The State does not argue outright that these interests are unimportant, but it contends

that the interests of Montanans in having an equal vote are less significant than "the interests of the Montana Legislature, a non-party," which are "paramount." (Doc. 8 at 7.)

Essentially, the State again spins this factor as an opportunity to restate its thesis that this lawsuit is premature. Plaintiffs agree that the legislature should have the opportunity to redistrict the PSC. But it has had nearly two decades of opportunity to take action after the 2003 redistricting, and it has failed to act. Thus, while it is true that Plaintiffs have no "constitutional right to mid-cycle reapportionment," (Doc. 8 at 32 (quoting *League of United Latin Am. Citizens*, 548 U.S. at 421.), here there is no "cycle" to interrupt. Comity and federalism "require[] deferral, not abstention." *Growe*, 507 U.S. at 37.

Action by this Court will not interfere with state legislative processes. Notably, the legislature continues to have the power to redistrict the PSC. It may call a special session and moot this case. Further, the legislature can undo anything that the Court does. The legislative interests asserted by the State do not outweigh voters' fundamental constitutional right to cast an equal vote.

## CONCLUSION

Plaintiffs respectfully ask the Court to (1) grant their motion for a temporary restraining order and/or preliminary injunction and (2) enjoin Secretary Jacobsen from certifying candidates for PSC Districts 1 and 5 pending a final determination of this matter.

Respectfully submitted this 5th day of January, 2022.

/s/ *Constance Van Kley*
Constance Van Kley
Rylee Sommers-Flanagan
Upper Seven Law

/s/ *Joel G. Krautter*
Joel G. Krautter
Netzer Law Office P.C.

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(2)(E), I hereby certify that this brief includes 2,824 words, excluding caption, certificates, and tables. The word count was calculated using Microsoft Word.

/s/ *Constance Van Kley*
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed in CM/ECF on January 5, 2022, and automatically served on all registered users.

/s/ *Constance Van Kley*
Attorney for Plaintiffs