# Exhibit 4

Expert Report of the Honorable Jim Regnier

Federal Rule of Civil Procedure 26(a)(2)(B) Expert Witness Report
Honorable Jim Regnier, retired Justice, Montana Supreme Court

I. **Complete statement of all opinions and the basis and reasons for them.**

   A. **The maximum population deviation between Montana's current five Public Service Commission Districts exceeds 10% and is presumptively unconstitutional under the one-person, one-vote rule of the Fourteenth Amendment to the United States Constitution.**

In 2020, the United States Census Bureau conducted the decennial census required by Article I, Section 2 of the United States Constitution. Census Data was released to the states on August 12, 2021. According to the 2020 census, Montana's population is now 1,084,225. The ideal population for each Public Service Commission District in Montana would be 216,845. This figure is achieved by dividing Montana's total population by five. *Evenwel v. Abbott,* 578 U.S. 54, 60 n.2 (2016).

A map showing 2020 Census population data for all Montana counties is reproduced immediately below. Plaintiffs' counsel created this map by adding population data from census.gov to a population density map downloaded directly from census.gov. Aff. of Constance Van Kley ¶ 3.



1

"Where the maximum population deviation between the largest and the smallest district is less than 10%...a state or local legislative map presumptively complies with the one-person, one-vote rule." *Evenwel*, 578 U.S. at 60.  Based on 2020 Census data, the population of the current District 1 (186,616) downward deviates approximately 14% from the ideal population, while the largest district, District 3 (239,748) upward deviates approximately 10%.  Under the *Evenwel* formula, the maximum deviation is roughly 24% which exceeds the presumptively reasonable 10% deviation.  *See* 578 U.S. at 60.  Thus, the current district map is "presumptively impermissible."  *Id*.

The current PSC map is reproduced immediately below with 2020 Census data incorporated.  This map was created with free online redistricting software available at davesredistricting.org.  Aff. of Constance Van Kley ¶ 4.  Defendant has used davesredistricting.org in this litigation. (Doc. 8 at 52–53.)



District 1: 186,616 (-30,229, -13.94%)
District 2: 216,532 (-313, -0.14)
District 3: 239,748 (+22,903, +10.56%)
District 4: 208,963 (-7,882, -3.36%)
District 5: 232,366 (+15,521, +7.16%)

In the 2022 election cycle two Commission seats are up for election, Districts 1 and 5. As noted by this court, the filing period for this election ends March 14, 2022, and the primary election will take place in June 2022.  If these elections proceed under the current map, the elections will be constitutionally infirm and violate the one-person, one-vote rule. The named plaintiffs will be denied their protection of the Fourteenth Amendment to the United States Constitution.

**B. This court should grant relief to Plaintiffs and redraw a Public Service Commission map to reapportion Districts 1-5, guided by the mandatory and discretionary criteria otherwise used for redistricting in Montana.**

Article V, Section 14 of the Montana Constitution assigns the task of redistricting to an independent commission of five citizens, "none of whom may be public officials." The Montana Districting and Apportionment Commission is tasked with redistricting State Senate, State House, and Federal Congressional districts. Montana is one of relatively few states with a nonlegislative redistricting commission. Caitlin Boland Aarab & Justice Jim Regnier, *Mapping the Treasure State: What States Can Learn from Redistricting in Montana*, 76 Mont. L. Rev. 257, 260 (2015). Even fewer states, including Montana, provide for wholly independent redistricting commissions; in Montana, the legislature cannot overrule the commissions' redistricting plans. *Id.* Montana selected redistricting by nonlegislative, bipartisan commission because legislative redistricting had proven inadequate. *Id.* at 260–61. Historically, the legislature had failed to redistrict entirely during some sessions; in others, it selected plans with impermissibly high population deviations. *Id.* at 260–62.

Redistricting is guided by what is commonly referred to as mandatory and discretionary criteria. Mandatory criteria consist of federal and state constitutional requirements that must be met when creating voting districts. Both the 2010 and 2020 Commissions recognize four mandatory criteria. First, in order to comply with the federal Constitution, any voting district must adhere to the one-person, one-vote requirement. U.S. Const., amend. XIV. Second, in creating any district, minority voting rights must be guaranteed as required by Article II, Section 4 of the Montana Constitution and the federal Voting Rights Act. 52 U.S.C. § 10101. Third, race cannot be the predominant factor to which the traditional redistricting criteria are subordinated. *Shaw v. Reno*, 509 U.S. 630 (1993). Fourth, under the Montana Constitution each district shall consist of compact and contiguous territory. Mont. Const. art. 5, § 14.

