AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
  *Lieutenant General*
DAVID M.S. DEWHIRST
  *Solicitor General*
BRENT MEAD
  *Assistant Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov

EMILY JONES
  *Special Assistant Attorney General*
115 N. Broadway, Suite 410
Billings, MT  59101
Phone:  406-384-7990
emily@joneslawmt.com

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; AND DONALD SIEFERT, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State, <br><br> Defendant. | Case No. 6:21-cv-00092 <br><br> **BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiffs name only Christi Jacobsen in her official capacity as Montana Secretary of State (the "Secretary" or "Secretary Jacobsen") in their complaint–not the Montana Legislature, not the Governor, and not the State of Montana itself. This creates a problem for Plaintiffs because the Secretary doesn't participate in reapportionment, and she cannot re-draw Public Service Commission ("PSC") district lines. Even if the Secretary agreed, in full, with the Plaintiffs' allegations, she cannot negotiate or reach a settlement to cure Plaintiffs' alleged injuries because the issues in this case reach beyond the Secretary's legal authority. This fundamental defect means the Court cannot grant Plaintiffs' ultimate requested relief because the Plaintiff doesn't have an injury traceable to the Secretary's conduct.

A further defect lies in the request for a three-judge panel. The three-judge panel statute authorizes such panels to hear constitutional challenges to the apportionment of a statewide legislative body. But the Montana Public Service Commission ("PSC") is an executive agency and therefore the statute doesn't apply.

As Secretary Jacobsen previously argued, this case should be stayed so that the appropriate entity, the Montana Legislature, has an adequate opportunity to reapportion based on the 2020 census. The Montana Legislature next meets in 2023 and by all indications appears to be preparing to reapportion the PSC districts.

But whether the Montana Legislature acts or not, the Secretary is simply powerless to take any action to change current PSC districts. Because her conduct is not at issue, and because the Plaintiffs have not sued the parties who can change PSC districts, this Court should deny Plaintiffs' requests for relief.

## LEGAL STANDARD

Summary judgment is proper if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it could "affect the outcome" of a lawsuit, and an issue is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party need not disprove its opponent's claims, but must only show or "point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its initial burden, the burden shifts to the non-moving party to establish specific facts showing a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *see also Anderson*, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

## ARGUMENT

### I.  A three-judge panel is improper because the Public Service Commission is not a statewide legislative body.

A three-judge panel is inappropriate in this case based on the language of 28 U.S.C. § 2284(a).  The statute requires a three-judge court only "when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide *legislative body*."  *Id.*  (emphasis added).  As the Plaintiffs' Complaint admits, "[t]he PSC is a state *executive branch agency* and the head of the department of public service regulation."  (Doc. 1, ¶ 19) (emphasis added).  By its plain terms, the statute does not apply to this case because the PSC is not a statewide legislative body.

The statute's construction contains two operative limitations: statewide and legislative body.  The "legislative power" means "the power to make laws and to alter them; … [a] legislative body may delegate a portion of its lawmaking authority to agencies within the executive branch for purposes of rulemaking and regulation." *Black's Law Dictionary* 449 (4th Pocket ed. 2011).  In Montana, "[t]he legislative power is vested in a legislature consisting of a senate and a house of representatives." MONT. CONST. ART. V, § 1.  Further, "legislative districting" means "the process of dividing a state into territorial districts to be represented in the state or federal legislature." *Black's Law Dictionary* 449 (4th Pocket ed. 2011).  Taken together, 28 U.S.C. § 2284(a) applies to the reapportionment of the Montana Senate and House of Representatives as these are the two statewide legislative bodies in Montana.

The PSC comprises a statewide executive branch agency.  *See* MCA, Title 2, Chapter 15, Part 26 (organizing the department of public service within the executive branch).  The PSC exercises delegated rulemaking authority.  *See e.g.* MCA 69-1-110(3).  Such quasi-legislative functions do not make an agency a legislative body.  *See City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (Agency "activities take 'legislative' and 'judicial'

forms, but they are exercises of—indeed, under our constitutional structure they must be exercises of—the 'executive Power.'") (emphasis in original).  In short, while the PSC's authority allows it to exercise quasi-legislative and quasi-judicial functions it remains an executive agency.  As such, it falls outside of the scope of 28 U.S.C. § 2284(a).

