AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
  *Lieutenant General*
DAVID M.S. DEWHIRST
  *Solicitor General*
BRENT MEAD
  *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov

EMILY JONES
  *Special Assistant Attorney General*
115 N. Broadway, Suite 410
Billings, MT  59101
Phone:  406-384-7990
emily@joneslawmt.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; AND DONALD SIEFERT,<br><br>        Plaintiffs,<br><br>    v.<br><br>CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State,<br><br>        Defendant. | Case No. 6:21-cv-00092<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................... 1

STANDARD OF REVIEW ...................................................................... 2

ARGUMENT ......................................................................................... 3

I. Plaintiffs fail to link their requested redistricting relief to any
   injury caused or redressable by the Secretary. ..................................... 3

    A.  Secretary of State Jacobsen is not the State of   Montana or the
       Montana Legislature. .................................................................. 4

    B. The Court lacks authority to amend Montana statute to
       reapportion the Commission. ....................................................... 6

    C. Plaintiffs' requested relief against Secretary Jacobsen
       isn't ripe..................................................................................... 9

II. Equitable factors counsel denying further relief in this case ............ 14

III  If the Court does redistrict the Commission, then
   Secretary Jacobsen's proposal should be implemented. ................... 16

    A. Any map must comply with federal law. ................................... 18

    B. Any map must incorporate state criteria. ................................. 19

    C. Any map must balance equities. ............................................... 21

    D. Secretary Jacobsen's map comports with the required
       criteria ...................................................................................... 23

IV.  The Court should reject Plaintiffs' proposed maps. ........................... 25

    A. Proposed Map 1 violates existing state policy by splitting
       counties and is less compact than the Secretary's map............ 26

B. Proposed Map 2 also violates state policy by making more changes than necessary and splits counties. ..............................26

C. Proposed Map 3 likewise does not adhere to state policies governing Commission redistricting. .........................................27

CONCLUSION ..........................................................................28

CERTIFICATE OF COMPLIANCE ........................................30

CERTIFICATE OF SERVICE.................................................30

TABLE OF AUTHORITIES

## CASES

*Benisek v. Lamone,*
  138 S. Ct. 1942 (2018)..................................................................10

*Bethune-Hill v. Va. State Bd. of Elections,*
  137 S. Ct. 788 (2017)...................................................................21

*California v. Texas,*
  141 S. Ct. 2104 (2021)...................................................................3

*Conner v. Finch,*
  431 U.S. 407 (1977) ....................................................................16

*Durst v. Idaho Comm'n for Reapportionment,*
  2022 WL 247798 (Idaho 2022) ..................................................20

*Evenwel v. Abbott,*
  578 U.S. 54 (2016) ...............................................................18, 24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) .....................................................................2

*Garza v. County of Los Angeles,*
  918 F.2d 763 (9th Cir. 1990) .....................................................18

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018)................................................................14

*Growe v. Emison,*
  507 U.S. 25 (1993) .....................................................................10

*Henderson v. Perry,*
  399 F. Supp. 2d 756 (E.D.Tex. 2005).........................................22

*League of United Latin Am. Citizens v. Perry,*
  548 U.S. 399 (2006) ..............................................................14, 22

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .....................................................................2

*Mayfield v. United States.*
  599 F.3d 964 (9th Cir. 2010) ..................................................................3

*Merrill v. Milligan.*
  2022 WL 354467 (U.S. 2022) ..................................................... 10, 21, 24

*Montes v. City of Yakima,*
  2015 WL 11120964 (E.D. Wash. 2015) ...................................................18

*North Carolina v. Covington,*
  137 S. Ct. 1624 (2017)...........................................................................21

*Perry v. Perez,*
  565 U.S. 388 (2012) ................................................................... 16, 22, 26

*Purcell v. Gonzalez,*
  548 U.S. 1 (2006)...................................................................................11

*Reynolds v. Sims,*
  377 U.S. 533 (1964) ........................................................................ passim

*Shelby County v. Holder,*
  570 U.S. 529 (2013) ................................................................................7

*Texas v. United States,*
  523 U.S. 296 (1998) ..............................................................................10

*Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568 (1985) ...........10

*United States v. Nat'l Treasury Emples. Union,*
  513 U.S. 454 (1995) .............................................................................7, 8

*United States v. Stevens,*
  559 U.S. 460 (2018) ................................................................................6

*Upham v. Seamon,*
  456 U.S. 37 (1982) .......................................................................... passim

*Whitcomb v. Chavis,*
  403 U.S. 124 (1971) ..............................................................................17

*White* v. *Weiser*,
   412 U.S. 783 (1973) ................................................................. 3, 10, 17, 23

*Willems v. State*,
   325 P.3d 1204 (2014)...................................................................23

*Wise v. Lipscomb*,
   437 U.S. 535 (1978) ....................................................................12

## OTHER AUTHORITIES

Montana Code Annoated

   § 69-1-104........................................................................ 8, 17, 19, 20
   § 69-1-104 (2001)..........................................................................20
   Title 13, Chapter 1, Part 2............................................................5


Montana Constitution
   art. III, § 1 ..................................................................................15
   art. V, § 1 ............................................................................... 5, 15
   art. V, § 14(4) ...............................................................................7
   art. VI, § 4 ....................................................................................5

