Constance Van Kley
Rylee Sommers-Flanagan
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 306-0330
  constance@uppersevenlaw.com
  rylee@uppersevenlaw.com

Joel G. Krautter
  Netzer Law Office P.C.
  1060 S. Central Ave. Ste. 2
  Sidney, MT 59270
  (406) 433-5511
  joelkrautternlo@midrivers.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; and DONALD SEIFERT,<br><br>*Plaintiffs*,<br><br>vs.<br><br>CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State,<br><br>*Defendant*. | Cause No.<br>6:21-cv-92-PJW-DWM-BMM<br><br>**Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment** |

# Table of Contents

Table of Authorities ................................................................................ ii

Introduction ............................................................................................. 1

Argument ................................................................................................. 1

    I.     The Court has jurisdiction over Plaintiffs' claim, which is justiciable as alleged. ............................................................... 2

         A. Plaintiffs ask the Court to declare the statutory districting plan unconstitutional and to craft an appropriate remedy, not to amend the Montana Code. ....................................................... 3

         B. Plaintiffs' claim is not unripe under *Reynolds*. .......................... 3

    II.    There is no dispute of material fact, and Plaintiffs are entitled to judgment as a matter of law on their claim that the current Commission map is unconstitutionally malapportioned. ........... 8

    III.   The appropriate solution is a lawful and equitable map. ........... 9

         A. The Court should consider county boundaries in any plan, but preserving those boundaries is not mandatory. ......................... 9

         B. An appropriate solution is any map that is lawful and equitable, a standard that likely includes all maps submitted by the parties. ..................................................................... 11

Conclusion ............................................................................................ 14

# Table of Authorities

## Cases

*Avery v. Midland Cty.*, 390 U.S. 474 (1968) ..............................................6

*Baker v. Carr*, 369 U.S. 186 (1962) ....................................................4, 5

*Balderas v. Texas*, No. 6:01-cv-158,
    2001 WL 36403750 (Nov. 14, 2001) ..............................................10

*Evenwel v. Abbott*, 578 U.S. 54 (2016) ...................................................12

*Hadley v. Junior Coll. Dist. of Met. Kan. City*, 397 U.S. 50 (1970) .........6

*North Carolina v. Covington*, 138 S. Ct. 2548 (2018) ..............................3

*Perry v. Perez*, 565 U.S. 388 (2012) .................................................9, 10

*Reynolds v. Sims*, 377 U.S. 533 (1964) ...................................3, 4, 5, 6, 13

## Constitutional Provisions

Mont. Const. art. II, § 4 ..........................................................................11

Mont. Const. art. V, § 1...........................................................................10

U.S. Const. amend. XIV.........................................................................11

U.S. Const. art. VI....................................................................................3

## Other Authorities

Montana Code Annotated § 69-1-104......................................................14

S.B. 153, 58th Leg., Reg. Sess. (Mont. 2013) ..........................................7

# INTRODUCTION

Defendant Secretary of State Christi Jacobsen does not dispute the underlying facts or the merits of Plaintiffs' claim. The current Public Service Commission ("Commission") map is unconstitutional because it violates the Fourteenth Amendment's one-person, one-vote rule.

Plaintiffs ask the Court to grant their motion for summary judgment.

# ARGUMENT

Most of the questions Defendant raises relate to whether the Court has the power to recognize and remedy the constitutional violation, which Defendant effectively concedes. The resounding answer to each of these questions is yes: the Court has jurisdiction; Plaintiffs' claim is justiciable; Plaintiffs properly sued the Secretary of State; and the Court can and should order meaningful relief.

Finally, even while arguing that she has no authority to speak for the State of Montana, Defendant asks the Court to reject Plaintiffs' proposed maps and to adopt her own. While Plaintiffs disagree that Defendant's map is the best option presented, they do not dispute that it meets legal requirements and would be an appropriate solution.

I.  **The Court has jurisdiction over Plaintiffs' claim, which is justiciable as alleged.**

Defendant argues that: (1) the Secretary of State is not the proper defendant; (2) the Court cannot amend the Montana statute creating the current Commission map; and (3) Plaintiffs' claims are not ripe. Defendant previously raised most of the issues addressed in Section I of their response brief, and Plaintiffs have responded to Defendant's proper party and ripeness arguments in other briefs. (Docs. 9 at 5–11 (addressing ripeness), 18 (same), 31 (addressing proper party argument)). Further, the Court already has ruled on the issue of ripeness. (Docs. 16, 19.) To avoid redundancy, Plaintiffs will not repeat arguments fully presented elsewhere.

Accordingly, Plaintiffs address a few points raised in Defendant's response brief that have not yet been fully addressed. First, Defendant argues that the Court lacks authority to remedy the unconstitutional Commission map because it cannot do so without amending a state statute. (Doc. 32 at 12–15.) Second, Defendant presents a twist on her ripeness argument, contending that the Court cannot remedy the constitutional violation at issue because it has not provided adequate warning to the Montana Legislature. (Doc. 32 at 17–20.)

