AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
  *Lieutenant General*
DAVID M.S. DEWHIRST
  *Solicitor General*
BRENT MEAD
  *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov

EMILY JONES
  *Special Assistant Attorney General*
115 N. Broadway, Suite 410
Billings, MT 59101
Phone: 406-384-7990
emily@joneslawmt.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; AND DONALD SIEFERT,<br>          Plaintiffs,<br><br>     v.<br><br>CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State,<br>          Defendant. | Case No. 6:21-cv-00092<br><br>**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Pursuant to the Court's Order of January 13, 2022, (Doc. 17), Defendant Secretary of State Christi Jacobsen respectfully offers the following proposed Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

**I.  Montana Legislature and Commission Redistricting**

   **A. Legislative Authority to Redistrict**

1.     Commission district boundaries are created by statute.  Mont. Code Ann. § 69-1-104.  Amending Mont. Code Ann. § 69-1-104 requires an act of the Montana Legislature.  (Doc. 32-1 at 4); (Doc. 32-4 at 3).

2.     The Secretary of State has no authority to draw or approve Commission districts.  (Doc. 32-1 at 3).  The Secretary of State cannot amend Mont. Code Ann. § 69-1-104.  (Doc. 32-1 at 4).

3.     The Montana Legislature last amended Mont. Code Ann. § 69-1-104 in 2003.  (Doc. 1, ¶ 23).  Senate Bill 220, 58th Leg., Reg. Sess. (Mont. 2003), sponsored by Senator Fred Thomas created the current Commission district boundaries.  (Doc. 22 at 10).

4.     Current Commission districts have not been challenged as violating state or federal law under the 2000 or 2010 Census.  (Doc. 32 at 19).

**B. Redistricting Criteria**

5.     The Montana Legislature mandated current Commission districts follow county boundaries. *See* Mont. Code Ann. § 69-1-104. Prior to 2003, Commission districts also followed county boundaries. *See* Mont. Code Ann. § 69-1-104 (2001). After 2003, legislative efforts also adhered to the policy of Commission districts following county lines. (Doc. 32 at 23). The Legislature has a clearly adopted policy of Commission districts following county lines. (Doc. 32–4 at 3).

6.     Current Commission districts are also compact and contiguous. Mont. Code Ann. § 69-1-104; (Doc. 32–4 at 3). According to Senate Bill 220's sponsor, these criteria were intended requirements for Commission districts. (Doc. 32–4 at 3). The Legislature has a clearly adopted policy of Commission districts being compact and contiguous.

7.     The Legislature requires rough population equity in reapportioning Commission districts. (Doc. 32–4 at 3).

8.     The Montana Legislature considers grouping counties with shared communities of interest together in creating Commission districts. (Doc. 33-4, ¶ 17). The Montana Legislature adopted the

following broad communities of interest as part of the current Commission districts:

    a. District 1 represents the communities along the Hi-line and highway 200 in Northeast and Central Montana.

    b. District 2 represents southeast Montana and the Billings region.

    c. District 3 represents southwest Montana and the greater Yellowstone area.

    d. District 4 represents the Missoula-Bitterroot area extending into the historical northwest mining and logging communities.

    e. District 5 represents the Flathead Lake area and Rocky Mountain Front.

(Doc. 33-4, ¶ 17). As such, the Montana Legislature requires consideration of communities of interest as a redistricting criterion.

## II. Parties' Proposed Maps

### A. Secretary Jacobsen's Proposed Map

9. Secretary Jacobsen's proposed map makes three changes relative to the current Commission districts. First, Glacier County moves from District 5 to District 1. Second, Musselshell County moves from

District 3 to District 1. Third, Deer Lodge County moves from District 3 to District 4. (Doc. 33-4, ¶ 18).

10. Secretary Jacobsen's Proposed Map follows county boundaries. (Doc. 33-4, ¶ 19).

11. Secretary Jacobsen's Proposed Map results in the following districting population and deviation from ideal district size totals: District 1: 205,124 (-11,721) (-5.41%); District 2: 216,532 (-313) (-0.14%); District 3: 225,597 (8,752) (4.04%); District 4: 218,384 (1,539) (0.71%); District 5: 218,588 (1,743) (0.80%). The maximum population deviation is 9.44%. (Doc. 33-4, ¶ 20).

