AUSTIN KNUDSEN
Montana Attorney General
DAVID M.S. DEWHIRST
  *Solicitor General*
BRENT MEAD
  *Assistant Solicitor General*
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov

EMILY JONES
  *Special Assistant Attorney General*
Jones Law Firm, PLLC
115 N. Broadway, Suite 410
Billings, MT  59101
Phone:  406-384-7990
emily@joneslawmt.com

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, HELENA DIVISION

| | |
|---|---|
| BOB BROWN; HAILEY SINOFF; AND DONALD SIEFERT, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State, <br><br> Defendant. | Case No. 6:21-cv-00092 <br><br> **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ..................................................................

INTRODUCTION .......................................................................... 1

FACTS .................................................................................. 2

LEGAL STANDARD ....................................................................... 4

ARGUMENT .............................................................................. 6

I. The Court should deny Plaintiffs' request entirely ................................ 8

II. Plaintiffs' fees should be substantially reduced ............................... 10

  A. The Court should reduce the requested hourly rate ......................... 11

  B. The Court should reduce Plaintiffs' excessive, redundant, and
    unnecessary requested hours ............................................. 13

    1. Van Kley's requested hours should be reduced in line with
      proper billing judgment ............................................. 15

    2. Sommers-Flanagan's requested hours should be reduced to
      reflect proper billing judgment .................................... 16

    3. Krautter's participation was unnecessary and he should be
      excluded from any award ............................................ 18

    4. Plaintiffs' paralegal fees should be reduced to reflect a
      reasonable number of hours. ........................................ 20

III. The *Kerr* factors further demonstrate the unreasonableness of
   Plaintiffs' fee request. ................................................... 22

  A. Time and Labor Required ................................................. 25

  B. The amount involved and the results obtained ........................... 25

  C. Awards in similar cases. ............................................... 26

IV. The Court should deny Plaintiffs non-taxable costs. ......................... 28

  A. Upper Seven Law's costs should be excluded ............................. 29

B. Krautter completely failed to provide any justification for his costs. ...................................................... 30

C. The Court should exclude Expert Witness Fees in this case. ........ 30

CONCLUSION ......................................................................... 32

CERTIFICATE OF COMPLIANCE ..................................................... 34

CERTIFICATE OF SERVICE ........................................................... 34

# TABLE OF AUTHORITIES

## CASES

*Bertelsen v. CitiMortgage, Inc.*,
   2017 U.S. Dist. LEXIS 117087 (D. Mont. July 26, 2017) .................................. 7

*Blum v. Stenson*,
   465 U.S. 886 (1984) ................................................................. 4, 5, 8

*Brown v. Ky. Legislative Research Comm'n*,
   2014 U.S. Dist. LEXIS 203088 (E.D. Ky. May 9, 2014) ............................... 26

*Carson v. Billings Police Dep't*,
   470 F.3d 889 (9th Cir. 2006) ..................................................... 11, 14

*Chaudhry v. City of L. A.*,
   751 F.3d 1096 (9th Cir. 2014) ........................................................ 14

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ...................................................... 7, 14

*Gilbrook v. City of Westminster*,
   177 F.3d 839 (9th Cir. 1999) ........................................................... 6

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................... *passim*

*Herrington v. County of Sonoma*,
   883 F.2d 739 (9th Cir. 1989) ....................................................... 7, 8

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .......................................................... 23

*Jordan v. Multnomah County*,
   815 F.2d 1258 (9th Cir. 1987) ....................................................... 4, 5

*Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*,
   741 F.3d 955 (9th Cir. 2013) .......................................................... 28

*Kerr v. Quinn*,
   692 F.2d 875 (2d Cir. 1982) ............................................................ 8

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ................................................................. 5

*McColl v. Allied Prof'l Ins. Co.*,
   2018 WL 5253501 (D. Mont. 2018) ................................................ 12

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir. 2009) ............................................................ 5

*Mendez v. County of San Bernardino*,
   540 F.3d 1109 (9th Cir. 2008) ....................................................... 6, 8

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ......................................................................... 20

*Montes v. City of Yakima*,
   No. 12-CV-3108-TOR, 2015 WL 11120966 (E.D. Wash. June 19, 2015) ...... 27

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) .......................................................... 13

*Nadarajah v. Holder*,
   569 F.3d 906 (9th Cir. 2009) ........................................................... 20

*Nat'l Ass'n for Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*,
   2020 WL 7706783 (S.D.N.Y. Dec. 29, 2020) ................................. 27

*Raleigh Wake Citizens Ass'n*,
   2017 WL 4400754 (E.D.N.C. Sept. 29, 2017) ................................ 27

*Redding v. Prosight Specialty Mgmt. Co.*,
   90 F. Supp. 3d 1109 (D. Mont. 2015) ................................................ 5

*Smith v. County of Riverside*,
   2019 WL 4187381 (C.D. Cal. 2019) ................................................ 30

*Sorenson v. Mink*,
   239 F.3d 1140 (9th Cir. 2001) .......................................... 8, 14, 15, 31

*Thomas v. City of Tacoma*,
   410 F.3d 644 (9th Cir. 2005) ............................................. 6, 7, 8, 18

*Thomas v. Reeves*,
   No. 3:18-cv-441-CWR-FKB, 2021 WL 517038 (N.D. Miss. Feb. 11, 2021) .. 27

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
    460 F.3d 1253 (9th Cir. 2006) ....................................................... 28, 30

*Veasey v. Abbott,*
    2020 WL 9888360 (S.D. Tx. May 27, 2020) ............................................ 28