The 2010 Districting and Apportionment Commission also adopted discretionary criteria. Discretionary criteria provide further guidance when drawing a voting district. Discretionary criteria are usually adopted through public hearings and comment periods. This was the case in both the 2010 and 2020 Commissions. For example, the 2010 Commission adopted criteria after holding public hearings in Helena, Missoula, and Billings, which were video conferenced to Great Falls, Havre, Kalispell, and Miles City. Aarab & Regnier, 76 Mont. L. Rev. at 270. The 2020 Commission similarly adopted criteria only after public comment and debate. *See* Mont. Districting & Apportionment Comm'n Meeting Minutes (July 8, 2021), https://leg.mt.gov/content/Districting/2020/Meetings/July-2021/DAC-July8-2021-MINUTES.pdf; *id.* (July 9, 2021), https://leg.mt.gov/content/Districting/2020/Meetings/July-2021/DAC-July9-2021-MINUTES.pdf; *id.* (July 20, 2021), https://leg.mt.gov/content/Districting/2020/Meetings/July-20-2021/DAC-July20-2021-MINUTES.pdf.

In 2010 the Commission adopted the following discretionary criteria:
1. Following the lines of political units;
2. Following geographic boundaries; and
3. Keeping communities of interests intact.

Mont. Districting & Apportionment Comm'n, Final Legislative Redistricting Plan Based on the 2010 Census 13-14 (Feb. 12, 2013), (available at http://perma.cc/2H5X-PLGK). The 2010

3

Commission also "voted to use a 3% deviation from the ideal district population" for each district, which had the effect of necessarily limiting the maximum population deviation to 6% or less. *Id.* at 13; *see also* Aarab & Regnier, 76 Mont. L. Rev. at 265 n.62.

The 2020 Commission adopted the following "goals" (equivalent to the 2010 Commission's "discretionary criteria") for state legislative districts[1]:

1. No plan can be drawn to unduly favor a political party;
2. The commission shall attempt to minimize dividing cities, towns, counties and federal reservations when possible;
3. Keeping communities of interest intact;
4. The commission may consider competitiveness; and
5. The commission shall consider assigning holdover senators to the Senate District which contains the greatest number of residents of the district from which they were previously elected when possible.

Mont. Districting & Apportionment Comm'n, Criteria & Goals for State Leg. Districts (July 2021), available at https://leg.mt.gov/content/Districting/2020/Topics/Criteria/adopted-criteria-state-legislative-dac-july-2021.pdf.

With the above in mind, the following are maps that could be adopted by this court for five new Public Service Commission Districts. Because the Montana Districting and Apportionment Commission is not tasked with redistricting the Public Service Commission, the criteria are not binding. However, in my experience as member of the Commission, the discretionary criteria are helpful guides for choosing between legally sufficient districting plans, and they may be similarly helpful to the Court.

Given the exigencies of the present, a primary focus in drafting the maps was to be the least disruptive as possible, using the existing Districts as a starting point, and yet comply with the one-person, one-vote requirement and other constitutional and statutory requirement. The maps are examples of maps that the Court may adopt which would minimize disruption between the current map and any future map that the legislature may adopt. Notably, each map prevents redistricting incumbent or current commissioners. Aff. of Constance Van Kley ¶ 7.

Obviously, there is no time for public comment which is unfortunate. The mapping was prepared with online software found at davesredistricting.org. Aff. of Constance Van Kley ¶ 5. The 2020 Montana Districting and Apportionment Commission recommends using this website, and the Defendant previously used it to establish population data in this litigation. (Doc. 8 at 52–53.) Each map shows the current district boundaries in white and includes federal reservations.

> **1. Plaintiffs' Proposed Map 1 satisfies state and federal requirements, advances the goals of redistricting set by the 2010 and 2020 Commissions, and minimizes the risk of disruption.**

Plaintiffs' Proposed Map 1 is reproduced immediately below.