This strict reading of the statute's language adheres to the Supreme Court's consistent view that § 2284 must be read narrowly.  *See Mitchell v. Donovan*, 398 U.S. 427, 431 (1970) (per curiam) ("the three-judge-court legislation is not 'a measure of broad social policy to be construed with great liberality,' but is rather 'an enactment technical in the strict sense of the term and to be applied as such.') quoting *Phillips v. United States*, 312 U.S. 246, 251 (1941).  The history of the statute confirms its limited scope.  *See Shapiro v. McManus*, 577 U.S. 39, 40–41 (2015); *Thomas v. Reeves*, 961 F.3d 800, 808 (5th Cir. 2020) (en banc) (Costa, J. concurring); *Kalson v. Paterson*, 542 F.3d 281, 287 (2d Cir. 2008).  Congress enacted the three-judge statute to "assure more weight and greater deliberation" was given to federal constitutional challenges against state laws.  *Phillips,* 312 U.S. at 250; *see also Swift & Co. v. Wickham*, 382 U.S. 111, 118 (1965) (Congress thought "if three judges declare that a state statute is

unconstitutional the people would rest easy under it" (quoting 45 CONG. REC. 7256 (1910) (statement of Sen. Overman)).  The catch came in the direct appeal mechanism to the Supreme Court through 28 U.S.C. § 1253. In 1976, Congress "vastly reduced the category of cases for which a three-judge court is mandated." *Kalson*, 542 F.3d at 287.  Congress acted to alleviate the burden on the Supreme Court to avoid procedural complexities at the district court level. *Thomas*, 961 F.3d at 808 (Costa, J. concurring).  The statute retained a narrow band of cases for "constitutional challenges to redistricting for congressional and state legislative seats …." *Id.*  This case falls outside that narrow band because the PSC is not a statewide legislative body.

Finally, the Secretary of State asks for determination on this issue to save the parties time and resources on any appeal.  *See Bd. of Regents v. New Left Educ. Project*, 404 U.S. 541, 545 (1972) (An appeal of an order from an improperly convened three-judge panel lies with the Court of Appeals, not the Supreme Court).  Any appeals of this Court's orders must be filed in an expeditious fashion because of candidate filing deadlines. A jurisdictional failure on appeal will forfeit limited time and so the Secretary asks for a clear ruling on this point.

## II. Plaintiffs cannot trace an injury to Secretary Jacobsen's conduct to sustain their requested relief.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *accord Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) ("[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment."). Standing requires "an injury in fact" that is "fairly traceable to the challenged action of the defendant; and [] it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180–81 (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992)). *Lujan* requires the injury be "fairly … traceable to the challenged action of the defendant and not … the result [of] the independent action of some third party not before the court." 504 U.S. at 560. "Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Republic of Marsh. Islands v. United States,* 865 F.3d 1187, 1199 (9th Cir. 2017).

Both the fairly traceable requirement and redressability look to an essential causal link. *See Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). Plaintiffs must demonstrate a causal link between their alleged injury and the defendant's actions. *See Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (Pro, J. concurring). "[W]here the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries … the causal chain is too weak to support standing …." *Id.* (Pro, J. concurring) (cleaned up); *Warth v. Seldin*, 422 U.S. 490, 505 (1975). Importantly, standing requires alleged unlawful conduct by the defendant—an unlawful action or omission—not merely the existence of an invalid statute. *See California v. Texas*, 141 S. Ct. 2104, 2114 (2021). An inert statute, even an unconstitutional one, doesn't create a traceable injury absent unlawful conduct by the defendant. *See Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power [of the federal courts] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement ….").

Remedies "operate with respect to specific parties." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (internal citation omitted). The remedy sought must "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (Standing to litigate in federal court is not dispensed in gross; a plaintiff who has been subject to injurious conduct of one kind does not possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which the plaintiff has not been subject.). The specific remedy must target the conduct of a specific defendant before the court, in other words.