Montana Legislative Materials
   SB 153 § 2(b), 63rd Leg., Reg. Sess. (Mont. 2013) ................................17
   S.B. 210, 65th Leg., Reg. Sess. (Mont. 2017) ............................13
   S.B. 246 § 2(b), 66th Leg., Reg. Sess. (Mont. 2019)..............................17
   S.B. 246, 66th Leg., Reg. Sess. (Mont. 2019) ...........................13
   S.B. 309 § 2(b), 66th Leg., Reg. Sess. (Mont. 2019) ............... 17
   S.B. 309, 66th Leg., Reg. Sess. (Mont. 2019) ...........................13
   S.B. 160, 67th Leg., Reg. Sess. (Mont. 2021) ...........................13
   House Journal, 67th Leg. Reg. Sess., April 29, 2021, 35
      (Mont. 2021) ........................................................................11
   Senate Journal, 67th Leg. Reg. Sess., April 29, 2021, 24–25
      (Mont. 2021) ........................................................................11
   Minutes of House Committee on Federal Relations, Energy, and
      Telecommunications at SOS 0006 (Mar. 17, 2003)....................19


Other
   *Black's Law Dictionary* (11th ed. 2019).....................................5

# INTRODUCTION

Plaintiffs' briefing makes clear that they failed to name the appropriate party in this litigation. Secretary Jacobsen did not cause their alleged injuries and the Secretary cannot cure their alleged injuries. Plaintiffs admit as much. *See* Pls.' Resp. to Def's First. Disc. Req. at 19 (Feb. 7, 2022) (relevant excerpts attached as Exhibit A). But they nonetheless request relief to draw new Public Service Commission ("Commission") districts. Secretary Jacobsen possesses no such authority and the entity with such authority—the Montana Legislature—isn't a party to this litigation. Nor is the Secretary the State of Montana.

By naming only Secretary Jacobsen, the Secretary is asked to take positions on issues in which her office has no role. She is, in essence, asked to stand in for the Legislature and the State and defend their interests and actions in this case. But the Secretary cannot do that. Secretary Jacobsen can only speak for her office and her duties and cannot exercise authority belonging to the legislative branch or defend the interests of other branches and other constitutional offices.

This Court should refrain from any further relief in this case because of the ripeness issues previously argued and the jurisdictional

hurdles created by Plaintiffs' choice to name only Secretary Jacobsen.  If the Court proceeds to reapportioning Commission districts, then Secretary Jacobsen, per Court Order, submits a proposed map that complies with all relevant federal and state laws.[1]  Secretary Jacobsen's proposal minimizes changes to current districts to leave as much of the expressed legislative policy intact as constitutionally permissible.  The Secretary's proposal minimizes voter changes, all voters currently eligible to cast a ballot in 2022 for commissioner remain eligible, and her proposal adheres to county lines and other legislative policy criteria.

## STANDARD OF REVIEW

Secretary Jacobsen set forth the appropriate rules for summary judgment in her motion.  *See* (Doc. 25 at 3–4).  In addition to those rules, Plaintiffs must prove each element of standing at each stage of the litigation, including at summary judgment.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "[A] plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *accord*

---

[1] Secretary Jacobsen submits this map to comply with the Court's order but preserves for appeal her position that she has no authority to participate in Public Service Commission redistricting by redrawing districts.

*Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) ("[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment.").  "[A] federal district court, in the context of legislative reapportionment, should follow the policies and preferences of the State…." *Upham v. Seamon*, 456 U.S. 37, 41 (1982).  Courts "should not pre-empt the legislative task nor 'intrude upon state policy any more than necessary.'" *Id.* (quoting *White* v. *Weiser*, 412 U.S. 783, 794–95 (1973)).

ARGUMENT

## I.    Plaintiffs fail to link their requested redistricting relief to any injury caused or redressable by the Secretary.

Remedies must be tailored to address the specific injurious conduct of specific defendants.  *See California v. Texas,* 141 S. Ct. 2104, 2115 (2021); *see also* (Doc. 25 at 8–10).  As the Secretary previously argued, Plaintiffs requested reapportionment relief inappropriately assigns the actions of non-parties, the State of Montana and the Montana Legislature, to Secretary Jacobsen to create their alleged injuries.  (Doc. 25 at 10).  In so doing, they violate the central precept of traceability.  Their

alleged injuries, if they exist, result from the independent actions of non-parties and can only be redressed by those non-parties.

## A. Secretary of State Jacobsen is not the State of Montana or the Montana Legislature.

Secretary Jacobsen's role as chief election officer of the State of Montana does not extend to redistricting or reapportioning Commission maps. Ex. A (Plaintiffs admit that Defendant Christi Jacobsen has no authority to draw or approve PSC districts and cannot amend Mont. Code Ann. § 69-1-104). This undisputed fact forecloses Plaintiffs' requested relief against the Secretary. *See* (Doc. 25 at 8–16).