### A. Plaintiffs ask the Court to declare the statutory districting plan unconstitutional and to craft an appropriate remedy, not to amend the Montana Code.

Federal courts strike as unconstitutional state laws that violate the United States Constitution. U.S. Const. art. VI. And, while federal courts cannot enact state policy or rewrite statutes, they may and do order enforcement of Court-created districting maps. *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *see also, e.g. North Carolina v. Covington*, 138 S. Ct. 2548, 2554 (2018) (affirming court-drawn remedy to the degree that it corrected errors of federal law and did not ignore state policy). The relief requested, if granted, would not amend the Montana Code. Rather, Defendant would be enjoined from implementing the unconstitutional statute and ordered to implement the Court-ordered plan.

### B. Plaintiffs' claim is not unripe under *Reynolds*.

The Court has ruled on ripeness twice—first, in granting Plaintiffs' motion for a preliminary injunction, (Doc. 16); and second, in denying Defendant's motion to dismiss, (Doc. 19). Defendant also has argued that Plaintiffs' claim is not ripe in her Motion for Summary Judgment. (Doc. 25.) Plaintiffs address only one previously unstated argument in this brief: that the Court must abstain from creating a districting plan

under *Reynolds v. Sims*, 377 U.S. 533 (1964), because it has not formally instructed the legislature that it will act on a date certain in the absence of a legislative solution.

The Montana Legislature has had more than a "reasonable but prompt opportunity to comply with its duty," *id.* at 542, to redistrict and to "adopt some reasonable plan for periodic revision of [Montana's Public Service Commission] apportionment scheme[]," *id.* at 583. Nearly nineteen years have passed since the last (and only) reapportionment of Commission districts. Further, *Reynolds* cannot hold the meaning Defendant gives to it.

It is true that in *Reynolds* the district court "acted in a most proper and commendable manner" by "wisely . . . declining to stay the impending primary election" and "properly refrain[ing] from acting further until the Alabama Legislature had been given an opportunity to remedy the" unconstitutional map. *Id.* at 586. (*See* Doc. 32 at 17–18). But the facts are immediately distinguishable. There, the plaintiffs moved for a preliminary injunction on March 29, 1962—three days after the Court decided *Baker v. Carr*, 369 U.S. 186 (1962), the case creating a route to the plaintiffs' requested relief. *Baker* marked a sea change in federal

districting litigation—not only for the Court and the parties, but also for the state legislature, which previously was not on notice of the one-person, one-vote rule. *Id.* at 614 (Harlan, J., dissenting) ("between 1947 and 1957, four cases raising issues precisely the same as those decided [in *Reynolds*] were presented," and no relief was awarded to the plaintiffs). Further, the primary was set for May 1962—at most, approximately two months after the *Baker* decision and the plaintiffs' preliminary injunction motion. *Id.* at 542.

Indeed, *Reynolds* counsels in Plaintiffs' favor. Although the district court did not take action ahead of the May 1962 primary, it set a hearing on the preliminary injunction motion for July 16, 1962, expressly stating that, absent a legislative fix, it "would be under a 'clear duty' to take some action on the matter *prior to the November 1962 general election*." *Id.* at 542–43 (emphasis added). The legislature attempted to moot *Reynolds* by creating two alternate districting plans—in a special session mere days before the scheduled hearing—one of which would take effect in 1966. *Id.* at 543–44.

Finding both legislative plans inadequate to preserve voters' rights, the district court appropriately "adopt[ed] and order[ed] into effect for the

November 1962 election a provisional and temporary reapportionment plan." *Id.* at 552. The Supreme Court held that the district court exercised "proper judicial restraint" when it ordered its plan into effect on July 21, 1962—approximately three-and-a-half months before the general election in early November, a timeline deemed "sufficiently early to permit the holding of elections pursuant to that plan without great difficulty." *Id.* at 586.[1]

The Montana Legislature has had more than adequate opportunity to enact its own Commission plan. First, the legislature has long been on notice of the requirement of regular districting to ensure compliance with the one-person, one-vote rule: the precedents establishing this rule predate the creation of the five-member districted Commission. *See Hadley v. Junior Coll. Dist. of Met. Kan. City*, 397 U.S. 50, 56 (1970); *Avery v. Midland Cty.*, 390 U.S. 474 (1968); *Reynolds*, 377 U.S. 533; *Baker*, 369 U.S. 186. Legislative history confirms that the legislature understands fully its obligation to comply with the one-person, one-vote

---

[1] Defendant has not argued that it will be difficult to implement a new districting plan prior to the close of candidate certification on March 14, 2022.