12. Secretary Jacobsen's proposed map results in contiguous districts, meaning they are all in one piece. Secretary Jacobsen's proposed districts are compact by eyesight and have a compactness score of 35 according to davesredistricting.org (higher is better). (Doc. 33-4, ¶ 21).

13. Secretary Jacobsen's map largely follows the same communities of interest as the current districts. Musselshell County, moving from District 3 to District 1, contains a similar geography and

economy as the largely rural and agricultural communities along highway 200 and the Hi-line that make up District 1. (Doc. 33-4, ¶ 22).

14.    Similarly, Glacier County, moving from District 5 to District 1, is a Hi-line county and shares similar characteristics as the other counties in District 1. (Doc. 33-4, ¶ 22).

15.    Deer Lodge County, moving from District 3 to District 4, shares a similar socioeconomic history and geography with District 4 as the Clark Fork moves from Deer Lodge County through Missoula and Sanders Counties and this corridor shares the history of natural resource development including mining and logging. (Doc. 33-4, ¶ 22).

16.    Secretary Jacobsen's map limits changes to current districts and voters in 2022. This keeps most voters in their current districts. One way to look at this is the percentage of current population of a district that is kept in that district. 100% of persons currently in Districts 1, 2, and 4 remain in Districts 1, 2, and 4. This means that no persons in those districts currently were moved out of the district. (Doc. 33-4, ¶ 23.)

17.    Even though the proposed map moves 9,421 people from Deer Lodge County and 4,730 people in Musselshell County out of District 3, District 3 retains 94.10% of its original population. (Doc. 33-4, ¶ 23.)

18.    In District 5, by moving Glacier County out, the district retains 94.08% of its original population.  Regarding Glacier County, by moving that county from District 5 to District 1, eligible voters will still be able to cast a ballot in 2022 as Districts 1 and 5 are the two commission seats up for election this year.  In other words, no one loses their ability to vote in 2022 under the Secretary's proposed map.  (Doc. 33-4, ¶ 23).

**B. Plaintiffs' Proposed Map 1**

19.    Plaintiffs' Proposed Map 1 moves all of 9 counties and parts of two others relative to current Commission districts.  (Doc. 33-4, ¶ 27).

20.    Plaintiffs' Proposed Map 1 splits Lake and Missoula Counties. (Doc. 33-4, ¶ 25).

21.    Plaintiffs' Proposed Map 1 shifts Glacier and Pondera Counties from District 5 to District 1; Broadwater and Meagher Counties from District 3 to District 1; Deer Lodge County from District 3 to District 4; Golden Valley and Musselshell Counties from District 3 to District 2; and Prairie and Fallon Counties from District 2 to District 1.  (Doc. 33-4, ¶ 27).

22.    Plaintiffs' Proposed Map 1 sets five contiguous districts and has a compactness score of 29.  (Doc. 33-4, ¶ 26).

23.    Plaintiffs' Proposed Map 1 retains 100% of people in District 1, 98.09% of people in District 2, 94.06% of people in District 3, 98.49% of people in District 4, and 91.53% of people in District 5.  (Doc. 33-4, ¶ 27).

**C. Plaintiffs' Proposed Map 2**

24.    Plaintiffs' Proposed Map 2 moves all of 13 counties and parts of 2 others relative to current Commission districts.  (Doc. 33-4, ¶ 30).

25.    Plaintiffs' Proposed Map 2 splits Flathead and Pondera Counties.  (Doc. 33-4, ¶ 29).

26.    Plaintiffs' Proposed Map 2 shifts Lincoln and Powell County from District 4 to District 5; Lake County from District 5 to District 4; Teton County from District 5 to District 1; Meagher and Wheatland Counties from District 3 to District 1; Custer, Fallon, and Prairie Counties from District 2 to District 1; and Golden Valley, Musselshell, Stillwater, and Sweetgrass Counties from District 3 to District 2.  (Doc. 33-4, ¶ 30).

27.    Plaintiffs' Proposed Map 2 retains 100% of the people in District 1, 92.61% of the people in District 2, 90.74% of the people in District 3, 87.26% of the people in District 4, and 82.66% of the people in District 5.  (Doc. 33-4, ¶ 30).