*Victory Processing, LLC v. Knudsen*,
    2021 WL 58705at 12 (D. Mont. 2021) .................................................. 12, 19, 29

## Other Authorities

United States Code
    28 U.S.C. § 2884 ................................................................. 18
    42 U.S.C. § 1988 ...................................................... *passim*
    52 U.S.C. § 10310 ................................................................ 1, 31

Federal Rules of Civil Procedure
    Rule 9(g) ......................................................................... 31

## INTRODUCTION

Plaintiffs Bob Brown, Donald Seifert, and Hailey Sinoff move for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 (Doc. 48).[1]  In total, Plaintiffs seek $136,384.74 for a case commenced and resolved in the space of three months and one day.  (Docs. 1, 44).  Plaintiffs' attorneys billed 455.5 hours, or almost 35 hours per week during the pendency of the litigation.  In an extraordinarily complex case, perhaps this could be justified, but this was not that case.  A recent 'one-person, one-vote' case involving significantly more briefing, discovery, and time settled for $69,915.22 in total fees and costs against the defendant.  *See Mont. Green Party, et al. v. Jacobsen*, CV-18-00087-H-BMM-JTJ (March 30, 2022) (Consent Judgment).

Secretary Jacobsen objects to Plaintiffs' requested fees and costs. Plaintiffs fail to establish foundation for their request.  They fail to demonstrate the reasonableness of the rates charged, the hours worked, and the expenses claimed.  Plaintiffs must do more than recite *Hensley*

---

[1] Plaintiffs also claim expert fees under 52 U.S.C. § 10310, but as will be discussed, they failed to plead this basis for relief and the Court should not consider it.

and the *Kerr* factors while attaching timesheets. The Montana taxpayers cannot be put on the hook for such cursory and unreasonable claims.

## FACTS

The procedural history of this case tells a short story. Plaintiffs filed their Complaint on December 6, 2021. (Doc. 1). Briefing and a hearing on a preliminary injunction followed on January 7, 2022. (Doc. 16). After parties moved for summary judgment, a joint trial and hearing on the merits was held on March 4, 2022. (Doc. 44).

At Plaintiffs' request, the parties stipulated to forgoing live witnesses (including experts) at that bench trial. (Doc. 41); *see also* (Doc. 44 at 6). The parties also forwent depositions. Discovery in general imposed a minimal burden with Plaintiffs claiming 11.7 hours spent responding to Secretary Jacobsen's requests. *See* (Doc. 48-3 at 3–4).

This case involved a straightforward application of *Evenwel* to a five-district statewide body. *See* (Doc. 44 at 8) ("[B]oth parties agree that the current Commission districts deviate beyond the presumptively constitutional threshold of a 10% maximum deviation based on the 2020 Census data."). Issues that complicate redistricting analysis never appeared in this case. "[T]his case neither implicates concerns associated

with multimember districts nor generates issues related to the Voting Rights Act…." (Doc. 44 at 26). As redistricting cases go, it is the least complex and most straightforward of any case cited by either party at any point in this litigation.

As the Court noted, Secretary Jacobsen's opposition stemmed from threshold jurisdictional questions. (Doc. 44 at 8). Plaintiffs' response to these questions at the merits stage consisted of a in opposition totaling less than 2,000 words. (Doc. 31). Plaintiffs prevailed on their requested declaratory and injunctive relief, but the Court rejected all three maps submitted by Plaintiffs. Instead, the Court adopted Secretary Jacobsen's proposed remedial map with one slight modification. *See* (Doc. 44 at 37–38). The Court excluded altogether consideration of Plaintiffs' Proposed Maps 2 and 3. (Doc. 44 at 32).

Plaintiffs filed their motion for fees and costs on March 22, 2022. (Docs. 47–48). Plaintiffs support their motion through the declarations of counsel Van Kley, Sommers-Flanagan, and Krautter. (Docs. 48-1, 48-2, 48-5). Van Kley and Sommers-Flanagan support their claimed hourly rate through expert Emily J. Cross. (Doc. 48-7). Cross doesn't aver knowledge of hourly rates charged by Montana attorneys generally, or

reasonable hourly rates in cases like the one at bar. *See* (Doc. 48-7). Krautter supports his hourly rate only through his own declaration. (Doc. 48-5, ¶ 8). Counsel supports their requested hours only through timesheet submissions. (Docs. 48-3, 48-6). Plaintiffs submitted their motion prior to any offer of settlement on fees. (Mead Aff., ¶ 8).

## LEGAL STANDARD

"In any action or proceeding to enforce a provision of … [section 1983] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs …." 42 U.S.C. § 1988. When a party seeks an award of attorneys' fees, that party bears the burden of proof. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Reasonable fees under § 1988 are to be "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill

and reputation." *Jordan*, 815 F.2d, at 1263 (citing *Blum*, 465 U.S. at 895–97, n.11).

The District of Montana utilizes the lodestar method for determining reasonable attorneys' fees. *See Redding v. Prosight Specialty Mgmt. Co.*, 90 F. Supp. 3d 1109, 1149 (D. Mont. 2015) (the lodestar method is the reasonable number of hours multiplied by a reasonable hourly rate). The court also considers the 12 *Kerr* factors. *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). Those factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) the limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the relationship with the client, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*

"In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at

434).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  Block billing and claiming excessive hours are legitimate grounds for reducing or eliminating certain claimed hours.  *See Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1128-29 (9th Cir. 2008).