---

[1] Unlike the 2000 and 2010 Commissions, the 2020 Commission was tasked with drawing federal congressional districts. The commission adopted slightly different criteria for federal congressional and state legislative districts.

4



District 1: 219,130 (+2,285, +1.05%)
District 2: 217,948 (+1,103, +0.51%)
District 3: 216,073 (-772, -0.36%)
District 4: 215,226 (-1,619, -0.75%)
District 5: 215,848 (-997, -0.46%)

    This map satisfies the mandatory criteria recognized by the 2010 and 2020 Redistricting and Apportionment Commissions.  The maximum population deviation of 1.8% is well under 10% and therefore presumptively constitutional, satisfying the one-person, one-vote rule.  *See Evenwel*, 578 U.S. at 60.  It does not fail to protect minority voting rights because it does not discriminate on the basis of race: it is not possible to draw a map that creates a majority-minority district, and Montanans of all races have roughly equal votes.  *See* 52 U.S.C. § 10301.  By assigning four reservations and the Little Shell Tribe of Chippewa Indians (headquartered in Great Falls) to a single district, it may improve Native Americans' ability to participate in and influence the outcome of elections.  It also does not subordinate traditional redistricting criteria to race. *See Shaw*, 509 U.S. 630.  Finally, each district is contiguous and relatively compact, given the difficulties created by the unequal distribution of people across Montana, but the shapes of the districts are somewhat less regular and compact than in the current map and Plaintiffs' Proposed Maps 2 and 3.  *See* Mont. Const. art. 5, § 14.

    The map also largely promotes the discretionary criteria used in Montana.  It follows the lines of political units because it only divides two counties: Sanders and Missoula counties, and only to avoid dividing the Flathead Indian Reservation.  Because it is very similar to the current map, it largely preserves the same geographic boundaries and communities of interest.  It is not gerrymandered to unduly favor a political party, as the shapes are drawn to minimize disruption and disenfranchisement.

5

Additionally, this map would cause only slight disruption in the 2022 and 2024 election cycles, even if the legislature enacts a new plan in 2023. All voters scheduled to vote in 2022 under the current plan will vote. District 1 adds counties from Districts 2, 3, and 5. District 5 adds precincts within Sanders and Missoula Counties to avoid splitting the Flathead Indian Reservation.

2. **Plaintiffs' Proposed Map 2 satisfies state and federal requirements, advances the goals of redistricting set by the 2010 and 2020 Commissions, and limits the risk of disruption.**

Plaintiffs' Proposed Map 2 is reproduced immediately below.



Like Plaintiffs' Proposed Map 1, this map satisfies the mandatory criteria. The maximum population deviation of 1.77% satisfies the one-person, one-vote rule. *See Evenwel*, 578 U.S. at 60. For the same reasons as Map 1, it does not fail to protect minority voting rights. *See* 52 U.S.C. § 10301. It does not subordinate traditional redistricting criteria to race. *See Shaw*, 509 U.S. 630. Finally, each district is contiguous, and Districts 3 and 4, in particular, are more regular and compact than in Map 1 and the current Public Service Commission Map. *See* Mont. Const. art. 5, § 14.

The map also largely promotes the discretionary criteria used in Montana. It divides two counties: Flathead and Pondera counties, but only to avoid dividing the Flathead Indian

6

Reservation and the Blackfeet Reservation. Again, it is similar to the current map and generally preserves the same geographic boundaries and communities of interest. It is not drawn to unduly favor a political party.

Additionally, this map would cause minimal disruption in the 2022 and 2024 election cycles, even if the legislature enacts a new plan in 2023. Nearly all voters scheduled to vote in 2022 under the current plan will vote. District 1 adds counties and precincts currently in Districts 2, 3, and 5. District 5 annexes Powell and Lincoln counties, currently found in District 4. The only voters currently scheduled to vote in the 2022 election who are districted out of District 5 are in Lake County and far southwestern Flathead County.

### 3. Plaintiffs' Proposed Map 3 satisfies state and federal requirements, advances the goals of redistricting set by the 2010 and 2020 Commissions, and limits the risk of disruption.

Plaintiffs' Proposed Map 3 is reproduced immediately below.