Here, that is not the case. Plaintiffs allege injurious conduct on the part of prior Montana legislatures and other non-party actors. *See* (Doc. 1, ¶¶ 34–41). They fail to allege injurious conduct by the Secretary related to their requested relief under Prayer for Relief b, d, or e. The alleged source of injury regarding those proposed remedies traces to non-parties, not the Secretary. Plaintiffs cannot therefore establish standing warranting such relief and this Court should deny those prayers for relief.

## A. Plaintiffs lack standing to request declaratory relief.

Declaratory judgments require "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Plaintiffs must still establish Article III standing for their declaratory relief claim. *Id.* "A case or controversy exists justifying declaratory relief only when the challenged activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the parties." *Seven Words, LLC v. Network Solutions*, 260 F.3d 1089, 1098–99 (9th Cir. 2001) (cleaned up). The value of declaratory relief is to "affect[] the behavior of the defendant towards the plaintiff." *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 868 (9th Cir. 2017).

Plaintiffs' request for declaratory relief goes like this. First, the Montana Legislature failed to reapportion PSC districts following the 2010 census. (Doc. 1, ¶¶ 34–41). Then, following the 2020 census, the current PSC districts contain population variances exceeding 20 percent. (Doc. 1, ¶¶ 25–33). The prior legislative inaction causes a violation of the

Fourteenth Amendment. (Doc. 1, ¶¶ 43–45). The Plaintiffs therefore request this Court declare that the current PSC map violates the Fourteenth Amendment. (Doc. 1, Prayer for Relief b).

This theory results in manifold problems. Plaintiffs' core argument imputes the conduct of a non-party, the Montana Legislature, onto the Secretary. All relief sought must be against a specific party. *See California*, 141 S. Ct. at 2115. The Secretary is the only defendant in this case. *See* (Doc. 1, ¶ 16). So the declaratory relief sought must be connected to her conduct. But none of the alleged unlawful conduct resulting in a purported Fourteenth Amendment violation concerns the actions or omissions of the Secretary. *See* (Doc. 1, ¶¶ 34–41). This incongruity between the source of alleged injury and the conduct of the sole Defendant named by Plaintiffs creates a traceability problem. If a Fourteenth Amendment violation exists, the Plaintiffs fail to trace that violation to any act by the Secretary.

Even if Plaintiffs' theory is traceable to Secretary Jacobsen through candidate certification, any injury would still be contingent upon the Montana Legislature failing to timely reapportion the PSC districts based on the 2020 census. Secretary Jacobsen's duties are limited in

scope to the administration of elections, including candidate certification. *See* (Doc. 1, ¶ 16); MCA § 13-10-208.  Her powers do not include, for example, the ability to withhold names from the ballot based upon perceived district malapportionment.  *See* MCA § 13-10-208.  Nor would this correct the alleged problem.  Instead, Secretary Jacobsen certifies PSC candidates based on the districts created by the Montana Legislature.  If harm arises from candidate certification in malapportioned districts, the source of the injury lies in the malapportionment—not the candidate certification.  That leads back to *Lujan*'s requirement that the injury be traced to the defendant, not the independent actions of a non-party.  504 U.S. at 560–61.  Secretary Jacobsen doesn't control the apportionment process and any violation arising from malapportionment is the result of actions or inaction of non-parties to this case.

Finally, even if the Court granted declaratory relief, it would not alter the Secretary's behavior towards the Plaintiffs because she possesses no power or authority to reapportion PSC districts.  The power to amend MCA § 69-1-104 lies within the legislative process, not within the Secretary of State's office.  Secretary Jacobsen's inability to alter her behavior to alleviate Plaintiffs' alleged injuries defeats the purpose of

declaratory relief.  In short, no controversy exists between the Plaintiffs and Secretary Jacobsen because the requested relief doesn't concern any power or authority resting within the Secretary of State's office.  Without the requisite controversy and adverse legal interests, there cannot be declaratory relief.  *See MedImmune, Inc.*, 549 U.S. at 127.  The Court should therefore deny Plaintiffs' request for declaratory relief because it cannot be effectuated against any conduct of Secretary Jacobsen.