The State of Montana and the Montana Legislature are not parties to this case. *See* (Doc. 1, ¶¶ 12–16). But Plaintiffs' allegations center on inaction by the State of Montana and the Montana Legislature. *See* (Doc. 22 at 11) ("The legislature rejected multiple proposals…"); (Doc 22. at 14) ("the legislature's failure to act"); (Doc. 22 at 16) ("The legislature has neither provided for regular redistricting nor set standards for redistricting…"); (Doc. 22 at 17) ("The legislature does not regularly redistrict…"); (Doc. 22 at 25) ("…no justification excuses the State's failure to redistrict."); (Doc. 22 at 25) ("The State cannot, as a matter of law, rebut the presumption of unconstitutionality."). Plaintiffs' briefing attempts to

define Secretary Jacobsen as the "State," but that does not make it so. *See* (Doc. 22 at 9–10) ("Secretary of State Christi Jacobsen (the 'State')"); *but see Black's Law Dictionary* 1698 (11th ed. 2019) (Defining State as "[a]n institution of self-government within a larger political entity; esp., one of the constituent parts of a country having a federal government, <the 50 states>."). Secretary Jacobsen, as a state officer, possesses only limited authority and duties. *See e.g.* MCA Title 13, Chapter 1, Part 2 (defining Secretary Jacobsen's role in election laws). The Secretary's role does not extend to the legislative power or the authority to represent the State of Montana for redistricting purposes. *See* MONT. CONST. ART. V, § 1; ART. VI, § 4. Plaintiffs' case suffers from the fatal defect that they allege acts or failures to act by the Montana Legislature or the State of Montana, but name only Secretary Jacobsen. By failing to name the proper parties, Plaintiffs' fail to state claims for which relief can be granted by this Court, and summary judgment should be granted against them.

Plaintiffs, furthermore, cannot prove any injury caused by Secretary Jacobsen related to their declaratory and redistricting relief. *See* (Doc. 25 at 8–16). Plaintiffs' discovery admissions and briefing make clear their issue lies with the State of Montana or the Montana

Legislature, in this regard, not Secretary Jacobsen.  *See* Ex. A; (Doc. 22 at 11–25).  Public records also indicate the debate over redistricting properly belongs in the halls of the legislature not the office of Secretary Jacobsen.  *See* SOS 0042–0044 (attached as Exhibit B) and SOS 0045–0046 (attached as Exhibit C).  The ultimate resolution of this issue, amending MCA § 69-1-104, depends entirely upon a legislative act, not any administrative decision of the Secretary.  *See* Ex. A.  In short, Plaintiffs failed to plead any facts, enter any evidence, or otherwise prove Secretary Jacobsen caused any of their alleged injuries.  Their allegations relate entirely to the actions, or inactions, of the Montana Legislature and/or the State of Montana.  This Court should deny any further relief in this case because of this standing issue.  *See* (Doc. 25 at 8–16).

## B. The Court lacks authority to amend Montana statute to reapportion the Commission.

Plaintiffs' legal argument rests on another fundamental flaw in that their requested relief asks the Court to go beyond pronouncing a constitutional judgment and extends into amending Montana law. Courts do not rewrite or amend the statutes to bring statutes into constitutional conformity.  *See United States v. Stevens*, 559 U.S. 460, 481 (2018) ("We will not rewrite a … law to conform it to constitutional

requirements, for doing so would constitute a serious invasion of the legislative domain.") (internal citations and quotations omitted).  The "obligation to avoid judicial legislation" properly leaves crafting constitutional legislation to the legislative branch.  *United States v. Nat'l Treasury Emples. Union*, 513 U.S. 454, 479 (1995) (declining to adopt a requirement not found in the language of the statute to salvage the statute's constitutionality).

This principle applies even in the election law context.  *See Shelby County v. Holder*, 570 U.S. 529, 557 (2013).  In *Shelby County*, the Supreme Court invalidated the Voting Rights Act coverage formula for jurisdictions subject to the Act's preclearance requirement.  *Id.*  The Supreme Court didn't draft a constitutional formula under § 4(b) but instead left it so "Congress may draft another formula based on current conditions."  *Id.*  In other words, the Court's authority to say what the law is does not extend to crafting legislation.

Court-drawn Commission maps would operate as an amendment to current statute.  State legislative districts operate as part of a plan submitted to Secretary Jacobsen.  *See* Mont. Const. art. V, § 14(4) ("… the commission shall file its final plan for legislative districts with the

secretary of state and it shall become law."). By contrast, the Commission districts are defined in statute. *See* MCA § 69-1-104. The Commission districts, therefore, are not a map or plan in the same sense as the legislative districts. Instead, the Montana Legislature defined Commission districts through legislation.

What Plaintiffs really ask this Court to do, then, is amend MCA § 69-1-104. (Doc. 22 at 28). First, Plaintiffs ask the Court to "declare the current Commission map and the statute creating the current districts, Mont. Code Ann. § 69-1-104, unconstitutional." (Doc. 22 at 21–22). Then, Plaintiffs "ask the Court to redistrict the Commission." (Doc. 22 at 28). That request runs afoul of the "obligation to avoid judicial legislation." *Nat'l Treasury Emples. Union*, 513 U.S. at 479. Any relief at that juncture necessarily requires the Court to rewrite MCA § 69-1-104 because the Commission "map" consists only of statutory text.