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Summary Judgment*                                                                                                                                     6

rule. Sen. Comm. on Energy & Telecomm., Testimony of Senator Fred Thomas, Hrg. on S.B. 153, 58th Leg., Reg. Sess. (Feb. 19, 2013).[2]

Second, although it does not take a lawsuit to put the legislature on notice that it may not violate Montanans' long-established federal constitutional rights, the legislature has had months to meet in special session following the service of Plaintiffs' Complaint on the Montana Attorney General and Secretary of State. As is clear from exhibits previously filed by both parties, the legislature is well-aware of this lawsuit and its power to meet in special session to redistrict the Commission. (Docs. 22-2, 32-2, 32-3, 32-4.) To the degree that the Court can read anything into the legislature's failure to meet in special session despite single-party control of the governorship and both legislative houses, the logical inference is not, as Defendant suggests, that a legislative solution is forthcoming. (Doc. 32 at 20–21); (*see also* Doc. 6-7 (letter from Commission Chairman Bill Gallagher opposing failed 2013

---

[2] Audio of the hearing is available at http://sg001-harmony.sliq.net/00309/Harmony/en/PowerBrowser/PowerBrowserV2/20170221/-1/20225?agendaId=92094. Senator Thomas's testimony begins at 15:19:15. During this hearing on the failed 2013 redistricting bill, Senator Thomas explained that the legislature had previously failed to create a plan for regular reapportionment—a problem that the 2013 bill, if adopted, would have fixed.

redistricting bill, in which Chairman Gallagher argues in part that the legislative session is too short for redistricting to occur)).

>   II. **There is no dispute of material fact, and Plaintiffs are entitled to judgment as a matter of law on their claim that the current Commission map is unconstitutionally malapportioned.**

Defendant does not dispute any facts Plaintiffs rely on in support of their Motion for Summary Judgment. (*See* Doc. 23.[3]) Accordingly, if the Court reaches the merits of Plaintiffs' claim, it should decide that the current Commission map is unconstitutionally malapportioned.

>   III. **The appropriate solution is a lawful and equitable map.**

Defendant argues that although she has no authority under state law to propose a map, (Doc. 32 at 21–22), her "proposed map is owed considerable deference," (Doc. 32 at 23–24). Setting aside the question of deference, Plaintiffs disagree that Defendant's proposed map is the *best* solution, but they do not dispute that it would be an *adequate* solution.

The parties are in agreement about most of the issues essential to creating a remedy, agreeing that: (1) any solution must reduce the maximum population deviation below 10% (Doc. 32 at 24–25); (2) any

---

[3] Defendant did not file a Statement of Disputed Facts, and her Response in Opposition to Plaintiffs' Motion for Summary Judgment does not identify any disputed facts.

solution must comply with the Voting Rights Act, which is not difficult under the circumstances (Doc. 32 at 24); (3) districts should be relatively compact and contiguous (Doc. 32 at 25); (4) districts should strive to keep communities of interest intact (Doc. 32 at 25); (5) county lines are important considerations (Doc. 32 at 25–26); and (6) the solution must balance the equities, including by minimizing disruption and disenfranchisement (Doc. 32 at 27–29).

The only hard-and-fast disagreement between the parties relates to whether a Court-ordered map *must* preserve county lines, even at the expense of reservation boundaries. (Doc. 32 at 25–27.) Defendant argues that it must (Doc. 32 at 25–27), and Plaintiffs contend that preserving county boundaries is merely one consideration among many (Doc. 22 at 24–27). Aside from that issue, the only disagreement is how to balance appropriate considerations, the resolution of which falls firmly within the Court's discretion.

### A. The Court should consider county boundaries in any plan, but preserving those boundaries is not mandatory.

Where "there [is] no recently enacted state plan to which the [Court may] turn," the Court may be "perhaps compelled to design an interim map based on its own notion of the public good." *Perry v. Perez*, 565 U.S.

388, 396 (2012) (citing *Balderas v. Texas*, No. 6:01-cv-158, 2001 WL 36403750 (Nov. 14, 2001) (per curium); *see Balderas*, 2001 WL 36403750, at *2–3 (applying "neutral," generic redistricting criteria when last legislative districting plan was ten years old and malapportioned as indicated by new Census data). Here, there are no clear legal standards for Commission redistricting because there is no provision ensuring regular redistricting, let alone setting standards for such redistricting. Even the constitutional provision requiring that state senate and house districts be "compact and contiguous" does not apply to the Commission as a textual matter. Mont. Const. art. V, § 1. And very little can be inferred from the fact that the Commission map historically has preserved county boundaries, particularly when there have been only two maps in nearly 50 years.