28.    Plaintiffs' Proposed Map 2, by moving part of Flathead County and all of Lake County from District 5 to District 4, results in districting 32,533 people out of potentially being able to cast a ballot for commissioner in 2022.  (Doc. 33-4, ¶ 31).

### D. Plaintiffs' Proposed Map 3

29.    Plaintiffs' Proposed Map 3 shifts all of 11 counties and parts of Flathead County relative to current Commission districts.  (Doc. 33-4, ¶ 35).

30.    Plaintiffs' Proposed Map 3 splits Flathead County.  (Doc. 33-4, ¶ 33).

31.    Plaintiffs' Proposed Map 3 shifts Lincoln and Powell Counties from District 4 to District 5; Lake County from District 5 to District 4; Glacier, Pondera, and Teton Counties from District 5 to District 1; Jefferson and Broadwater Counties from District 3 to District 5; Meagher County from District 3 to District 1; Musselshell County from District 3 to District 2; and Prairie County from District 2 to District 1.  (Doc. 33-4, ¶ 35).

32.     Plaintiffs' Proposed Map 3 retains 100% of people in District 1, 99.50% of people in District 2, 89.36% of people in District 3, 87.26% of people in District 4, and 74.84% of people in District 5.  (Doc. 33-4, ¶ 35).

33.     Plaintiffs' Proposed Map 3, by moving part of Flathead County and all of Lake County from District 5 to District 4, results in districting 32,533 people out of potentially being able to cast a ballot for commissioner in 2022.  (Doc. 33-4, ¶ 36).

## CONCLUSIONS OF LAW

### I.   Jurisdiction and Venue

1.     The parties do not contest venue or personal jurisdiction. (Doc. 1, ¶¶ 9–10); (Doc. 12, ¶¶ 9–10).

### A. Three Judge Panel

2.     A three-judge district court shall be convened only "when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."  28 U.S.C. § 2284(a).  The three-judge statute must be applied according to its technical and strict language.  *See Mitchell v. Donovan*, 398 U.S. 427, 431 (1970) (per curiam).

3.     The Commission is a statewide executive agency.  *See* (FOF, ¶ 5).  The Commission's exercise of quasi-legislative function do not transform it from an executive body into a legislative one.  *See City of Arlington v. FCC*, 568 U.S. 290, 304 n.4 (2013).  Therefore, the plain language of 28 U.S.C. § 2284(a) precludes its application in this case because the Commission is not a statewide legislative body.

4.     The three-judge district court must be dissolved and this case must be heard by a single judge.

## B. Standing

5.     "[A] plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *accord Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) ("[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment.").  Standing requires "an injury in fact" that is "fairly traceable to the challenged action of the defendant; and [] it is likely, as opposed to merely speculative, that the injury will be redressed

by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180–81

(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

6.    Secretary Jacobsen challenges Plaintiffs' standing to bring

their requested declaratory and redistricting relief.

### i. Plaintiffs lack standing for their requested declaratory relief

7.    Remedies "operate with respect to specific parties." *California

v. Texas*, 141 S. Ct. 2104, 2115 (2021) (internal citation omitted).  The

remedy sought must "must of course be limited to the inadequacy that

produced the injury in fact that the plaintiff has established."

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006).  Declaratory

judgments require "a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech,

Inc.*, 549 U.S. 118, 127 (2007).  The value of declaratory relief is to

"affect[] the behavior of the defendant towards the plaintiff."  *Bayer v.

Neiman Marcus Grp.,* 861 F.3d 853, 868 (9th Cir. 2017).

8.    Plaintiffs' allegations center on the actions and inaction of the

State of Montana and the Montana Legislature.  *See* (Doc. 22 at 11, 14,

16, 17, and 25).  Plaintiffs' complaint makes clear the source of the alleged

injury lies with the Montana Legislature. *See* (Doc. 1, ¶¶ 34–41) (collectively "Likelihood of a Legislative Solution"). The express terms of the requested declaratory relief states, "Declare that the current configurations of the Montana Public Service Commission districts, as defined in Montana Code Annotated § 69-1-104, violate the Fourteenth Amendment to the United States Constitution." (Doc. 1, Prayer for Relief b).