The district court may deny a fee award in special circumstances. *See Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005).  In applying the special circumstances, the court focuses on: "(1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees." *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir. 1999).

## ARGUMENT

Plaintiffs offer generalizations and conclusions, not evidence sufficient to prove the reasonableness of their fee award.  They seek $136,000.00 for a case they chose to overstaff that lasted barely three months.  This case involved only two hearings and no appeals.  The simplicity of the legal questions and brevity of the proceedings should have led to a commensurate fee request.  Instead, Plaintiffs sought almost twice the amount similar plaintiffs in a different 'one-person, one-

vote' case that spanned years—including an appeal—settled for.  *See Mont. Green Party*, CV-18-00087-H-BMM-JTJ (March 30, 2022) (Consent Judgment).

The Court, in its discretion, should deny Plaintiffs' attorneys' fees entirely.  *See Thomas*, 410 F.3d at 648; *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 745 (9th Cir. 1989).  The equities tip sharply in favor of Secretary Jacobsen.  Plaintiffs admit they named a defendant incapable of curing their injuries (Doc. 32-1 at 3–4), yet they now seek $136,000.00 from her.  This case presents the 'special circumstances' warranting a waiver of a fee award.  *See Herrington*, 883 F.2d at 745.

If the Court decides to award fees, then Plaintiffs failed to prove their desired request.  Plaintiffs' declarations state "the professional hours detailed in my daily records were reasonably and necessarily expended for the preparation and successful presentation of this case." (Docs. 48-1, ¶ 12; 48-2, ¶ 13; 48-5, ¶ 11).  Magic words don't make it so. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992); *Bertelsen v. CitiMortgage, Inc.*, 2017 U.S. Dist. LEXIS 117087, at *16-17 (D. Mont. July 26, 2017), aff'd, 2018 U.S. App. LEXIS 32838 (9th Cir. 2018). Plaintiffs must prove both their rates and hours as reasonable through

evidence, including sworn affidavits. *See Blum,* 465 U.S. at 895 n.11. Here, they offer naught but conclusions and self-verified timesheets. (Doc. 48 at 13–14).

The Court should further reduce any award based on Plaintiffs' failure to prevail on remedial maps. (Doc. 44 at 32, 35); *see Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001). Finally, the Court should reduce any award based on Plaintiffs' vague, redundant, and unnecessary billing. *See Mendez,* 540 F.3d at 1128-29.

## I. The Court should deny Plaintiffs' request entirely.

Courts may exercise discretion to deny a fee award when the award does not: (1) further the purpose of 42 U.S.C. § 1988, and (2) when the balance of the equities favors denial of fees. *See Thomas,* 410 F.3d at 648. The first factor, distilled down, equates to ensuring that denial of a fee award will not discourage people from finding adequate counsel in future, similar, cases. *Herrington,* 883 F.2d at 745 (citing *Kerr v. Quinn,* 692 F.2d 875, 877–78 (2d Cir. 1982). Phrased differently, if the court determines that a plaintiff's claim was so strong on the merits at the initial stage, then "counsel in similar cases could be easily and readily retained." *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir. 1982).

Plaintiffs' case involves a bare-bones Fourteenth Amendment 'one-person, one-vote' challenge.   (Metropoulos Aff., ¶ 11).   The Court acknowledged Secretary Jacobsen *agreed* and stipulated to facts demonstrating current Public Service Commission districts exceeded *Evenwel's* threshold for presumptive unconstitutionality.  (Doc. 44 at 18). Secretary Jacobsen never contested the need for the Legislature to redistrict in the future.  The facts were readily apparent for all to see.

The first three attorneys to look at the case took it.  (Doc. 48 at 19–20).  They did so with an agreement not to charge Plaintiffs.  (Doc. 48 at 18).  Plaintiffs simply assert because the Montana Legislature could moot the action, no other attorneys would take it.  (Doc. 48 at 20).  But, as Plaintiffs argued, a legislative fix was not forthcoming.  (Doc. 6 at 23–28). A review of this case demonstrates that on these facts, denial of an award in this case will not discourage similar plaintiffs from bringing a redistricting challenge in the future.

Instead, a denial of a fee award will prevent an injustice against Montana taxpayers and Montana's election system.  Plaintiffs named only Secretary Jacobsen.  They admit she lacked any authority to reapportion districts, or otherwise amend Montana statute.  (Doc. 32-1 at

3–4).   This prevented Secretary Jacobsen from entering settlement negotiations because she lacked any power to cure Plaintiffs' injury.  The case effectively holds her hostage based on the actions of other state officials and the legislative branch.  *Cf.* (Doc. 44 at 37) (the remedial map is in effect absent the "Governor or Montana legislature" calling a special session to implement a new map, or the Montana legislature creating a different map in 2023).  Now Plaintiffs seek $136,000.00 from Secretary Jacobsen for those other entities' (non)actions.  Imposing costs and fees on her, rather than the responsible parties, does nothing to prevent future harm to Plaintiffs, it only hurts Montanans who rely on the Secretary's budget for free, fair, and secure elections.  Respectfully, this case presents the rare special circumstance justifying denial of a fee award under 42 U.S.C. § 1988.

## II.  Plaintiffs' fees should be substantially reduced

If the Court is inclined to award some fees to Plaintiffs, then the claimed fees should be substantially reduced for several reasons.  First, Plaintiffs fail to substantiate their requested hourly rates with evidence that the prevailing market sustains fee requests at and above $275.00 per hour for new attorneys.  Plaintiffs' counsel also failed to exercise

proper billing judgment by excluding excessive, redundant, or otherwise unnecessary charges.  For example, Plaintiffs seek to charge Montana taxpayers $19,119.03 for two lawyers' travel and attendance at hearings in which those attorneys did not participate.  (Metropoulos Aff., ¶¶ 15(a),16(a)).  Such judgment doesn't fly in the private sector and shouldn't be accepted here. *See Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") (emphasis in original).