This map also satisfies the mandatory criteria. The maximum population deviation of 2.75% satisfies the one-person, one-vote rule, although it has a higher deviation than Maps 1 and 2. *See Evenwel*, 578 U.S. at 60. Like Maps 1 and 2, it does not fail to protect minority voting rights. *See* 52 U.S.C. § 10301. Similar to Map 1, it assigns four reservations and the Little

7

Shell Tribe to a single district, improving the opportunity of Native Americans to participate in the political process.  It does not subordinate traditional redistricting criteria to race.  *See Shaw*, 509 U.S. 630.  Finally, each district is contiguous, and the districts are more regular and compact than in Maps 1 and 2.  *See* Mont. Const. art. 5, § 14.

The map also largely promotes the discretionary criteria used in Montana.  It divides only one Flathead County, and again only to avoid dividing the Flathead Indian Reservation.  It is largely similar to the current map and generally preserves the same geographic boundaries and communities of interest.  It is not drawn to unduly favor a political party.

Like Map 2, Map 3 would cause minimal disruption in the 2022 and 2024 election cycles, even if the legislature enacts a new plan in 2023.  Nearly all voters scheduled to vote in 2022 under the current plan will vote.  District 1 adds counties and precincts currently in Districts 2, 3, and 5.  District 5 annexes Powell and Lincoln counties, currently found in District 4, and Broadwater and Jefferson counties, currently found in District 3.  The only voters currently scheduled to vote in the 2022 election who are districted out of District 5 are in Lake County and far southwestern Flathead County.

## II.     Facts or data considered in forming opinions

1. Decennial Census 2020 data
2. Plaintiffs' Complaint
3. Plaintiffs' Brief in Support of their Motion for a Preliminary Injunction
4. Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction
5. Mandatory and Discretionary Criteria adopted by the Districting and Apportionment Commission, 2010
6. Mandatory and Discretionary Criteria adopted by the Districting and Apportionment Commission, 2020
7. Caselaw, government publications, and scholarship cited within Section I.

## III.    Exhibits to summarize and support opinions

1. Affidavit of Constance Van Kley
   1-A.  Map showing 2020 Census population data
   1-B.  Current Public Service Districts Map with population data included
   1-C.  Proposed Map 1
   1-D.  Proposed Map 2
   1-E.  Proposed Map 3
2. Mandatory and Discretionary Criteria adopted by the Districting and Apportionment Commission, 2010
3. Mandatory and Discretionary Criteria adopted by the Districting and Apportionment Commission, 2020

IV. <u>Witness qualifications and publications authored in previous 10 years.</u>

Justice Jim Regnier is a 1966 graduate of Marquette University, Milwaukee, Wisconsin. Upon graduation Justice Regnier was commissioned as an officer in the United States Navy and served until he resigned is commission in 1970. He is a Vietnam veteran. In the fall of 1970, Justice Regnier began studies at the University of Illinois, Urbana, Illinois and received his JD degree in 1973. He has been honored as a distinguished law graduate of the University of Illinois.

From 1973 until 1978 Justice Regnier practiced law in Illinois until he moved to Montana in 1978. He continued private practice in Montana representing clients in complex civil cases throughout Montana. He regularly appeared in the "Best Lawyers in America" publication and received the highest ratings in national publications including Martindale Hubbell. Justice Regnier is a charter member of the Montana Chapter of the American Board of Trial Advocates, a judicial fellow in the American College of Trial Lawyers and the International Society of Barristers.

Justice Regnier was elected to the Montana Supreme Court in November of 1996 and served on the Court until his retirement in 2005. During his tenure Justice Regnier served one term as president of the Montana Judges Association.

Since retiring from the Court Justice Regnier has served as a mediator of complex civil disputes. He has also taught product liability law at the University of Montana School of Law as an adjunct professor. In 2009 Justice Regnier served as an international election observer for the presidential elections in El Salvador.

Justice Regnier was appointed by the Montana Supreme Court to serve as presiding officer of the Montana Districting and Apportionment Commission for the 2010 redistricting cycle. In 2015 he co-authored *Mapping the Treasure State, What States Can Learn from Redistricting in Montana*, 76 Mont. L. Rev. 257 (2015).

V. <u>Other cases in which witness has testified as an expert in past 4 years.</u>

None.

VI. <u>Statement of compensation for study and testimony.</u>

Justice Regnier is charging $300/hour for study and testimony.

Respectfully this 26 day of January, 2020.

_____
The Honorable James Regnier