### B. Plaintiffs lack standing to request the Court initiate reapportionment of the PSC districts.

Plaintiffs' requested relief for the Court to adopt and implement a new Public Service Commission district plan suffers from similar defects. (Doc. 1, Prayer for Relief d, e).  Plaintiffs explicitly condition Prayer for Relief e on the "State['s] fail[ure] to act."  But Secretary Jacobsen lacks any authority or control over meeting that condition.  *See* (Doc. 1, ¶ 16) (the Secretary's authority does not extend to redistricting).  Moreover, Secretary Jacobsen doesn't represent the State's legal interests.  ; MONT. CONST. ART. VI, § 4(4) ("THE ATTORNEY GENERAL IS THE LEGAL OFFICER OF THE STATE").  Because the requested relief goes beyond Secretary Jacobsen's statutory authority, the Court lacks the power to impose such relief on her—the only defendant in this case.

Consider what would happen on appeal. If the Court implements a PSC map that Secretary Jacobsen objects to, she lacks standing to appeal implementation of that map. *See Va. House of Delegates v. Bethuse-Hill*, 139 S. Ct. 1945, 1953–54. Because Secretary Jacobsen doesn't participate in reapportionment there would be a "mismatch between the body seeking to litigate and the body" to which redistricting is assigned. *Id.* at 1953. That mismatch denies the Secretary the ability to litigate this issue.

Secretary Jacobsen's absence of a legal interest in redistricting can be seen in the Complaint. "Montana's PSC districts are not apportioned according to population, and Montana has no plan to equalize population between districts." (Doc. 1, ¶ 44). "Montana's PSC district plan unconstitutionally dilutes the voters of voters in overpopulated districts, including Plaintiffs." (Doc. 1, ¶ 45). If these allegations are true, they apply to the legal interests of the State, not to Secretary Jacobsen. She exercises a more limited role and cannot reasonably assert a legal interest in reapportioning districts. Only the State, or the Montana Legislature, can do so.

This creates a fatal jurisdictional flaw. At this stage, Secretary Jacobsen is not a properly adverse party because she does not possess a legal interest in apportionment of the Public Service Commission districts. Secretary Jacobsen lacks authority to engage in reapportionment and so the requested relief goes beyond the parties in this case. The Court should grant summary judgment for the Secretary because the Plaintiffs failed to establish a justiciable controversy regarding Prayers for Relief d and e.

## III.   Plaintiffs' requested injunctive relief is unripe.

"[Ripeness] is peculiarly a question of timing. [Its] basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citation and quotation omitted); *see also Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010).

"[T]he Constitution leaves with the States primary responsibility for apportionment" of their representative districts. *Growe v. Emison*,

507 U.S. 25, 34 (1993).  Courts recognize "that 'reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.'"  *White v. Weiser*, 412 U.S. 783, 794– 95 (1973) (quoting *Reynolds v. Sims*, 377 U.S. 533, 586 (1964)).

The Plaintiffs' claims only relate to the 2020 census, which will not affect reapportionment until the 2024 elections.  *Cf. Old Person v. Cooney*, 230 F.3d 1113, 111 (9th Cir. 2000) (Montana's decennial reapportionment cycle runs from elections in the fourth year of the decade to elections in the second year of the following decade).[1]  Plaintiffs' claim will only ripen if the Montana Legislature fails to timely reapportion prior to the 2024 elections.  Because Plaintiffs' claim isn't ripe, this Court should deny their requested injunctive relief.[2]

---

[1] Secretary Jacobsen incorporates prior arguments made that the Plaintiffs' claim isn't ripe and this Court should stay its hand.  *See* (Doc. 8 at 10–22).

[2] Plaintiffs ask the Court to enjoin the Secretary from implementing or enforcing Montana's current PSC district plan.  (Doc. 1, Prayer for Relief b).  The Court preliminarily enjoined Secretary Jacobsen from "certifying candidates for Commissioner in Districts 1 and 5, pending final disposition on the merits."  (Doc. 16 at 17).