The request for amendment is demonstrated in the Plaintiffs' proposed remedial maps. For example, Plaintiffs' Proposed Map 1, (Doc. 22 at 37), essentially asks the Court to rewrite MCA § 69-1-104 as follows:

> **Public service commission districts.** In this state there are five public service commission districts, with one commissioner elected from each district, distributed as follows:

(1)   first district: Blaine, <u>Broadwater,</u> Cascade, Chouteau, Daniels, Dawson, <u>Fallon,</u> Fergus, Garfield, <u>Glacier,</u> Hill, Judith Basin, Liberty, McCone, <u>Meagher</u>, Petroleum, Phillips, <u>Pondera,</u> <u>Prairie,</u> Richland, Roosevelt, Sheridan, Toole, Valley, and Wibaux Counties;

(2)   second district: Big Horn, Carbon, Carter, Custer, ~~Fallon,~~ <u>Golden Valley,</u> <u>Musselshell,</u> Powder River, ~~Prairie,~~ Rosebud, Treasure, and Yellowstone Counties;

(3)   third district: Beaverhead, ~~Broadwater,~~ ~~Deer Lodge,~~ Gallatin, ~~Golden Valley,~~ Jefferson, Madison, ~~Meagher,~~ ~~Musselshell,~~ Park, Silver Bow, Stillwater, Sweet Grass, and Wheatland Counties;

(4)   fourth district: <u>Deer Lodge,</u> Granite, Lincoln, Mineral, ~~Missoula,~~ Powell, <u>and</u> Ravalli <u>Counties;</u> and <u>those parts of Missoula and</u> Sanders Counties <u>not within the boundaries of the Confederated Salish and Kootenai Tribal Reservation;</u>

(5)   fifth district: Flathead, ~~Glacier,~~ Lake, Lewis and Clark, ~~Pondera,~~ and Teton Counties<u>; and those parts of Missoula and Sanders Counties within the boundaries of the Confederated Salish and Kootenai Tribal Reservation.</u>

These proposed changes cross the line of interpreting a statute for constitutionality, to rewriting a statute to comply with the constitution. That power; however, rests with the Montana Legislature not with Secretary Jacobsen, the Plaintiffs, nor the Court.  The inherent amendatory nature of the requested relief further underscores why this Court should deny such relief.

## C. Plaintiffs' requested relief against Secretary Jacobsen isn't ripe.

"[Ripeness] is peculiarly a question of timing.  Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citation and quotation omitted).  "[T]he Constitution leaves with the States primary responsibility for apportionment" of their representative districts. *Growe v. Emison*, 507 U.S. 25, 34 (1993).  Courts recognize "that 'reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.'" *White*, 412 U.S. at 794– 95 (quoting *Reynolds v. Sims*, 377 U.S. 533, 586 (1964)).  Federalism and principles of judicial restraint further require that plaintiffs demonstrate they brought their challenge in a timely fashion.  *Cf. Benisek v. Lamone,* 138 S. Ct. 1942, 1944 (2018); *Merrill v. Milligan.* 2022 WL 354467 at *6–7 (U.S. 2022) (Kavanaugh, J. concurring) (interpreting *Purcell v. Gonzalez*, 548

U.S. 1 (2006) to require a showing that plaintiffs did not unduly delay their case).

The Montana Legislature has not had an adequate opportunity to redistrict PSC districts based on 2020 Census data. The Montana Legislature adjourned prior to the release of the 2020 Census. *See* House Journal, 67th Leg. Reg. Sess., April 29, 2021, 35 (Mont. 2021); Senate Journal, 67th Leg. Reg. Sess., April 29, 2021, 24–25 (Mont. 2021). Plaintiffs therefore can't point to any failure to act by the Montana Legislature between August 12, 2021, and now. Under *Reynolds*, the Montana Legislature needs to timely act on the 2020 Census data in advance of the 2024 elections. *See* (Doc. 8 at 9) (explaining Montana's redistricting cycle). Only if the Legislature fails to act in advance of those elections would judicial relief be appropriate. *See Reynolds*, 377 U.S. at 586.

Plaintiffs faced a choice in filing this challenge. They could challenge the current districts in advance of the 2022 elections, but that would need to be based on the 2010 Census. Or they could challenge the current districts in advance of the 2024 elections based on the 2020 Census. By challenging the current districts based on the 2020 Census, for the 2022 elections, they jumped the gun. *See* (Doc. 8 at 14–17). *Reynolds*

requires the Montana Legislature be given some adequate opportunity to reapportion based on the August 12, 2021, data prior to judicial intervention.  That opportunity has not occurred and thus this challenge isn't ripe.

Previous redistricting cases demonstrate that the Montana Legislature must be afforded some opportunity to reapportion.  In *Reynolds*, Alabama failed to reapportion its legislative seats following the 1900 Census up until the 1960 Census.  377 U.S. at 540–41.  The federal district court did not enjoin the legislative map prior to the spring primary elections.  Instead, the district court gave "reasonable but prompt" opportunity for the legislature to redistrict, which it did a few months later. *Id.* at 542–44.  The district court invalidated the map from the July 1962 legislative session, not the prior map, because courts must give that adequate opportunity to reapportion.  *Id.* at 573.  In *Wise*, the district court entered declaratory judgment then "afforded the city an opportunity as a legislative body for the City of Dallas to prepare a plan which would be constitutional." *Wise v. Lipscomb,* 437 U.S. 535, 538 (1978).  A court must afford some opportunity to the appropriate legislative body prior to undertaking its own redistricting.