Offering the opinion of a single legislator, Defendant asks the Court to give controlling weight to the legislative history of the 2003 bill creating the now-unconstitutional Commission districts. But the legislative history shows only that the 2003 measure followed county lines, falling far short of proof that preservation of county boundaries is essential to any redistricting plan. Further, while it may be necessary at

times to split either reservations or counties in order to achieve rough population equality, Defendant offers no explanation of why it is appropriate to subordinate tribal boundaries to state subunit boundaries. While there appears to be no law on point, the State should, at minimum, offer *some* justification for differential treatment of tribal and state political boundaries. U.S. Const. amend. XIV ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); Mont. Const. art. II, § 4 ("No person shall be denied the equal protection of the laws.").

### B. An appropriate solution is any map that is lawful and equitable, a standard that likely includes all maps submitted by the parties.

In sum, the parties' disputes regarding the appropriate remedy for the unconstitutionally malapportioned Commission map largely come down to how the Court should balance agreed-upon considerations. All of the parties' proposals represent good faith attempts to satisfy legal requirements and strike balance between the equities.

Although Plaintiffs do not dispute that Defendant's map would be an appropriate solution, they disagree that it is the best option. Notably, in the words of the sponsoring legislator and Defendant's expert, the 2003

bill attempted to achieve "rough population equity." (Doc. 32-4 at 3.) Defendant's proposed map does not do the same—it brings the maximum population deviation only below the "presumptively impermissible" level of 10%. *Evenwel v. Abbott*, 578 U.S. 54, 60 (2016).

Plaintiffs' Proposed Map 1 represents the best effort to satisfy legal requirements and balance the equities. Plaintiffs' Proposed Map 1 does not district any voter out of the 2022 election; it is relatively compact and contiguous; it splits counties only to avoid splitting reservations; it largely preserves the districts created by the 2003 bill; and it reduces the maximum population deviation to 1.8%. (*See* Doc. 22 at 37–38.) Further, although it would require splitting the Flathead Indian Reservation, Map 1 may be modified to preserve county boundaries, in which case the maximum population deviation would be 2.97%.[4]

If, however, the Court adopts Secretary Jacobsen's map, Plaintiffs request that the Court make one change: to pull Pondera County into District 1. Defendant's proposed map unnecessarily splits the Blackfeet

---

[4] In their proposed final pretrial order, the parties have stipulated to the accuracy of population data as calculated on Davesredistricting.com, and a link to a map showing this modification can be found at: https://davesredistricting.org/join/4bb0a577-99b3-49dc-906e-dd098f6a8301.

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Summary Judgment*     12

Indian Reservation, which extends into both Glacier and Pondera counties. (See Doc. 22 at 16 (map showing current PSC boundaries and reservation boundaries).) It is possible to preserve both the Reservation's borders and county borders while further reducing population deviation.[5] In contrast, the Flathead Indian Reservation extends into two high-population counties, Flathead County and Missoula County, making it impossible to avoid splitting either the Reservation or at least one county.

The Court has broad discretion over the appropriate remedy according to "the circumstances of the challenged apportionment and a variety of local conditions." *Reynolds*, 377 U.S. at 585. Indeed, "once [an] apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to [e]nsure that no further elections are conducted under the invalid plan." *Id.* This is not that unusual case, and Plaintiffs

---

[5] As of the 2020 Census, the population of Pondera County is 5,898 residents. Defendant's proposed map places Glacier County in District 1 and Pondera County in District 5. If Pondera County were shifted into District 1, the new maximum population deviation would be 6.72%. (*See* Doc. 22 at 15 (map showing 2020 county population figures).) In their proposed final pretrial order, the parties have stipulated to the accuracy of population data as calculated on Davesredistricting.com, and a link to this modified map can be found at: https://davesredistricting.org/join/55c71c9d-1e3f-41a0-a08e-95ef017ddec2.

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Summary Judgment*                                                                                 13

ask the Court to exercise its discretion in adopting or creating a lawful and equitable remedy.

## CONCLUSION

Plaintiffs respectfully ask the Court to: grant their motion for summary judgment; declare unconstitutional and enjoin further application of the current Commission districting plan and Montana Code Annotated § 69-1-104; adopt or devise an equitable constitutional remedy; and order Defendant to incorporate the Court's remedy ahead of the 2022 election.

Respectfully submitted this 28th day of February, 2022.

/s/ *Constance Van Kley*
Constance Van Kley
Rylee Sommers-Flanagan
Upper Seven Law


/s/ *Joel G. Krautter*
Joel G. Krautter
Netzer Law Office P.C.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(2)(E), I hereby certify that this brief includes 2,745 words, excluding caption, certificates, tables, and exhibit index. The word count was calculated using Microsoft Word.

/s/ *Constance Van Kley*
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed in CM/ECF on February 28, 2022, and served upon all registered users.

/s/ *Constance Van Kley*
Attorney for Plaintiffs