9.      Secretary Jacobsen, however, possesses no authority to amend Mont. Code Ann. § 69-1-104. FOF, ¶ 10. Amending the statute requires a legislative act. FOF, ¶ 9. In other words, there is no possibility that at anytime from 2003 to the present that Secretary Jacobsen could have amended Mont. Code Ann. § 69-1-104 because that goes outside her office. In that sense, there is no controversy between the Secretary and Plaintiffs because the Secretary does not possess a legal interest in Mont. Code Ann. § 69-1-104. *See MedImmune, Inc.*, 549 U.S. at 127.

10.      Plaintiffs also fail to trace an injury to Secretary Jacobsen. Because the Secretary cannot amend Mont. Code Ann. § 69-1-104, Plaintiffs as a matter of law cannot point to an act or omission related to the Secretary causing the current districts to be malapportioned under

that statute. *See California v. Texas,* 141 S. Ct. 2104, 2114 (2021) (standing requires unlawful conduct by the defendant, not merely the existence of an invalid statute).

11.    Plaintiffs lack standing for their requested declaratory relief because the injury alleged depends upon the acts or omissions of a nonparty—the Montana Legislature—not Secretary Jacobsen. *See Lujan*, 504 U.S. at 560–61.

### ii. Plaintiffs lack standing for their requested redistricting relief

12.    Plaintiffs condition their requested redistricting relief on the State of Montana failing to act. (Doc. 1, Prayer for Relief e). As with their requested declaratory relief, Plaintiffs trace the alleged source of harm to the Montana Legislature and the State of Montana. *See* (Doc. 1, ¶¶ 34–41); (Doc. 22 at 11, 14, 16, 17, and 25). Only Secretary Jacobsen is named as a defendant and the Secretary possesses no authority to reapportion Commission districts. FOF, ¶ 10.

13.    The trigger for Court-ordered reapportionment can be understood as (1) if the State of Montana fails to redistrict, then (2) the Court should redistrict. Secretary Jacobsen lacks authority to affect step one. FOF, ¶ 10. Thus, whether a malapportionment injury persists

through to step two depends entirely on the actions of nonparties. *Lujan*, however, requires plaintiffs trace an injury to the defendant's actions not the hypothetical, independent actions of a non-party. 504 U.S. 560–61.

14.    Plaintiffs, therefore, lack standing to pursue their requested redistricting relief because they fail to trace an injury to Secretary Jacobsen. *Lujan*, 504 U.S. 560–61.

## C. Plaintiffs requested injunctive relief isn't ripe

15.    "[Ripeness] is peculiarly a question of timing.  [Its] basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citation and quotation omitted).

16.    "[T]he Constitution leaves with the States primary responsibility for apportionment" of their representative districts. *Growe v. Emison*, 507 U.S. 25, 34 (1993).  "'[J]udicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate

opportunity to do so.'" *White v. Weiser*, 412 U.S. 783, 794– 95 (1973) (quoting *Reynolds v. Sims*, 377 U.S. 533, 586 (1964)).

17.     Montana's reapportionment cycle begins in the fourth year of the decade. *Cf. Old Person v. Cooney*, 230 F.3d 1113, 1118 (9th Cir. 2000). Therefore, the timeliness required by *Reynolds* for a challenge to districts based on the 2020 Census will be in advance of the 2024 elections.

18.     Montana received the 2020 Census data on August 12, 2021. FOF, ¶ 18.  The Montana Legislature adjourned prior to the release of the 2020 Census data.  FOF, ¶ 17.  The Montana Legislature will convene in 2023.  MONT. CONST. art. V, § 6.  Thus, the Montana Legislature has not yet had an adequate opportunity to consider 2020 Census data, but will have that opportunity in, at least, 2023.

19.     Plaintiffs contend that the Montana Legislature waived its adequate opportunity to reapportion for the 2022 election cycle because it failed to reapportion in 2013–21.  (Doc. 1, ¶¶ 34–41).  But the 2022 election cycle is based on the 2010 Census.  *Cf. Old Person*, 230 F.3d at 1118.  Plaintiffs do not lodge any challenge to the current Commission districts based on the 2010 Census.  FOF, ¶ 12.  Absent a challenge to the current districts based on the 2010 Census, the current districts must

be presumed constitutional through the 2010 Census cycle. *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006).