### A. The Court should reduce the requested hourly rate.

The party seeking attorneys' fees has the burden of proving "that the rate charged is in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006).  Plaintiffs fail to carry this burden.  Nowhere to do Plaintiffs even submit evidence of prevailing market rates in Montana.  (Docs. 48-1; 48-2; 48-5; 48-7).  Instead, they submit individual contract rates.  (Docs. 48-5, ¶ 8; 48-7, ¶ 6).  But the law requires a market rate, not individual contract rates. *See Carson*, 470 F.3d at 892.

Previously, federal courts in Montana surveyed attorney fee awards across all cases and found they generally involve fee requests or awards

of $250.00 per hour or less.  *See McColl v. Allied Prof'l Ins. Co.*, 2018 WL 5253501, at n.3 (D. Mont. Oct. 22, 2018).  In *Victory Processing, LLC v. Knudsen*, 2021 WL 58705, at 12 (D. Mont. 2021), the Court imposed hourly rates of $250.00, $200.00, and $180.00 to attorneys with 15, 10, and 6 years of experience respectively in a civil rights action.  These rates generally conform with Secretary Jacobsen's expert.  (Metropoulos Aff., ¶ 6) (new attorneys, including those with clerkship experience, charge $180.00–$190.00 per hour; experienced litigators charge $250.00–$280.00; and senior litigators charge $230.00–$350.00).   Plaintiffs' counsel claims rates of $275.00 and $285.00 per hour.  The Court should reduce these rates to $180.00 per hour.

First, the Court should discount the Cross declaration as it lacks foundation.  (Doc. 48-7).  Cross fails to establish knowledge of market rates in Montana and therefore cannot competently testify to the same.

Next, Plaintiffs' attorneys' experience and skill match up with prior fee awards of $180.00 per hour, not $275.00 or $285.00.  Sommers-Flanagan had six years of experience, Van Kley had five years, and Krautter had seven years of experience at the time this case was filed.  (Docs. 48-1, ¶ 6; 48-2, ¶ 7; 48-5, ¶ 4).  While Sommers-Flanagan and Van

Kley assert academic qualifications, as well as completion of federal clerkships, they acknowledge their relative inexperience in litigation. (Docs. 48 at 19; 48-1, ¶¶ 2–4; 48-2, ¶¶ 2–4).   Krautter asserts no specialized academic or clerking credentials.  (Doc. 48-5, ¶ 2).  Sommers-Flanagan and Van Kley each cite to a single other ongoing § 1983 case as their experience in this field.  (Docs. 48-1, ¶ 7; Docs. 48-2, ¶ 8).  Krautter's experience in this area consists of a single case in which he was not lead counsel and that settled prior to any substantive briefing or motions practice.  (Doc. 48-5, ¶ 5).  As new lawyers, this lack of experience is expected, hence the lower market rate.  The Court should reduce the requested hourly rates to $180.00.

### B. The Court should reduce Plaintiffs' excessive, redundant, and unnecessary requested hours.

The Court should begin its analysis of Plaintiffs' billed hours by reducing those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  This includes reviewing whether plaintiffs overstaffed a case. *Id.*  In awarding attorney's fees, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  The

court may also exclude fees related to an issue in which plaintiffs did not prevail. *See Sorenson,* 239 F.3d at 1147. "A district court can reduce a lawyer's request for duplicative or unnecessary work, and it can impose up to a 10 percent reduction without explanation." *Chaudhry v. City of L. A.,* 751 F.3d 1096, 1111 (9th Cir. 2014)

The burden initially falls to the plaintiff's counsel to prove the reasonableness of their charges. *Carson,* 470 F.3d at 891. Only then does the burden shift to the other party to submit evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates,* 987 F.2d at 1398–99.

Here, Plaintiffs submit only a self-verification absent any audit of their billed hours. (Docs. 48-1, ¶ 12; 48-2, ¶ 13; 48-5, ¶ 11; 48-7, ¶ 9). In reviewing the fee request, the Court owes Plaintiffs no deference as they failed to meet their initial burden of proof and should look to Secretary Jacobsen's review of their records by an outside party for guidance. (Metropoulos Aff., ¶¶ 15–17).

Further, the Court should exclude any fees related to research, drafting, production, briefing, and argument on the issue of remedial

maps.  The Court rejected Plaintiffs proposed maps.  (Doc. 44 at 32, 35).

The Court rejected Maps 2 and 3 without any consideration.  (Doc. 44 at

32).  The Court adopted Secretary Jacobsen's proposed map with one

minor modification.  (Doc. 44 at 35).  Plaintiffs failed to prevail on their

preferred remedy, which was the focus of the briefing, and the Court

should exercise its discretion to exclude those hours accordingly.  *See*

*Sorenson*, 239 F.3d at 1147.

### 1. Van Kley's requested hours should be reduced in line with proper billing judgment.

Van Kley submitted vague, excessive, and unnecessary hours in her

request.  (Metropoulos Aff., ¶ 17).  Secretary Jacobsen requests the Court

reduce her lodestar calculation to 220 hours at $180.00 per hour for an

award of $39,600.00.  (Metropoulos Aff., ¶ 17(i)).