The Plaintiffs' claim can only be read to apply to the 2020 census. *See* (Doc. 1, ¶¶ 25–33, 43). That creates a timing issue regarding this challenge. The 2021 Montana Legislature adjourned its biennial session sine die on April 29, 2021. *See* House Journal, 67th Leg. Reg. Sess., April 29, 2021, 35 (Mont. 2021); Senate Journal, 67th Leg. Reg. Sess., April 29, 2021, 24–25 (Mont. 2021). The Census Bureau released its 2020 data on August 12, 2021. (Doc. 1, ¶ 26). The Montana Legislature will not reconvene in a regular session until 2023, 10 months from now. *See* Mont. Const. art. V, § 6. Under *Reynolds* and its progeny, judicial intervention should be stayed until it is clear the Montana Legislature will not act in advance of the 2024 elections.

Plaintiffs attempt to argue around this by pointing to the legislative history from 2013 to 2021. *See* (Doc. 1, ¶¶ 34–41) (Collectively labeled "Likelihood of a Legislative Solution"). That legislative history would be relevant to a malapportionment challenge to the 2010 Census but has no effect on whether the current legislature is likely to draw new districts in 2023. *See also Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (a years long delay in bringing challenge necessitates at least some showing justifying the delay). Consider the actual benefits afforded Plaintiffs

through their delay in filing this case.  If they filed in 2020, then they would have run headlong into *Benisek*, but by waiting until 2021, they claim that they no longer need to meet that burden.  This is so, according to them, even though they argue that Montana used a stale map from 2013 through 2020.  (Doc. 9 at 5–11).

While Secretary Jacobsen cannot speak to what the 2023 Montana Legislature *will* do, recent comments by legislators of both parties speak to an intent to reapportion the PSC districts.  *See e.g.* Duane Ankney, *Opposing special session to draw PSC districts*, Helena Ind. Record, January 28, 2022 ("the Legislature can do a thoughtful permanent fix in the 2023 session, a short 10 months away"); *see also* Eric Dietrich, *Legislators mull limited options in PSC redistricting bind*, Montana Free Press, January 21, 2022 (Senators Greg Hertz and Jill Cohenour saying they expect the Legislature to redraw the PSC districts next year whether or not a court-ordered map is used for this fall's election).[3]  These statements serve as evidence that—contrary to Plaintiffs claims of "legislative indifference," (Doc. 6 at 34)—this remains an active subject of legislative

---

[3] The Secretary has disclosed these documents in discovery as SOS 000044–000045.

consideration.[4]  Until it is clear that the Montana Legislature will fail to timely reapportion in advance of the 2024 elections, Plaintiffs' injunctive relief is premature.

## CONCLUSION

The Plaintiffs' choice to name only Secretary Jacobsen as defendant creates insurmountable jurisdictional hurdles for their requested relief. Any Fourteenth Amendment injury exists due to the actions of non-parties, not the Secretary.  The requests to reapportion PSC districts, furthermore, goes outside the Secretary's legal authority.  Finally, Plaintiffs' claim for injunctive relief targeted at the Secretary won't ripen until after (and only if) the Montana Legislature fails to reapportion in advance of the 2024 elections.  For the reasons stated, this Court should grant Secretary Jacobsen's Motion for Summary Judgment.

---

[4] To further clarify, Secretary Jacobsen didn't argue these statements moot this case. (Doc. 16 at 4).  While the Montana Legislature, despite being a non-party, could moot this case, that is not the purpose of these statements.  Instead, it shows that the Legislature will likely take the issue up in a timely fashion in 2023, which is the timeliness required under *Reynolds*.  Even in the absence of these statements, until it is clear that the Legislature *will not* timely act, this case remains unripe.

DATED this 7th day of February, 2022.

> AUSTIN KNUDSEN
> Montana Attorney General
>
> KRISTIN HANSEN
>   *Lieutenant General*
>
> DAVID M.S. DEWHIRST
>   *Solicitor General*
>
> Emily Jones
>   *Special Assistant Attorney General*
>
>   */s/ Brent Mead*
> BRENT MEAD
>   *Assistant Attorney General*
> 215 North Sanders
> P.O. Box 201401
> Helena, MT 59620-1401
> p. 406.444.2026
> brent.mead2@mt.gov
>
> *Attorney for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 3,894 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/    *Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: February 7, 2021        /s/    *Brent Mead*
BRENT MEAD