Here, the timing aspects of Plaintiffs' challenge demand such opportunity. Montana 2022 elections will be run under the 2010 redistricting cycle because 2020 Census data was not available when the 2021 legislative session concluded. Plaintiffs challenge current Commission districts based only on the 2020 Census. (Doc. 22 at 14–16, 25). Plaintiffs do not allege, and Secretary Jacobsen is unaware of, any prior challenge to the constitutionality of the current districts vis-à-vis the 2010 Census. Plaintiffs don't assert that challenge either, and thus their claim of stale maps is unsupported.[2] Without that piece, Plaintiffs don't prove that the State of Montana or the Montana Legislature were legally required to redistrict following the 2010 Census, nor does their challenge require redistricting based on the 2010 Census. Commission districts must be presumed constitutional for the 2022 elections because they have not been previously adjudicated to be unconstitutional, nor are they challenged

---

[2] Plaintiffs' cited legislative history fails to illuminate any clear principle regarding legislative views towards redistricting. The legislation between 2017 and 2019 cited by Plaintiffs contained substantive policy changes towards Commission composition going beyond mere reapportionment. *See* S.B. 210, 65th Leg., Reg. Sess. (Mont. 2017) (seeking to change method of selecting commissioners to appointment); S.B. 246, 66th Leg., Reg. Sess. (Mont. 2019) (seeking to reduce Commission from five to three and elect on non-partisan basis); S.B. 309, 66th Leg., Reg. Sess. (Mont. 2019) (seeking to reduce commission from five to three); S.B. 160, 67th Leg., Reg. Sess. (Mont. 2021) (seeking to change method of selecting commissioners from election to appointment). As Plaintiffs acknowledge, these policy considerations, apart from reapportionment concerns, resulted in opposition. *See* (Doc. 22 at 14).

here based on the 2010 Census. *Cf. League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006) ("States operate under the legal fiction that their plans are constitutionally apportioned throughout the decade."). Instead, because this challenge relies solely on the 2020 Census data, not the 2010 Census data, the Montana Legislature must be afforded an opportunity to act prior to the 2024 elections. Until the legislature fails to do so, Plaintiffs' claim isn't ripe.[3]

## II.   Equitable factors counsel denying further relief in this case.

The Montana Legislature still has not had adequate opportunity to reapportion Commission districts considering the 2020 Census data. (Doc. 8 at 14–17). To timely act, the Montana Legislature must cure any one-person, one-vote issues prior to the 2024 elections. *See* (Doc. 8 at 9). The Montana Legislature will reconvene for its next regular session next January. All relevant entities continue to clearly communicate an intent to take this issue up during the next legislative session. *See* Exs. B and

---

[3] Plaintiffs Seifert and Sinoff admit they are not eligible to vote for a Public Service Commissioner in either the 2022 primary or general election. Ex. A. Vote dilution claims are "district specific." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018). Because these plaintiffs reside in a district not up until 2024, those claims don't ripen until 2024.

C.[4]  The Court should give that legislative process time to work to re-balance Commission districts ahead of the 2024 elections.

Procedural issues counsel staying any further Court action.  Thus far, the Court has not set any schedule for the State or the Montana Legislature to complete redistricting.  *See* (Docs. 16, 17); *see Reynolds*, 377 U.S. at 542 (delaying district court action until the legislature had "reasonable but prompt opportunity").  Secretary Jacobsen lacks authority or power to unilaterally engage in redistricting the Commission.  Ex. A.  Notwithstanding the Court's Order, (Doc. 29), Secretary Jacobsen opposes submitting a map on constitutional grounds.  The Montana Constitution prohibits one branch of government from exercising the powers of another branch.  *See* MONT. CONST. art. III, § 1.  The Commission districts found at MCA § 69-1-104 can only be amended through a legislative act, not by the Secretary.  *See* MONT. CONST. art. V, § 1.  Even if the Court accepts Secretary Jacobsen's map, the Secretary simply has no authority or power to proffer it.  Ex. A.  The only authority for her proposed map

---

[4] Secretary Jacobsen does not purport to speak for these entities.  Rather, these statements evince, in the Secretary's eyes, an unequivocal desire by legislative leaders in both major parties and the Governor's office.

comes from this Court's order, but that fact should counsel limiting any further judicial intervention.

## III.   If the Court does redistrict the Commission, then Secretary Jacobsen's proposal should be implemented.

While the Secretary maintains that she has no constitutional or statutory role in PSC redistricting, her proposed map more closely embodies legislative policy and judgment than Plaintiffs'.  Consistent with the principle that "reapportionment is primarily a matter for legislative consideration and determination," courts defer to the "policies and preferences of the State."  *Upham,* 456 U.S. at 41.  If part of a state plan violates federal or state law, the court must still defer to the "unobjectionable aspects" of the plan.  *Perry v. Perez*, 565 U.S. 388, 396 (2012).  A court errs by substituting "its own concept of the collective public good" for the legislature's "determination of which policies serve the interests of [its] citizens …."  *Id.*  The court's duty is to reconcile "the requirements of the Constitution with the goals of state political policy."  *Upham*, 456 U.S. at 43 (quoting *Conner v. Finch*, 431 U.S. 407, 414 (1977)).