20.     Plaintiffs' claim will only ripen once the Montana Legislature has an opportunity to consider the 2020 Census data and only if the Montana Legislature fails to reapportion based on that data in advance of the 2024 elections. Since both of these elements remain contingent and hypothetical at this stage, the requested injunctive relief against Secretary Jacobsen isn't ripe. *See Texas*, 523 U.S. at 300.

## II. Current Commission districts are presumptively constitutional

21.     The current Commission districts are presumptively constitutional as applied to the 2010 Census. *See League of United Latin Am. Citizens*, 548 U.S. at 421. Plaintiffs do not challenge the constitutionality of current Commission districts as applied to the 2010 Census. FOF, ¶ 12. Therefore, it is not contested that the presumption of constitutionality afforded current Commission districts remains intact vis-à-vis the 2010 Census because that presumption is not under challenge.

22.     "[J]udicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional

requisites in a timely fashion after having had an adequate opportunity to do so." *Reynolds*, 377 U.S. at 586.

23.    Plaintiffs must demonstrate that (1) the Montana Legislature had an adequate opportunity to consider the relevant Census data, and (2) that the Montana Legislature failed to timely act. Plaintiffs fail to do. By not challenging the current districts vis-à-vis the 2010 Census, the current Commission districts must be afforded a presumption of constitutionality through the 2022 elections. *See League of United Latin Am. Citizens*, 548 U.S. at 421; *cf. Old Person*, 230 F.3d at 1118. Plaintiffs fail to demonstrate that the Montana Legislature was required to act following the 2010 Census and failed to do so in advance of the 2022 elections, because they don't raise sufficient facts or make any claims to that point.

## III. Plaintiffs' requested redistricting relief exceeds the power of the Court

24.    Courts do not rewrite or amend statutes to bring statutes into constitutional conformity. *See United States v. Stevens*, 559 U.S. 460, 481 (2018).

25.    Plaintiffs request the Court declare Mont. Code Ann. § 69-1-104 unconstitutional. (Doc. 1, Prayer for Relief b). Assuming the Court

has authority to do so, the Court's power regarding the statute ends at that declaration.  The Court, in other words, cannot declare Mont. Code Ann. § 69-1-104 unconstitutional and then amend the statute to render it constitutional.  *See Stevens*, 559 U.S. at 481.

26.    The nature of the Commission districts means that any judicial redistricting involves judicial rewriting of the statute. Commission districts, unlike state legislative districts, are defined in statute.  *Compare* MONT. CONST. art. V, § 14 to Mont. Code Ann. § 69-1-104.  Adopting a new Commission "map" entails rewriting Mont. Code Ann. § 69-1-104(1)–(5) to define the Commission districts.  Fulfilling the request for redistricting relief runs afoul of the Court's "obligation to avoid judicial legislation."  *United States v. Nat'l Treasury Emples. Union*, 513 U.S. 454, 479 (1995).

## IV. Secretary Jacobsen's proposed map complies with all relevant state and federal laws

27.    In redistricting, courts must reconcile "the requirements of the Constitution with the goals of state political policy."  *Upham v. Seamon*, 456 U.S. 37, 43 (1982).  If part of a state plan violates federal or state law, the court must still defer to the "unobjectionable aspects" of the plan. *Perry v. Perez*, 565 U.S. 388, 396 (2012).  So long as a state plan

complies with federal law and state policy, the court must defer to that plan.  *See Upham*, 456 U.S. at 41.

28.   Any court-led redistricting must follow general equitable principles.  *See Reynolds*, 377 U.S. at 585.  Courts must consider the severity and nature of the constitutional harm against the disruption of the state's elections process and mindful of the state's sovereignty and primacy in redistricting.  *See North Carolina v. Covington*, 137 S. Ct. 1624, 1626 (2017).

29.   Redistricting plans must comply with the Fourteenth Amendment's one-person, one-vote rule.   "Where the maximum population deviation between the largest and smallest district is less than 10%, the Court has held, a state or local legislative map presumptively complies with the one-person, one-vote rule." *See Evenwel v. Abbott*, 578 U.S. 54, 60 (2016).

30.   Commission redistricting plans must also comply with existing state policy requiring districts follow county lines, be compact and contiguous, be roughly equal in population, and respect communities of interest.  FOF, ¶¶ 13–16.

31.     Secretary Jacobsen's proposed map complies with the Fourteenth Amendment because its maximum deviation of 9.44% is presumptively constitutional.  *See Evenwel*, 578 U.S. at 60; FOF, ¶ 21.