First, the Court should exclude the 15.9 hours spent consulting

with Plaintiffs' expert and working on proposed maps.  (Metropoulos Aff.,

¶ 17(d)).  Plaintiffs retained an expert solely for the remedial map

question and they did not prevail on that issue.  The Court should also

exclude 4.0 hours of unnecessary travel, 2.0 hours of improperly billed

clerical tasks, and 0.6 hours for a conversation that bears an insufficient

relationship to the litigation.  (Metropoulos Aff., ¶ 17(h)).

The Court should reduce hours spent on the following subjects to reflect a reasonable time spent on those tasks:

| Task | Requested Hours | Reasonable Amount |
|------|-----------------|-------------------|
| Complaint | 30.2 | 20 |
| Preliminary Injunction | 71.9 | 50 |
| Motion to Dismiss | 10.1 | 4 |
| Summary Judgment | 65.7 | 38 |
| Discovery | 10.7 | 6 |
| Statement of Undisputed Facts | 8.4 | 4 |

(Metropoulos Aff., ¶ 17). Unlike Plaintiffs, Secretary Jacobsen supports her contentions through sworn statements. The Court should adopt these reductions based on the submitted evidence.

Finally, the Secretary respectfully asks the Court to exclude the 25.0 hours Van Kley bills for fees on fees. (Doc. 48-3 at 2). Plaintiffs extended no settlement offer prior to incurring these charges. (Mead Aff., ¶ 8). The Court should, in total, award at most 220 hours at $180.00 and then apply a ten percent overall reduction based on unnecessary and duplicative work. This results in a reasonable award of $35,640.00.

## 2. *Sommers-Flanagan's requested hours should be reduced to reflect proper billing judgment.*

Secretary Jacobsen doesn't object to Sommers-Flanagan reviewing Van Kley's work—that is reasonable—but Sommers-Flanagan billed a

staggering level of unnecessary hours unrelated to the development of briefing in this case.  Sommers-Flanagan requests an inordinate number of hours for time spent traveling to and attending hearings in which she did not participate.  (Metropoulos Aff., ¶ 15(a)).  She spent 17.5 hours, or 49% of her total request on such activities.  Plaintiffs offer no evidence that a commercial client would pay for such activities.

Secretary Jacobsen also requests exclusion of 1.4 hours for calls with co-counsel not reflected in Van Kley's records.  (*Id.* ¶ 15(b)).  Additionally, Secretary Jacobsen asks the Court to exclude the following:

- December 6, 2021 ("PSC Filing Prep).  This constitutes a clerical task.

- January 25, 2022 ("Client meeting").  Plaintiffs fail to provide sufficient detail for requiring an all counsel in-person meeting at this stage of the litigation.

- February 11, 2022 ("Editing Notice).  The Court found 28 U.S.C. § 2884 is jurisdiction and non-waivable. (Doc. 44 at 9).  Plaintiffs' notice purported to waive § 2284's jurisdiction.  (Doc. 30).

- March 21, 2022 ("Reviewing Correspondence").  This entry contains insufficient detail as to what it refers to and cannot be otherwise reduced.

(*Id.* ¶ 15).

Sommers-Flanagan's 4.1 hours spent reviewing and editing Plaintiffs' briefs related to their motion for summary judgment should be

reduced on the basis that the Court rejected their proposed remedial maps.  (Metropoulos Aff., ¶ 15(f))); (Doc. 44 at 32, 35).  This should be reduced to 2.5 hours.

Sommers-Flanagan further requests 2.5 hours for fees on fees, which coupled with Van Kley's 25.0 hours, brings Upper Seven Law to 27.5 hours spent preparing the instant motion.  (Doc. 48-3).  This request should be excluded.

The Secretary asks any lodestar calculation for Sommers-Flanagan be reduced to 10.8 hours at $180.00 per hour for a total of $1,944.00.  (Metropoulos Aff., ¶ 15(h)).  After a ten percent reduction for unnecessary and duplicative work a reasonable award totals $1,749.60.

### 3. Krautter's participation was unnecessary and he should be excluded from any award.

A cursory review of Krautter's claims demonstrates granting any fee award for his request amounts to a windfall.  *See Thomas*, 410 F.3d at 648.  Krautter billed 43.5 hours for travel to and attendance at hearings in which he did not participate.  (Metropoulos Aff., ¶ 16(a)).  Krautter exercised extraordinarily poor judgment billing dozens of entries for purely internal communications.  (Metropoulos Aff., ¶ 16(b)).  The time entries do not specify his level of participation, i.e. whether he

was an active or silent participant.  (Doc. 48-6).  He further block billed internal communications with other tasks in such a way that it makes it impossible to determine how much time was spent on internal communications versus other work.   (Metropoulos Aff., ¶ 16(b)). Krautter's co-counsel appropriately doesn't bill for these communications.  *Id.*  All told, the aforementioned entries comprise around 90 out of the 116 hours billed.  *See* Exhibit 8 (the Secretary cannot determine with complete accuracy the totals due to the vague nature of Krautter's billing).

Krautter also billed 16.1 hours for work on the proposed maps, which should be excluded.  (Metropoulos Aff., ¶ 16(e)).  Of note, Plaintiffs previously attributed this work to their paralegal Linfesty.  *See* (Doc. 23-1, ¶ 8).  What remains of Krautter's non-block billed entries duplicates the efforts of Van Kley and Sommers-Flanagan.  (Metropoulos Aff., ¶¶ 15(c)–(d)); *see Victory Processing, LLC*, 2021 WL 587905, at *15 (while it is reasonable for one attorney to review another's work, it is unreasonable for multiple attorneys to review the same document).  Krautter's entries contain additional unnecessary charges that should likewise be excluded. (Metropoulos Aff., ¶ 15).  Given Krautter's unnecessary, redundant, and

vague billing, the Court should conclude his participation in this case was unreasonable and his fees cannot be imposed on Secretary Jacobsen.