Contrary to Plaintiffs' assertions, (Doc. 22 at 20), current law embodies clear "legislative judgments" as to Commission districting criteria.

*See* MCA § 69-1-104.  First, each district is reasonably compact and contiguous.  *See* Def.'s Rebuttal Expert Discl. at 1 (Feb. 22, 2022), attached as Exhibit D.  Second, each district represents a community of interest.  *See* Ex. D *at* 1.  Finally, current law defines district boundaries based on county lines.  *See* MCA § 69-1-104.  Each subsequent redistricting attempt likewise adhered to the existing policy of following county lines.  *See* Senate Bill 153 § 2(b), 63rd Leg., Reg. Sess. (Mont. 2013); S.B. 246 § 2(b), 66th Leg., Reg. Sess. (Mont. 2019); S.B. 309 § 2(b), 66th Leg., Reg. Sess. (Mont. 2019).  In any remedial map, this Court must follow these legislative judgments.  *See Upham*, 431 U.S. at 41.

Further, the Secretary's proposed map is owed considerable deference.  *See Upham*, 431 U.S. at 41; *White*, 412 U.S. at 795; *Whitcomb v. Chavis*, 403 U.S. 124, 161 (1971) (collectively, courts should follow state policy, even when in the judgment of the court such policy is unwise, unless the state policy violates federal law).  In other words, a (1) lawful state plan that (2) fully remedies the constitutional and statutory issues

should be adopted by the court.   *See Montes v. City of Yakima*, 2015 WL 11120964 at 13 (E.D. Wash. 2015).[5]

### A. Any map must comply with federal law.

Secretary Jacobsen agrees with the Plaintiffs that any Court-drawn map must comply with the Fourteenth Amendment and Voting Rights Act.  *See* (Doc. 22 at 29–32).  Secretary Jacobsen also agrees that because of the size of Commission districts relative to the size of the largest minority group voting blocs, the Voting Rights Act does not complicate reapportionment.   *See* (Doc. 22 at 31–32).   Finally, Secretary Jacobsen agrees any map must aim for maximum population deviations less than 10%.  *See Evenwel v. Abbott*, 578 U.S. 54, 60 (2016) ("Where the maximum population deviation between the largest and smallest district is less than 10%, the Court has held, a state or local legislative map

---

[5] In *Montes*, the district court notes the *Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1990), decision.  In *Garza*, the court did not afford any special deference to a reapportionment plan submitted by some local government officials, but less than a required majority to enact the submitted plan.  918 F.2d at 776.  *Garza* doesn't apply in this case.  *Garza* presupposes that the submitted plan comes from the reapportioning body.  918 F.2d at 779 (Kozinski, J. concurring and dissenting in part).  In this case, Secretary Jacobsen and the Plaintiffs acknowledge that she is not the proper reapportioning body.  *See* Ex. A.  It is impossible for Secretary Jacobsen to meet *Garza*'s legislative act requirement because she cannot reapportion Commission districts.  Applying *Garza*, therefore, in this case would grant Plaintiffs the benefit of denying any deference to the Secretary's submitted map because they named an improper party for this relief.  *See* (Doc. 25 at 14–16).

presumptively complies with the one-person, one-vote rule."); *see also* (Doc. 22 at 29–30).

### B. Any map must incorporate state criteria.

Montana, through historical practice and as codified in MCA § 69-1-104, adopts three distinct criteria for reapportioning Commission districts. First, Commission districts adhere to county lines. Second, as with legislative districts, Commission districts are compact and contiguous. Finally, Commission districts keep communities of interest intact.

Current Commission districts are designed to be as compact and contiguous as possible. *See* (Minutes of House Committee on Federal Relations, Energy, and Telecommunications at SOS 0006 (Mar. 17, 2003), relevant excerpts attached as Exhibit E) (the current map was the "most compact by eyesight" of four options presented). As Plaintiffs note, this requirement derives from Article V, § 14(1) of the Montana Constitution and is well recognized in federal law. *See* (Doc. 22 at 33). Any Court redistricting should strive to be as compact and contiguous as feasible given other interests.

Montana law sets binding standards and policies for redistricting the Commission. *See* MCA § 69-1-104; *see also* Ex. D at 1. Prior to 2003,

Commission districts followed county lines. *See* MCA § 69-1-104 (2001). Senate Bill 220 (Mont. 2003) redrew the Commission districts to their current form while continuing to follow county lines. *See* MCA § 69-1-104 (2021). Each redistricting attempt cited by Plaintiffs likewise required Commission districts to follow county lines. *See supra* at 17 (citing relevant proposed legislative text). Until such time as the Montana Legislature changes course, that policy choice must be respected by this Court. *See Upham*, 431 U.S. at 41.