32.     Secretary Jacobsen's proposed map adheres to county lines and satisfies that state policy.  FOF, ¶ 20.

33.     Secretary Jacobsen's proposed map is compact and contiguous.  FOF, ¶ 22.

34.     Secretary Jacobsen's proposed map is roughly equal in population because it satisfies Fourteenth Amendment criteria.  COL, ¶ 31.

35.     Secretary Jacobsen's proposed map retains existing communities of interest and the changes fall within those existing communities.  FOF, ¶ 23.

36.     Secretary Jacobsen's proposed map promotes equitable principles of minimizing state election system disruptions.  *See Reynolds*, 377 U.S. at 585.  Secretary Jacobsen's proposed map limits changes to only three counties and makes it so that three districts retain 100% of their current original populations.  In other words, in three districts, no voters are shifted out of the that district.  FOF, ¶¶ 23–24.

37.     Secretary Jacobsen's proposed map promotes the equitable principle that each person currently eligible to vote for a commissioner in 2022 remains eligible.  FOF, ¶ 24.

38.     In conclusion, Secretary Jacobsen's proposed map satisfies all legal criteria and promotes equitable principles.  This Court defers the judgment of state plans in such cases.  *See Upham*, 456 U.S at 41.

## V.     Plaintiffs' proposed maps violate existing state policy and cannot be adopted

39.     Courts may do no more than necessary to bring districts into presumptive compliance with state and federal law.  *See Upham*, 456 U.S. at 43.

40.     Plaintiffs' Proposed Maps 1, 2, and 3 all split counties.  FOF, ¶¶ 26, 31, 36.  The court must defer to state policy judgments not in conflict with federal law.  *Perry*, 565 U.S. at 396.  Montana's current policy requires adherence to county lines.  FOF, ¶ 13.  *Perry* compels this Court to retain the county boundary criterion and therefore reject Plaintiff's Proposed Maps 1, 2, and 3.

41.     Plaintiffs' Proposed Maps 1, 2, and 3, while complying with the Fourteenth Amendment, go further than necessary to reach such compliance.  *Compare* FOF, ¶¶ 25, 30, 35 to FOF, ¶ 19.  Plaintiffs'

proposed maps all shift more people and more counties than Secretary Jacobsen's proposed map. *Compare* FOF, ¶¶ 29, 33, 38 to FOF, ¶ 24. These changes impose disruptions on existing state elections practices and existing voter residences beyond what is necessary to achieve presumptive constitutionality under *Evenwel*. The Court must therefore reject these changes in favor of Secretary Jacobsen's proposed map. *See Upham*, 456 U.S. at 43.

42.     Plaintiffs' Proposed Maps 2 and 3 district 32,533 out of being potentially eligible to case a ballot for commission in 2022. FOF, ¶¶ 34, 39. Curing one person's diluted vote by temporarily disenfranchising another person violates basic principles of equity and fairness. *See Reynolds*, 377 U.S. at 585. The Court must reject these two proposed maps on this ground as well.

43.     In conclusion, because each of Plaintiffs' Proposed Maps 1, 2, and 3 violates existing, unobjectionable, state policy, this Court must reject those maps. *See Perry*, 565 U.S. at 396. Further, in weighing Plaintiffs' maps against Secretary Jacobsen's, Plaintiffs' maps go further than necessary to cure the alleged constitutional defect and this Court must reject them for that reason as well. *See Upham*, 456 U.S. at 43.

Finally, Plaintiffs' Proposed Maps 2 and 3 prevent some individuals currently eligible to vote for a commissioner in 2022 from remaining eligible and this Court must reject those maps on this equitable basis. *See Reynolds*, 377 U.S. at 585.

DATED this 28th day of February 2022.

AUSTIN KNUDSEN
Montana Attorney General

KRISTIN HANSEN
  *Lieutenant General*

DAVID M.S. DEWHIRST
  *Solicitor General*

EMILY JONES
  *Special Assistant Attorney General*

  */s/ Brent Mead*
BRENT MEAD
  *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
p. 406.444.2026
brent.mead2@mt.gov

*Attorney for Defendant*

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: <u>February 28, 2022</u>        <u>/s/    *Brent Mead*            </u>
                                        BRENT MEAD