### 4. Plaintiffs' paralegal fees should be reduced to reflect a reasonable number of hours.[2]

Plaintiffs correctly note that they may recover paralegal fees for reasonable hours expended. *See Missouri v. Jenkins*, 491 U.S. 274, 288 (1989). But this is not without limitation. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Plaintiffs may only recover fees reasonably expended and may not include fees associated with clerical work that must instead be subsumed under the firm's overhead. *Id.*

First, no one attests to the reasonableness of Plaintiffs' paralegal's work. Second, more substantively, many of Linfesty's charges are unreasonable as they bill for issues Plaintiffs lost, contain vague descriptions, and are otherwise unexplained. The Court should exclude 18.4 hours for work directly on Plaintiffs' proposed maps. (Ex. 6.1) (entries highlighted in red). The Court should also reduce, if it does not outright exclude, a further 7.2 hours for work possibly related to maps,

---

[2] Secretary Jacobsen does not contest that $80.00 per hour reflects the prevailing market for paralegal services.

but the entries contain insufficient detail.  (Ex. 6.1) (entries highlighted in yellow).

The Court should also exclude 3.9 hours billed as "PSC data for PI Brief."  (Doc. 48-3 at 6).  The only PSC data included in the preliminary injunction brief duplicates data found in the Complaint.  *Compare* (Doc. 1, ¶ 29) to (Doc. 6 at 24).  The Court should also exclude 1.3 hours in clerical tasks for filing the "PI" and "PSC filing.  (Doc. 48-3 at 5–6).  Finally, 8.5 hours, if not already excluded, should be excluded as the vague entries make it impossible to determine if the work performed was in connection to legal or clerical tasks.  (Ex. 11).

Further, Linfesty billed excessive hours for the nature of the work completed.  Linfesty's charges for "TOC/TOA" work don't represent a reasonable amount of time expended on these tasks.  *See* (Lang Aff., ¶ 4). The entries on December 16–17, January 5, and February 28 should be reduced to a combined 3.6 hours.  In sum, the Court should reduce the lodestar calculation to 3.6 hours at an hourly rate of $80.00 for a total of $288.00.  Minus ten percent, this comes to a reasonable award of $259.20.

Combined with fees for Van Kley, Sommers-Flanagan, and Krautter, if the Court approves an award, then the Court should approve a reasonable fee award of $37,648.80.

## III. The *Kerr* factors further demonstrate the unreasonableness of Plaintiffs' fee request.

Plaintiffs fail to adequately support their *Kerr* factor allegations. *See* (Doc. 48 at 15–21).  The Court should downward adjust any fee and cost award based on Plaintiffs' failure to satisfy their burden to prove their request is reasonable.  Plaintiffs lack serious analysis of numerous factors.  *See* (Doc. 48 at 17 (factor 3); at 18 (factor 6); at 18–19 (factor 7); at 19 (factor 8); at 19 (factor 9); at 20 (factor 10)).[3]  They skip over importance considerations.

This case did not present novel or complex legal questions that required any advanced skills.  (Metropoulos Aff., ¶¶ 11–13).  Factors (2) and (3) weigh against Plaintiffs.  This case both substantively and procedurally presented ordinary legal questions and tasks.  *Id.*  Indeed, this case did not involve presenting witnesses at trial or extensive discovery.

---

[3] Secretary Jacobsen agrees factor (11) has no bearing in this case.

As previously stated, Plaintiffs failed to establish their requested fees, based on the experience, skill, and ability of their attorneys, with evidence. *See supra* at 11–13. Secretary Jacobsen established the market rate for attorneys of similar skill and experience as $180.00 per hour, not the $275.00 and $285.00 claimed by Plaintiffs. In short, as new lawyers, plaintiffs' attorneys simply don't command such exorbitant fees. (Metropoulos Aff., ¶ 6). Factors (5) and (9) weigh heavily against Plaintiffs.

Also, Plaintiffs miss the mark on fixed versus contingent fees. (Doc. 48 at 18). Factor (6) exists to establish "the attorney's fee expectations when he accepted the case." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). Here, acceptance of a fee of $0.00 established that Plaintiffs' counsel had no expectation of a fee award. Factor (6) therefore weighs against the Plaintiffs.

The truncated timeframe of this case demonstrates the unreasonableness of 495.3 billed hours. First, Krautter started research on this case on October 17, 2021. (Doc. 48-6 at 2). Then silence for almost a month. *Id.* In a case spanning only three months and a day, factor (7) weighs against an inexplicable month-long delay in restarting the

matter.   Even in this environment, counsel for Secretary Jacobsen litigated against these same attorneys in other cases as well as other cases in this Court. (Mead Aff., ¶ 9).  Plaintiffs' counsel offers thin, if any, evidence this case precluded them from other employment because they were litigating against other state agencies in other cases.  Factor (4) also fails to support Plaintiffs' unreasonable request.