Plaintiffs ask the Court to prioritize federal reservation boundaries above state political subdivisions such as county lines. (Doc. 22 at 33–34). Even acknowledging that the 2020 Districting and Apportionment Commission adopted a definition of political unit that includes cities, towns, counties, and federal reservations for legislative seats, that does not alter existing criteria for Commission seats. *See* (Doc. 22 at 33); *Cf. Durst v. Idaho Comm'n for Reapportionment*, 2022 WL 247798, at *16 (Idaho 2022) (state law choices prevail in questions over prioritizing tribal interests and state political subdivision interests). Until the Montana Legislature enacts a contrary policy, this Court must follow the

consistent policy choice to adhere to county boundaries.  *See Upham*, 431 U.S. at 41.

Finally, Secretary Jacobsen agrees with Plaintiffs that respecting communities of interest is a common redistricting criterion.  *See* (Doc. 22 at 24) (citing *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 795 (2017)).  In general, a community of interest means a community with shared geography, socioeconomic status, and economic activity.  *See* Ex. D at 1.  Secretary Jacobsen also agrees with the facts the Court may notice as evidence of communities of interest.  *See* (Doc. 22 at 34–35).  As Secretary Jacobsen's expert states, the current districts represent communities of interest and any court-led redistricting efforts should seek to retain them.  *See* Ex. D at 1.

### C. Any map must balance equities.

Any court-led redistricting must follow general equitable principles.  *See Reynolds*, 377 U.S. at 585.  Courts must consider the severity and nature of the constitutional harm against the disruption of the state's elections process and mindful of the state's sovereignty and primacy in redistricting.  *See North Carolina v. Covington*, 137 S. Ct. 1624, 1626 (2017); *cf. Merrill,* 2022 WL 354467 at *6–7  (Kavanaugh, J. concurring)

(in the broader election law context, courts must consider whether pre-election changes are "feasible before the election without significant cost, confusion, or hardship").  These principles echo the command that courts must give effect to as much of the state's policy as constitutionally permissible.  *See Perry*, 565 U.S. at 396.

Here, these principles generally mean that (1) existing district boundaries should serve as the starting point; (2) each voter currently entitled to cast a ballot for a commissioner in the 2022 elections should remain eligible to cast a ballot after any Court-led reapportionment; and (3) the Court should only make those changes necessary to cure the alleged constitutional violation and not substitute its will for that of the Montana Legislature.[6]  Courts commonly use existing district lines as the starting point, and this respects the existing expressed will of the Legislature.  *See League of United Latin Am. Citizens*, 548 U.S. at 411–12 (discussing history of Texas's court-led redistricting following the 2000 census).  A form of disenfranchisement will occur if voters eligible to cast a

---

[6]  The Court should reject any attempt at redistricting based on "competitiveness." (Doc. 22 at 12).  Other courts properly rejected attempts at drawing maps based on such measures of perceived fairness to political parties.  *See Henderson v. Perry*, 399 F. Supp. 2d 756, 768 (E.D.Tex. 2005).  Drawing a district based on 'competitiveness' necessarily forces the Court to consider partisanship.  Such decisions implicate "charges of partisan decision-making" better left to the political branches.  *Id.*

ballot for a Commissioner in 2022 are denied that opportunity through Court-led redistricting. *See Willems v. State*, 325 P.3d 1204, 1210 (2014). In *Willems*, the Montana Supreme Court acknowledged that statewide legislative redistricting requires shuffling holdover elected officials and this changes when voters can cast a ballot for that office. *Id.* Unlike in *Willems*, and as demonstrated by proposed maps from both parties, this issue can be avoided and as an equitable principle should be avoided to give the fullest meaning to the right to vote. Finally, it is bedrock law that courts should not "intrude upon state policy any more than necessary." *White*, 412 U.S. at 795. The Court, here, should limit itself only to those changes necessary to bring current districts into constitutional conformity and not engage in a broad redistricting effort.

### D. Secretary Jacobsen's map comports with the required criteria.

Pursuant to this Court's Order, (Doc. 28), Secretary Jacobsen submits the map attached as Exhibit F. As should be clear on its face, the Secretary's proposed map offers only limited changes compared to current districts. Ex. D at 2. District 1 expands to add Glacier County from District 5 and Musselshell County from District 3. These changes address District 1's under-population. District 2 remains unchanged as it

is close to the ideal population size. District 3 sheds Musselshell County to District 1 and Deer Lodge County to District 4 to reduce District 3's excess population and bring up the population in two underpopulated districts. In sum, by shifting these three counties, the districts come into presumptive compliance with the one-person, one-vote rule.

The Secretary's proposed map contains a maximum deviation of 9.44%. Ex. D at 2. This falls within presumptively constitutional guidelines. *See Evenwel*, 578 U.S. at 60. The Secretary's proposed map minimizes shifting voters to ensure that current districts are left intact to a large extent. Ex. D at 2. Everybody currently in District 1, 2, and 4 remains in Districts 1, 2, and 4. Ex. D at 2. 94.10% of current people in District 3 and 94.08% of people in District 5 remain in Districts 3 and 5 respectively. Ex. D at 2. Keeping voters in their current districts to the largest extent possible serves the equitable principles of minimizing voter confusion and disruptions to current elections processes. *See Merrill*, 2022 WL 354467 at *6–7.