Plaintiffs also fail to offer any evidence for their claim that "[f]ew attorneys would have taken this case, as it required a great deal of work with no opportunity for a contingency or hourly fee from clients."  (Doc. 48 at 21).   Three attorneys, and apparently the first three attorneys asked, *did* take this case.   As to compensation, they now ask for $136,000.00 from taxpayers.   Finally, Plaintiffs argued against the uncertainty which would ward off other attorneys, never really existed. *See* (Doc. 6 at 23–28) (prior legislative inaction precluded the likelihood of a legislative solution).  Factor (10) weighs against Plaintiffs.

The remaining factors deserve extra scrutiny from the Court as Plaintiffs undermine their own case.

## A. Time and Labor Required

Plaintiffs request 495.3 billable hours.  (Docs. 48-3; 48-6).  They justify this request by pointing not to why these hours were necessary, but why they weren't.  (Doc. 48 at 15–16).  This case did not involve live witnesses, it did not involve extensive discovery, nor did it involve freshly plowed legal terrain.   This controversy involved a basic question of whether legislative inaction from 2003 to the present imposes liability on Secretary Jacobsen related to the current Public Service Commission districts (which both parties agreed included population deviations of more than 10%).  *See generally* (Doc. 44); *see also* (Metropoulos Aff., ¶ 10). Factor (1) weighs against Plaintiffs.

## B. The amount involved and the results obtained

Plaintiffs did not receive "complete relief."  (Doc. 48 at 19).  The Court rejected their remedial maps in favor of Secretary Jacobsen's. (Doc. 44 at 32, 35).  Secretary Jacobsen adamantly maintained—and Plaintiffs admitted—she possessed no authority to reapportion districts. (Doc. 32-1 at 3–4).  Only through this Court's order was she able to proffer her map.  (Doc. 29).  Yet, this Court accepted that map, offered under duress, with one minor change.  (Doc. 44 at 35).  Only by this Court's

order could Secretary Jacobsen cure Plaintiffs' injuries through Map 4.

This hardly qualifies as a success for Plaintiffs justifying an award of fees

against Secretary Jacobsen.  Factor (8) weighs heavily against Plaintiffs.

### C. Awards in similar cases.

Each case cited by Plaintiffs as being comparable is readily

distinguishable from the present case.  Further, recent cases in Montana

show more involved 'one-person, one-vote' litigation settled for far lower

amounts.  *Brown* involved statewide legislative redistricting, with two

sets of plaintiffs against six groups of defendants.[4] *Brown v. Ky.*

*Legislative Research Comm'n*, 966 F.Supp. 2d 709, 712 (E.D. Ky. 2013).

Adding to the procedural complexities, the case involved an interaction

between state court decisions and federal law.  *Id.* at 714.  There, unlike

here, Plaintiffs received the total and exact relief request.  *Compare id.*

at 726–27 to (Doc. 44 at 37–38).  Finally, each set of plaintiffs in *Brown*

received a lower fee award, based on lower billed hours, than Plaintiffs'

request.  *See Brown v. Ky. Legislative Research Comm'n*, 2014 U.S. Dist.

LEXIS 203088, at *26 (E.D. Ky. May 9, 2014) (Report and

Recommendation) ("Herbert" plaintiffs received $58,507.08 for 206.75

---

[4] Plaintiffs cite *Brown* as the most applicable case.  (Doc. 48 at 21 n.2).

billed hours).  Plaintiffs here seek higher fees, for more hours, while attaining less success.

The Court should disregard citations to Voting Rights Act cases as the claims here did not arise under that Act.  *See Thomas v. Reeves*, No. 3:18-cv-441-CWR-FKB, 2021 WL 517038 (N.D. Miss. Feb. 11, 2021); *Nat'l Ass'n for Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, 2020 WL 7706783 (S.D.N.Y. Dec. 29, 2020) (Report & Recommendation); *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 WL 11120966 (E.D. Wash. June 19, 2015); (Doc. 44 at 26); (Doc. 22 at 31–32).

*Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections* involved a 'rare and unusual' challenge.  827 F.3d 333, 351 (4th Cir. 2016). Additionally, that case involved more intensive fact-finding than here as Plaintiffs called thirteen witnesses at trial.  *See Raleigh Wake Citizens Ass'n*, 2017 WL 4400754, at *22–23 (E.D.N.C. Sept. 29, 2017).[5]

---

[5]Notably, in that case, the Court applied a 10% global reduction for partial relief and 30% for unsuccessful claims.  *Id.* at *27.  The Court further reduced expert fees for vague billing practices.  *Id.* at 27–28.  Finally, the Court subtracted hours based on plaintiffs' failure to prove how "the many hours of client conferences may have aided [counsel's] preparation of the case."  *Id.* at 20.  In this sense, the case should prove instructive for the Court in evaluating Plaintiffs' vague, unnecessary, and unsupported requests for fees and costs.

Finally, *Veasey v. Abbott*'s opens stating that "[t]his dispute involved protracted litigation through all levels of the federal court system, multiple times." 2020 WL 9888360, at *1 (S.D. Tx. May 27, 2020). This case lasted three months without any appeals.

*Montana Green Party* provides a very recent guidepost in this district for an award involving a 'one-person, one-vote' challenge. *See* CV-18-00087-H-BMM-JTJ (March 30, 2022) (Consent Judgment). The Court should take notice of the $69,915.22 award in that case which went on appeal and involved more extensive briefing and discovery than this case. In sum, the *Kerr* factors demonstrate the unreasonableness of Plaintiffs' claim and the Court should reduce Plaintiffs' request.

## IV. The Court should deny Plaintiffs non-taxable costs.

Costs are divided into taxable and non-taxable costs. Taxable costs are awarded as a matter of right to those expenses expressly covered by statute. *See Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 957 (9th Cir. 2013). Non-taxable costs are a discretionary award for "reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client." *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir.