Additionally, every voter shifted out of District 5 moves into District 1, which means that every voter currently eligible to cast a ballot in 2022 will remain eligible. Ex. D at 2–3. This addresses any *Willems*-like

concerns about potential temporary disenfranchisement. Finally, the Secretary's proposed map adheres to county lines in conformity with existing state law and is more compact that Plaintiffs' Proposed Maps 1 and 3. Ex. D at 3–4. Secretary Jacobsen's proposed map does no more than necessary to bring Commission districts into presumptive compliance with state and federal law. *See Upham*, 456 U.S. at 43.

## IV.   The Court should reject Plaintiffs' proposed maps.

Each of Plaintiffs proposed maps suffers from defects which should result in this Court rejecting them. All three maps split counties in violation of well-established Montana law. Further, while each of Plaintiffs' proposed maps comply with the Fourteenth Amendment, they override existing state policy more than necessary to reach presumptive constitutionality. *See Upham*, 456 U.S. at 43 (district court modifications should be "limited to those necessary to cure any constitutional or statutory defect."). Proposed maps 2 and 3 would also deny voters currently scheduled to vote for a commissioner in 2022 that opportunity. By contrast, the Secretary's map limits such disenfranchisement for the 2022 election, doesn't split any county, and minimizes changes prior to the 2023

Montana Legislature having a fair opportunity to reapportion based on the 2020 Census.

### A. Proposed Map 1 violates existing state policy by splitting counties and is less compact than the Secretary's map.

Plaintiffs' Proposed Map 1 violates existing state policy and does more than necessary to attain presumptive constitutionality. Splitting Lake and Sanders Counties violates existing state policy and must be rejected. *See Perry*, 565 U.S. at 396. Proposed Map 1 shifts all of 9 counties and parts of two others, compared to Secretary Jacobsen moving three counties. Ex. D at 3. These changes render Proposed Map 1 less compact than the Secretary's Proposed Map. Ex. D at 3. For these reasons, the Court should reject proposed Map 1.

### B. Proposed Map 2 also violates state policy by making more changes than necessary and splits counties.

Plaintiffs' Proposed Map 2 again violates existing state policy requiring adherence to county boundaries and effects significantly more changes than necessary to address any constitutional issues. Ex. D at 3–4. Proposed Map 2 splits Pondera and Flathead County. Ex. D at 3. The proposal also shifts large portions of Districts 3, 4, and 5. Ex. D at 3–4.

Only 82.66% of people currently in District 5 remain in District 5.  Ex. D at 4.  Further, 32,533 people shifted out of District 5 will no longer be eligible to cast a ballot in 2022 for a Public Service Commissioner.  Ex. D at 4.  The changes to District 3 and 4 involve retaining only 90.74% and 87.26% of persons in those districts respectively.  Ex. D at 3–4.  All told, Proposed Map 2 substantially changes the geography and makeup of all five districts.  It does this by moving all of 13 counties and parts of two others.  Ex. D at 3–4.  These types of large-scale changes are best left to the reapportioning body and should not be entertained by the Court.  *See Upham*, 456 U.S. at 43.

### C. Proposed Map 3 likewise does not adhere to state policies governing Commission redistricting.

Plaintiffs' Proposed Map 3 suffers from similar defects as Proposed Map 2.  Ex. D at 4.  Statewide, the proposal shifts 11 counties and parts of one more.  Ex. D at 4.  District 5 in particular retains only 74.84% of its current makeup, the lowest of any district under any proposal.  Ex. D at 4.  To effectuate a population change of 12,973 people between the current district and Proposed Map 3, Plaintiffs move 103,937 people.  Ex. D at 4.  Districts 3 and 4 each retain less than 90% of the people currently residing in the district.  Ex. D at 4.  *Upham*'s restraining principle again

applies here.  Further, Proposed Map 3 splits Flathead County and districts 32,533 people from potentially being able to cast a ballot this year. Ex. D at 4.  Finally, the resulting districts under Proposed Map 3 are less compact than under the Secretary's Proposed Map.  By any measure, the Court should reject Proposed Map 3.

## CONCLUSION

The Court should deny any further relief in this case due to the procedural improprieties threaded throughout Plaintiffs' arguments.  At a minimum, before this case proceeds to redistricting, this Court must give an adequate opportunity to the Montana Legislature—the actual entity with redistricting authority—to reapportion prior to judicial intervention.  If, however, the Court proceeds apace, then it should adopt Secretary Jacobsen's proposed map as her proposal complies with all federal and state law and minimizes disruptions to the state elections process.

DATED this 22nd day of February 2021.

AUSTIN KNUDSEN
Montana Attorney General

KRISTIN HANSEN
  *Lieutenant General*

DAVID M.S. DEWHIRST
  *Solicitor General*

Emily Jones
  *Special Assistant Attorney General*

 */s/ Brent Mead*
BRENT MEAD
  *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
p. 406.444.2026
brent.mead2@mt.gov

*Attorneys for Defendant*

### CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 5,858 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/ *Brent Mead*
NAME OF ATTORNEY

### CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: February 22, 2022      /s/ *Brent Mead*
NAME OF ATTORNEY