2006).   Even absent the Court's Order (Doc. 52), Secretary Jacobsen doesn't contest taxable costs.   She does, however, object to Plaintiffs' unreasonable, unsupported, and egregious non-taxable cost demands.

## A. Upper Seven Law's costs should be excluded.

Unnecessary travel, including to hearings in which counsel doesn't participate, may properly be excluded.  *See Victory Processing, LLC*, 2021 WL 587905, at *21 (denying non-taxable travel costs when travel to a hearing wasn't warranted).   Upper Seven Law attorneys request reimbursement for three unnecessary trips.  (Doc. 48-1, ¶ 14; 48-2, ¶14). Van Kley traveled to attend a client meeting in person that other counsel attended remotely.  *See* (Doc. 48-3 at 4; 48-6 at 5).  Plaintiffs submit no evidence why Van Kley's attendance was required in person, but Krautter's was not.  This serves to demonstrate the unreasonableness of the travel.   Sommers-Flanagan seeks costs for attendance at the two hearings, but she did not participate in either.   *See* (Doc. 48-2); (Metropoulos Aff., ¶¶ 15(a), 18).  Plaintiffs fail to sufficiently justify why multiple attorneys needed to attend hearings in which only one person presented argument to the Court.  The Court should also exclude this unnecessary expense.

## B. Krautter completely failed to provide any justification for his costs.

Krautter's failure to document any of his costs, or submit any evidence substantiating his expenses, precludes him from an award.  *See Trs. of the Constr. Indus. & Laborers Health & Welfare Trust*, 406 F.3d at 1258; (Doc. 48-6); (Metropoulos Aff., ¶ 18).  Krautter's failure prevents the Court and Secretary Jacobsen from assessing the reasonableness of his travel, lodging, and meals.  The Court cannot, for example, see his plane ticket, nights of stay, or what meal he may have treated himself to.  But most importantly, commercial clients require receipts to justify attorney billing.  (Metropoulos Aff., ¶ 18).  Krautter's non-taxable costs should be excluded from any award.

## C. The Court should exclude Expert Witness Fees in this case.

Plaintiffs requested costs, disbursements, and reasonable attorneys' fees pursuant only to 42 U.S.C. § 1988.  (Doc. 1 at 17).  Plaintiffs acknowledge 42 U.S.C. § 1988 does not allow recovery of expert fees in cases such as this.  (Doc. 48 at 2 n.1); *see Smith v. Cnty. of Riverside*, No. EDCV 16-227 JGB (KKx) 2019 WL 4187381, at *29–30 (C.D. Cal. June 17, 2019).  Instead, they, for the first time, raise 52 U.S.C.

§ 10310 as the basis for recovery. The Court should deny Plaintiffs' request because they failed to properly assert the basis for recovery in their complaint. *See* Fed. R. Civ. P. 9(g).

As stated, the Court used Secretary Jacobsen's map (Map 4) as the basis for its remedy, not any of the three maps submitted by Plaintiffs. (Doc. 44 at 32, 36). Accordingly, the Court should deny Plaintiffs' requested expert fees as these fees involve only the issue of proposed maps. (Doc. 48-4); *see Sorenson*, 239 F.3d at 1147.

The redistricting proposals rely on separate facts from the malapportionment claim. *See* (Doc. 44 at 23–24) (separating the issues of a Fourteenth Amendment violation from the question of remedy). The Court acknowledged both sides submitted evidence to the relevant state policy regarding redistricting. (Doc. 44 at 27–28). But the Court rejected two of Plaintiffs' maps for violations of state policy and noted that Plaintiffs conceded the question of whether state policy required adherence to county lines. (Doc. 44 at 29, 32). In sum, on the question of remedy, the sole question Plaintiffs retained their expert to answer, the Court largely sided with Secretary Jacobsen. (Doc. 44 at 35–36).

If the Court does not completely exclude expert fees, it should still exclude 0.45 hours claimed on February 10 and 16 as these entries relate to activities outside this litigation.  (Doc. 48-4 at 3).  The Court should then apply a 10% haircut reduction to vague billing entries such as "telecon with Constance V."  (Doc. 48-4).  Finally, the Court should apply a 2/3 reduction to remaining fees to reflect the Court's rejection without consideration of Maps 2 and 3. (Doc. 44 at 32).

### CONCLUSION

Secretary Jacobsen earnestly desires an exit from this controversy she didn't create and has no power to remedy.  The Court should minimize any further use of judicial resources and deny the fees and non-taxable cost request.  Plaintiffs failed to establish any threshold justifying their request.  They failed to submit adequate evidence of the reasonableness of either their requested rate or hours.  They failed to justify excessive travel and duplicative entries.  Krautter failed to attach a single receipt for $2,000.00 in costs.  The Montana taxpayer should not shoulder $136,000.00 in costs that will affect funding state election administration.  The Court should deny, or at least substantially reduce, Plaintiffs' request.

DATED this 21st day of April 2022.

AUSTIN KNUDSEN
Montana Attorney General

DAVID M.S. DEWHIRST
  *Solicitor General*

Emily Jones
  *Special Assistant Attorney General*


  */s/ Brent Mead*
BRENT MEAD
  *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
p. 406.444.2026
brent.mead2@mt.gov

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 6,379 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/  *Brent Mead*
NAME OF ATTORNEY

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: April 21, 2022          /s/  *Brent Mead*
                               NAME OF ATTORNEY