IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BOB BROWN, HAILEY SINOFF, and DONALD SEIFERT, | CV 21–92–H–PJW–DWM–BMM |
| Plaintiffs, | |
| vs. | OPINION and ORDER |
| CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State, | |
| Defendant. | |

Plaintiffs Bob Brown, Hailey Sinoff, and Donald Seifert (collectively "Plaintiffs") sued Secretary of State Christi Jacobsen in her official capacity, seeking to enjoin her from certifying candidates for the Public Service Commission in Districts 1 and 5 for the 2022 elections, a declaration that the current districts under Mont. Code Ann. § 69–1–104 violate the Fourteenth Amendment, and relief in the form of a new electoral map. Following a bench trial, Jacobsen was permanently enjoined from certifying candidates under the challenged map and a new map was imposed for certification in the 2022 election cycle until the Montana legislature acts differently. *See generally Brown v. Jacobsen*, __ F. Supp. 3d __, 2022 WL 683089, at *13 (D. Mont. Mar. 8, 2022). Over Jacobsen's objection, Plaintiffs seek attorney fees and non-taxable costs in the amount of

1

$126,171.23.[1]  (Docs. 46, 47, 54.)  Plaintiffs' motion for attorney fees is granted—with some reductions—but is denied as to expert fees.

## ANALYSIS

Where a prevailing party seeks fees authorized by statute, reasonableness is the touchstone of the inquiry.  Here, Plaintiffs are entitled to fees by statute, but Jacobsen argues that discretion counsels against a fee award because of the financial burden such an award will place on taxpayers and because Plaintiffs expended an unreasonable amount of time and effort on this case.  Of course, the intransigence of Jacobsen's posturing, while certainly her right, contributed significantly to the time and effort expended by Plaintiffs' counsel, making the "cost to the taxpayers" argument specious.  Even in light of the arguments put forth by Jacobsen, the legal conclusion was discernible from the start.  The results of this case ring clear: Plaintiffs prevailed on their requests for declaratory and injunctive relief and are entitled to fees.  Further, Plaintiffs submitted evidence in support of their request for attorney fees, and while Jacobsen argues there is inadequate proof of the prevailing rate if fees are awarded, the Court has the license to determine reasonable rates based on its knowledge of the practice in this district, and to the

---

[1] Plaintiffs initially sought $136,384.75, (Doc. 47 at 2), but reduced that request as stated in their reply to Jacobsen's response in opposition, (Doc. 54 at 21).

extent any of the requested fees are unnecessary, those fees are reduced from the final award.

## I.     Legal Standards

The parties disagree about the operative statutes under which Plaintiffs may seek fees.  Plaintiffs assert both 42 U.S.C. § 1988 and 52 U.S.C. § 10301 as bases for seeking fees.  (Doc. 47 at 2.)  In any action to enforce, *inter alia*, 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees as part of the costs."  42 U.S.C. § 1988(b).[2]  Similarly, under 52 U.S.C. § 10310(e), "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs."  At first blush, there seems to be little difference between the statutes.  The legislative history indicates that "Congress enacted [§ 1988] in 1976 to encourage private attorneys general to enforce fundamental constitutional rights . . . Sections 1988 and [10310(e)] use similar language and should be construed similarly."  *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980) (citing S. Rep. No. 94-1011, 94th Cong., 2d Sess. 2); *see also Veasey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021).  But for

---

[2] "Reasonable attorney fees" encompasses reasonable fees for paralegals.  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989).

3

Plaintiffs, there is an important difference between the two: they may be awarded expert fees only under § 10310(e). *See* § 1088(c) (allowing recovery of expert fees only in suits brought under 42 U.S.C. §§ 1981 or 1981a); (*see also* Doc. 48 at 9 n.1).

In their Complaint, Plaintiffs sought an award of attorney fees solely under § 1988, (Doc. 1 at 17), and Jacobson correctly argues the omission of a request for fees under § 10310 now prevents Plaintiffs from recovering fees under that statute, (Doc. 53 at 37 (citing Fed. R. Civ. P. 9(g)).[3]  Because the expert fees Plaintiffs request are an item of special damages, Rule 9(g) applies and the dispute boils down to whether Plaintiffs can recover expert fees under § 10310(e) given that they did not plead a request for expert fees in their Complaint, nor did they identify § 10310 as a basis for those fees.  They cannot.

Rule 9(g) requires that "[i]f an item of special damages is claimed, it must be specifically stated."  While the Ninth Circuit has not directly addressed whether attorney fees are "special damages," other district courts within the Ninth Circuit

---

[3] Jacobsen also argues that Plaintiffs' expert fees should not be awarded because the expert worked on Plaintiffs' proposed maps, none of which the Court adopted. (*See* Doc. 53 at 57.)  The argument that time and effort is not compensable if expended on maps that were ultimately rejected lacks merit, *see Favors v. Cuomo*, 39 F. Supp. 3d 276, 309 (E.D. N.Y. 2014) (rejecting State's argument that expert fees should not be awarded for a map drawn by prevailing party's expert because that map was not adopted by the court), but Plaintiffs are nonetheless precluded from an award of expert fees for the reasons stated in this Order.

have recognized attorney fees are such special damages, as have other circuits.

*See, e.g., Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1053 (S.D. Cal. 1998)

("[A]ttorney's fees are an item of special damages that must be specifically sought

in the complaint."); *see also United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d

762, 764 (5th Cir. 1996) (collecting cases).  Understanding attorney fees as

"special damages" makes sense given that special damages are defined as "the

natural, but not necessary or usual, consequence of the defendant's conduct."

*Storm Mfg. Group, Inc. v. Weather Tec Corp.*, 2013 WL 5352698, *5 (C.D. Cal.

Sept. 23, 2013); *see also* Fed. R. Civ. P. 54(d) (prohibiting attorney fees in the

normal course).  The subsection titled "attorney's fees" under § 10310(e)

encompasses both "a reasonable attorney's fee" and "reasonable expert fees."

Thus, based on the construction of the statute, a request for expert fees is a request

for attorney fees and is consequently subject to the pleading standard of Rule 9(g)

governing special damages.

The Rule 9(g) pleading standard is focused on notice.  "The rule is designed

to 'inform defending parties as to the nature of the damages claimed in order to

avoid surprise; and to inform the court of the substance of the complaint.'" *Global

Res. Mgmt. Consultancy, Inc. v. Geodigital Int'l Corp.*, 2016 WL 1065796, *2

(C.D. Cal. Mar. 17, 2016) (quoting *Great Am. Indem. Co. v. Brown*, 307 F.2d 306,

308 (5th Cir. 1962).)  "The failure to plead with the requisite specificity under Rule

5

9(g) bars recovery for the items of special damage that are not set forth in the pleading." *Arce-Mendez v. Eagle Produce P'ship Inc.*, 2008 WL 659812, *4 (D. Ariz. Mar. 6, 2008) (quotation marks and alteration omitted).

Here, Plaintiffs' Complaint claims an item of special damages: attorney fees under § 1988. (Doc. 1 at 17.) While Plaintiffs are correct that Rule 8 of the Federal Rules of Civil Procedure does not include a requirement to identify all statutes under which fees may be sought, Plaintiffs' present request for expert fees under an entirely different statute runs afoul of the purposes of Rule 9(g). While Plaintiffs arguably put Jacobsen on notice for purposes of § 10310 that they were seeking attorney fees by identifying "attorney fees" as a particular item of damages, that notice cannot be transferred to Plaintiffs' argument about expert fees given that, as Plaintiffs themselves recognize, (Doc. 48 at 9 n.1), they cannot recover expert fees under § 1988. Based on Plaintiffs' pleadings, absent notice Jacobsen could not have anticipated Plaintiffs would seek expert fees if they won. Plaintiffs could have avoided Jacobsen's argument and surprise if they had pleaded a request for fees under both §§ 1988 and 10310. *Cf. Global Res. Mgmt. Consultancy, Inc.*, 2016 WL 1065796, at *2. Pleading both statutes would not have required unusual foresight since the Complaint sought to vindicate Plaintiffs' Fourteenth Amendment voting rights. *See* 52 U.S.C. § 10310(e).

In this case, Plaintiffs are barred from recovering expert fees under § 10310(e) because they failed to specifically plead those damages as required by Rule 9(g). The expert damages claimed constitute $5,280.00 of Plaintiffs' $126,171.23 request, or roughly 4% of the total amount sought. (*See* Doc. 48 at 24.) Apart from the request for expert fees, Plaintiffs' request for attorney fees under § 10310 is functionally the same as their request for attorney fees under § 1988, *Riddell*, 624 F.2d at 543, and so the remainder of the motion is considered only under § 1988.

## II.   Attorney Fees

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). Upon a showing that the plaintiff has "prevailed" in this sense, the next step is determining the amount of a fee award, and reasonableness drives this inquiry. *See id.* at 114 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* (quotation marks omitted). The lodestar figure is "[t]he most useful starting point for determining the amount of a reasonable fee," and it is achieved by multiplying the number of hours "reasonably expended on the litigation . . . by a reasonable hourly

7

rate." *Hensley*, 461 U.S. at 433. Once the lodestar figure is determined, it may be

adjusted upward or downward, *id.* at 434, depending on case-specific

considerations including:

> (1) the time and labor required, (2) the novelty and difficulty of the
> questions involved, (3) the skill requisite to perform the legal service
> properly, (4) the preclusion of other employment by the attorney due to
> the acceptance of the case, (5) the customary fee, (6) whether the fee is
> fixed or contingent, (7) time limitations imposed by the client or the
> circumstances, (8) the amount involved and the results obtained, (9) the
> experience, reputation, and ability of the attorneys, (10) the
> "undesirability" of the case, (11) the nature and length of the
> professional relationship with the client, and (12) awards in similar
> cases,

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) *abrogated on*

*other grounds as recognized by Stetson v. Grissom*, 821 F.3d 1157, 1167 (9th Cir.

2016). Many of these factors are "presumably 'subsumed' within the lodestar

analysis." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1204 n.3 (9th Cir. 2013).

Specifically, it is presumed that the lodestar calculation accounts for *Kerr* factors

1, 2, 3, 4, and 5. *See id.* at 1209 n.11.

Here, Jacobsen recognizes that "Plaintiffs prevailed on their requested

declaratory and injunctive relief" but argues that Plaintiffs should not be awarded

any fees because the Court "rejected all three maps submitted by Plaintiffs" and

instead "adopted Secretary Jacobsen's proposed remedial map with one slight

modification." (Doc. 53 at 9.) In essence, Jacobsen rejects the notion that

Plaintiffs achieved a high degree of success on their claim and maintains that it

8

would be inequitable to force the Montana taxpayers to bear the costs of this litigation. As suggested above, the burden on the taxpayers, if any given that there was a constitutional violation remedied for their benefit, in large part is based on the litigation strategy Jacobson pursued. Jacobsen also argues that any fee request should be significantly reduced based on an evaluation of the *Kerr* factors. (*Id.* at 28.)

Plaintiffs received the relief they sought: a declaration that Mont. Code Ann. § 69–1–104 violates the one person, one vote principle of the Fourteenth Amendment and implementation of a map that brought the Commission districts into constitutional compliance. (*See* Doc. 1 at 16); *Brown*, 2022 WL 683089, at *13. Plaintiffs submitted documentation of the time and effort they expended to achieve that result and generally "ma[d]e a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. Ultimately, Plaintiffs have shown that they achieved an excellent result after devoting reasonable time and effort to this case, and at the expense of lost opportunity for other legal endeavors.

## A.    No Special Circumstances Exist

Section 1988 authorizes fees to encourage "injured parties to seek judicial relief for civil rights violations." *Ackerley Comms., Inc. v. City of Salem*, 752 F.2d 1394, 1396 (9th Cir. 1985). Consequently, an award of fees is the rule, not the

9

exception, under § 1988, and the burden falls on the defendant to make a strong

showing that special circumstances warrant the denial of fees. *Herrington v. Cnty.*

*of Sonoma*, 883 F.2d 739, 743–44 (9th Cir. 1989). In determining whether such

"special circumstances" exist, considerations include whether the plaintiff was

motivated by a desire for financial gain or a desire to vindicate constitutional rights

and whether the lawsuit furthers the statutory intent of enabling private citizens to

bring civil rights suits that they might otherwise be incapable of financing.

*Ackerley Comms., Inc.*, 752 F.2d at 1396–97. This factor is part of an additional

consideration: whether the benefit of the decision extends beyond the plaintiff as

part of the "congressional purpose in providing attorney's fees in civil rights cases

was to eliminate financial barriers to the vindication of constitutional rights and to

stimulate voluntary compliance with the law." *Id.* at 1397 (emphasis omitted).

Another concern is whether the balance of equities and hardship tip in favor of a

fee award. *See id.* at 1397; *see also Gilbrook v. City of Westminster*, 177 F.3d 839,

878 (9th Cir. 1999).

Despite recognizing that Plaintiffs prevailed, (Doc. 53 at 9), Jacobsen

maintains that "special circumstances" warrant withholding an award of fees, (*id.*

at 13). But the argument is a red herring as no such circumstances exist here.

Plaintiffs sought to vindicate their Fourteenth Amendment voting rights, (Doc. 1 at

16), not only for their own benefit but for the express benefit of other Montana

voters, and they were not motivated by any desire for financial gain as they sought only declaratory and injunctive relief. The purpose of § 1988—which encompasses the consideration of whether any parties beyond Plaintiffs benefitted from their success—also weighs against a finding a "special circumstances" and in favor of a fee award. The purpose of § 1988 is "to encourage private enforcement of the civil rights laws," *Gilbrook*, 177 F.3d at 872, and Plaintiffs are private citizens who succeeded in their efforts to enforce the one person, one vote principle of the Fourteenth Amendment, *see Brown*, 2022 WL 683089, at *13. Their success on that claim benefitted not only Plaintiffs but Montanans throughout the state whose votes were unconstitutionally diluted or magnified under the void map. Jacobsen's further argument that the equities tip in her favor because she is "incapable of curing [Plaintiffs'] injuries" is simply another variation of her argument that Plaintiffs lack standing because Jacobsen is, purportedly, incapable of offering redress. This redundant argument failed at all previous junctures of the case; it remains unsuccessful now. Finally, Jacobsen's "too early and too late" argument that she continuously raised during this litigation cannot comport with the Fourteenth Amendment's requirement of one person one vote, and so her reliance on this argument as a justification for denying Plaintiffs' fee request is misplaced. (*Cf.* Doc. 53 at 15.)

11

Thus, Jacobsen fails in meeting her burden to make the "strong showing" that special circumstances exist to warrant withholding of an award of any attorney fees.

### B.     Lodestar Figure

Plaintiffs succeeded on their single claim by achieving the relief requested. *See Farrar*, 506 U.S. at 114.  Jacobsen's argument that Plaintiffs "did not receive complete relief" because Plaintiffs' proposed maps were not selected to replace the challenged map is wrong.  (*See* Doc. 53 at 31.)  Plaintiffs' prayer for relief did not include a request that the Court adopt a particular map, and Plaintiffs' summary judgment materials asked only that the Court "draw or adopt a new map" and did not request that the Court adopt a particular proposed map.  (*See, e.g.*, Doc. 22 at 21; *see also id.* at 29 (asking "the Court to adopt one of [Plaintiffs'] maps or to draw its own").)  The maps offered were a part of an evidentiary package for consideration by the Court, just as Jacobson's map was.  The Court declared the districts under the challenged Commission map unconstitutional and then drew its own map.  *Brown*, 2022 WL 683089, at *13.  Because Plaintiffs received their requested relief the next inquiry in considering the reasonableness of the fee request is the lodestar determination.

The lodestar figure results from multiplying the number of reasonable hours by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433.  "[T]he burden is on the fee

applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Only those hours that were "reasonably expended" should be included in the initial fee amount. *Hensley*, 461 U.S. at 434. Hours must not be excessive, redundant, or unnecessary; put differently, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.*

Here, Plaintiffs seek fees slightly above-prevailing market rates and—based on the reductions indicated in their reply—seek nearly reasonable hours. Van Kley acted as lead counsel in this case and her background includes a one-year clerkship with a federal appellate court and two years of clerking with a federal district court followed by entry into private practice at a Montana law firm in 2020. (Doc. 48-1 at 3–4.) Sommers-Flanagan acted in a supervisory role in this case, and her background includes a one-year clerkship with a federal appellate court, a one-year clerkship with a federal district court, two fellowships, and a stint as deputy legal counsel to the then-governor of Montana. (Doc. 48-2 at 3–4.) Krautter entered private practice in Montana directly after law school in 2014, and he served one term as a Montana legislator during the 2020–21 session. (Doc. 48-5 at 3–4.) Excluding the expert and paralegal fees, and accounting for the reductions

Plaintiffs make in their reply, Plaintiffs seek $117,811.23 in fees for counsels'
work. All attorneys are relatively new to the practice of law, but their inexperience
on one side is tempered by the issues in this case on the other, so counsels' fees are
reduced accordingly.

### 1. Hourly Rates

Determining an appropriate "market rate" for an attorney's services in
relation to § 1988 is an inherently difficult task. *Blum*, 465 U.S. at 895 n.11. The
prevailing party must produce satisfactory evidence to support its fee request, and
"affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees
in the community and rate determinations in other cases are satisfactory evidence
of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973,
980 (9th Cir. 2008). By contrast, a fee applicant fails to produce sufficient
evidence if that party submits documentation that speaks only to that party's usual
rate. *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). In other
words, "[t]hat a lawyer charges a particular hourly rate, and gets it, is evidence
bearing on what the market rate is, because the lawyer and his clients are part of
the market," but that information alone cannot establish the prevailing market rate
because the guidepost is the "rate for attorneys of comparable experience, skill and
reputation, which may or may not be the rate charged by the individual attorney in
question." *Id.* at 892. But, even if a fee applicant submits affidavits from other

experienced lawyers that speak to the applicant's skill or good reputation, if those affidavits do not include a statement that the affiants themselves or others in the community charge the applicant's requested rate, those affidavits are insufficient to establish the prevailing market rate. *Id.* at 891. The court may also rely on its own familiarity with prevailing market rates in the community when making a fee determination. *See Riordan v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 11424124, at *8 (D. Mont July 16, 2008) (Findings & Recommendations) *adopted by Riordan v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 11417002 (D. Mont. Sept. 29, 2008).

Here, Plaintiffs request two different rates: $275 an hour for work performed by Van Kley and Krautter, and $285 an hour for work performed by Sommers-Flanagan. (*See, e.g.*, Doc. 48 at 14.) As a preliminary matter, Jacobsen makes a wildly inaccurate claim about the evidence offered by Plaintiffs in relation to their request for attorney fees: "Plaintiffs must prove both their rates and hours as reasonable through evidence, including sworn affidavits. Here, they offer naught but conclusions and self-verified timesheets." (Doc. 53 at 14 (citation omitted); *see also id.* at 22 ("Unlike Plaintiffs, Secretary Jacobsen supports her contentions through sworn statements.")) To any extent Jacobsen objects that Plaintiffs submitted sworn declarations instead of affidavits, that argument ignores that sworn declarations are the "functional equivalents" of sworn affidavits. *LNS*

15

*Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022); 28 U.S.C.

§ 1746.  At best, Jacobsen's inaccurate portrayal of the evidence misleads the

casual reader; at worst it is a continuation of problematic and unhelpful argument

in the State's briefing in this and other cases before the court.[4]

In support of their requested rates for attorney fees, Plaintiffs submitted the

following materials: sworn declarations from Van Kley, Sommers-Flanagan, and

Krautter, (Docs. 48-1, 48-2, 48-5); timesheets from their respective law firms,

(Docs. 48-3, 48-6); and a declaration from Emily Cross, a Montana attorney, (Doc.

48-7).  Plaintiffs also cite to multiple recent cases in which similar rates were

awarded in the District of Montana.  (Doc. 48 at 12 (listing cases).)  This sort of

evidence is typical in supporting a fee request.  *See Camacho*, 523 F.3d at 980.  In

opposition to Plaintiffs' request, Jacobsen submitted an affidavit from Jon

Metropoulos, a Montana attorney.  (Doc. 53-18.)  Based on the Court's own

familiarity with billing rates in the district, and the record evidence, a reasonable

rate falls somewhere between Plaintiffs' requested rates and Jacobsen's suggested

rates.  While neither side provides evidence perfectly responsive to the Ninth

Circuit standard of rates charged for similar services of reasonably comparable

skill, experience and reputation, Plaintiffs provide a reasonable explanation for this

---

[4] *See, e.g., Mont. Med. Ass'n v. Knudsen*, __ F. Supp. 3d __, 2022 WL 225056, at
*2 n.6; *id.* at n.7; *Mont. Democratic Party v. Jacobsen*, 9:21-cv-119-M-DWM
(Doc. 17 at 2)).

omission: "[l]awyers of comparable experience rarely lead litigation efforts such as the case at bar" because such lawyers are typically subject to partner oversight within law firms. (Doc. 54 at 11–12.) This idea must also be considered alongside the significance of working at the Ninth Circuit and in a federal district court, a combination of experience establishing intellect, ability, knowledge, and talent comparable to a fifth-year associate.

Cross's declaration states that she began working as an associate at a Montana firm in 2019 after a one-year federal appellate clerkship and one year of practice experience, initially billing at a rate of $220 an hour. (Doc. 48-7 at 4.) Cross now bills at a rate of $290 an hour. (*Id.*) Metropoulos submitted a declaration in support of Jacobsen's opposition based on his own "knowledge of the Montana legal community and experience working within it." (Doc. 53-18 at 5.) Metropoulos stated that "the prevailing market rate for new attorneys in complex litigation is about $180 per hour" and that rate should apply to Van Kley and Sommers-Flanagan while Krautter could reasonably charge $200 an hour. (Doc. 53-18 at 6–7.) A survey of recent cases involving awards of attorney fees in Montana shows that such fees have been awarded across a broad spectrum, from $500 an hour for the work of a seasoned litigator, *see Nance v. Jewell*, 2014 WL 948844, at *2 (D. Mont. Mar. 11, 2014), to $180 an hour for the work of new attorneys with no noted clerkship or fellowship experience, *see Victory Processing,*

*LLC*, 2021 WL 587905, at *4. *See also McColl v. Allied Pros. Ins. Co.*, 2018 WL 5253501, at *3 n.3 (D. Mont. Oct. 22, 2018) ("The Court has also surveyed attorney fee cases which have come before the Montana Supreme Court in the last decade, and found they generally involve fee requests or awards of $250 per hour or less.").

Thus, the record and recent cases dealing with attorney fees establish that rates reflecting approximately a 20% reduction from Plaintiffs' requested rates are appropriate. The primary reason for the reduction is Plaintiffs' relative experience and an omission from any sworn statement—provided by Plaintiffs or Jacobsen— as to what comparably experienced or skilled attorneys charge for work specifically related to civil rights litigation in Montana. And, while Krautter emphasizes that he typically charges clients $275 an hour, (Doc. 48-5 at 4), his customary rate is not dispositive for determining the prevailing market rate. *Carson*, 470 F.3d at 891; (*cf.* Doc. 54 at 13). But an award above Jacobsen's suggested rate is appropriate given that Plaintiffs' fee request is anchored to a complex case, before a rare three-judge panel, that was litigated from scratch, and prevailing market rates support an award above $180 an hour. Van Kley and Krautter's fees are awarded at a rate of $225 an hour while Sommers-Flanagan's fees are awarded at a rate of $233 an hour to reflect her supervisory role in this case.

## 2. Hours Billed

Determination of the number of reasonable hours expended also rests on the documentation submitted by the fee applicant. *Herrington*, 883 F.2d at 747. Additional considerations include "the quality of [the moving parties'] briefs, the complexity of the issues, the time and labor reasonably required to perform specific tasks," and whether the case was an entirely new action or whether the fees are connected to an appeal. *Id.* Other considerations include whether the fee applicant's declaration or affidavit avers that the applicant exercised sound judgment in billing the case, such as by reducing or eliminating excessive, redundant, or unreasonable hours expended. *See Victory Processing, LLC*, 2021 WL 587905, at *5; *see also Hensley*, 461 U.S. at 434. Moreover, billing reflecting some degree of supervision is expected and reasonable, but generally work should not be reviewed by more than one supervising attorney. *Victory Processing, LLC*, 2021 WL 587905, at *5. Additionally, hours devoted to clerical work should not be included in the final fee computation. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *All. for the Wild Rockies, Inc. v. U.S. Army*

*Corps of Eng'rs*, 2019 WL 1749518, at *6 (D. Or. Apr. 18, 2019) (quotation marks omitted).  Finally, "[r]ecoverable attorney's fees may include fees incurred while doing work on the underlying merits of the action ('merits fees') as well as fees incurred while pursuing merits fees ('fees-on-fees')."  *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995).

Plaintiffs initially billed and sought fees for over 450 hours of attorney work. (*See* Doc. 48 at 14.)  In their reply, Plaintiffs reduced that request by halving their request for the time Sommers-Flanagan and Krautter spent traveling,[5] (Doc. 54 at 18), resulting in a reduction of 30.5 hours.  Additionally, "Plaintiffs agree that 2.0 hours . . . of Van Kley's claimed time is not compensable."  (Doc. 54 at 19.)  Thus, Plaintiffs ultimately seek attorney fees for over 400 hours of work and travel, which includes 27.5 hours for "fees-on-fees."  (*See* Doc. 53 at 24.)

Jacobsen argues that this case was "straightforward" and "overstaffed," and "[t]he simplicity of the legal questions and brevity of the proceedings should have led to a commensurate fee request."  (Doc. 53 at 8, 12.)  According to Jacobsen, this case was a "bare-bones Fourteenth Amendment 'one-person, one-vote' challenge.'"  (*Id.* at 15.)  Jacobsen's arguments do not reflect the position she took

---

[5] "It is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920."  *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).

earlier in this litigation.  (*See* Doc. 54 at 15–16 (comparing arguments Jacobsen

made at the preliminary injunction stage and merits stage).)  Despite Jacobsen's

repeated references to a "single issue," the single claim in this case raised

complicated questions rooted in jurisdiction, separation of powers, federalism, and

constitutional rights, all of which Jacobson pursued as was her right.  *See, e.g.,*

*Brown*, 2022 WL 683089, at *3 ("The tension between a constitutional violation

and the principles of federalism and the doctrine of separation of powers presents a

Hobson's choice for the court."); *id.* at *9 (noting that the challenge of redistricting

is "exacerbated by the parties' slightly different accounts of what the relevant

Montana state policy is—and how much deference is owed to such policy—and

the challenge [was] made greater still by the absence of witnesses" at the trial).

Accordingly, Jacobsen's arguments on the number of hours expended on this

"simple" case hold no water.  *Cf. Herrington*, 883 F.2d at 747.

Jacobsen's arguments that the Court should exclude any time Plaintiffs spent

on the proposed maps fail because Plaintiffs' proposed maps were necessary

evidence needed for the determination on the merits.[6]  Moreover, each attorney for

Plaintiffs averred that he or she had "exercised billing judgment and eliminated

---

[6] The concurrence from Judge Morris explaining that he would have chosen
Plaintiffs' Proposed Map 1 and the Court's substantial juxtaposition of Proposed
Map 1 and Jacobsen's map demonstrate that Plaintiffs' efforts on their proposed
maps were far from futile. *Brown*, 2021 WL 683089, at *11–12; *id.* at *13
(Morris, J., concurring).

excessive and duplicative entries." (Doc. 48-1 at 5; 48-2 at 6; 48-5 at 5.)  These sworn statements move the needle toward reasonableness.  *See Victory Processing, LLC*, 2021 WL 587905, at *5.  Additionally, Jacobsen argues that Krautter's time should be eliminated because it is allegedly duplicative, unreasonable, and vague, (Doc. 53 at 25), but Krautter's work on the Complaint indicates it occurred almost two months before this case was filed and more than one month before the other attorneys noted any time working on the Complaint, (*see* Doc. 48-6 at 2; Doc. 48-3 at 5), consistent with an attorney doing "initial case investigation work," (Doc. 48 at 14).  Additionally, concerns about unnecessary travel have been mitigated by Plaintiffs' decision to reduce those fees by half.  Finally, Plaintiffs' briefs reflected significant time and effort, and they were completed on a condensed timeline.  *See Herrington*, 883 F.2d at 747.  That Sommers-Flanagan reviewed Van Kley's work, (*see* Doc. 48-3 at 6–7), constitutes reasonable time for which billing is permissible, *Victory Processing, LLC*, 2021 WL 587905, at *5.  These considerations suggest that the number of hours Plaintiffs request are largely reasonable.

There are, however, a few instances in which it appears both Krautter and Sommers-Flanagan reviewed Van Kley's work, and such duplicitous review is not reasonable.  *See id.*  Accordingly, based on the redundant review of the preliminary injunction brief in December 2021, redundant review of Van Kley's work related to summary judgment in February 2022, and redundant review of Van Kley's work

related to this motion, 9 hours are deducted from the number of hours Krautter seeks.  Further, clerical tasks are not compensable, and so the hours Plaintiffs' counsel claims related to preparing declarations and filing are excluded from the final fee award.  This results in an additional 5-hour reduction from Van Kley's time, a 1.3-hour reduction from Sommers-Flanagan's time, and a 1.8-hour reduction from Krautter's time.  And, while Krautter's billing entries are not so vague as to be labeled "block-billed," Jacobsen is correct that some of the entries are unclear and seemingly unnecessary; for example, over 13 hours are devoted to "review of email" in some sense or other.  Consequently, after the above reductions, Krautter's billable hours are further reduced by 20%, resulting in a total of 66.7 billable hours for Krautter's work.

Finally, Plaintiffs are entitled to bill for the hours expended on "fees-on-fees." *Thompson*, 45 F.3d at 1368.  However, because Plaintiffs did not achieve complete success on their fees-on-fees request given their failure to plead expert fees under § 10310(e) and their request for rates slightly above the market rate, their fees-on-fees hours are reduced by 20%. *See id.*  Thus, Plaintiffs are entitled to recover 22 hours for "fees-on-fees."

Based on the reasonable rate calculated above and the reasonable number of hours, the lodestar figure for attorney fees is $86,510.80.  These fees are awarded for each attorney as follows:

| Attorney | Rate | Awarded Hours | Total |
|---|---|---|---|
| Van Kley | $225/hour | 291.8 hours | $65,655.00 |
| Sommers-Flanagan | $233/hour | 25.1 hours | $5,848.30 |
| Krautter | $225/hour | 66.7 hours | $15,007.50 |

## C.   *Kerr* Factors

As noted above, the first five *Kerr* factors are presumed to be included in the lodestar calculation.  *See Gonzalez*, 729 F.3d at 1209 n.11.  Moreover, the lodestar calculation above considered additional *Kerr* factors, including the abbreviated schedule in this case; the amount involved and results obtained; and the experience, reputation, and ability of Plaintiffs' attorneys.  Accordingly, only a handful of *Kerr* factors remain for consideration, and none requires a reduction in the lodestar amount.

Plaintiffs have the better argument that the sixth *Kerr* factor—whether the case was accepted on a contingency basis—does not play a role here.  Jacobsen's argument that the sixth factor weighs in favor of reduction relies on an out-of-circuit case that was expressly overruled as to its reasoning regarding contingency fees.  *See Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989).  Similarly, the nature and length of Plaintiffs' relationship with the clients has little weight here, except to the extent that Plaintiffs started this case at the ground floor, which does not weigh in favor of reduction.  For lodestar purposes, "undesirable cases" "are those

24

in which the plaintiff is unlikely to prevail for reasons having nothing to do with the merits of the claim or the quality of the attorney's performance." *Gomez v. Gates*, 804 F. Supp. 69, 75 (C.D. Cal. 1992).  Under that definition, this case was undesirable given that it could have been mooted at any time by action from the Montana legislature.  Finally, Plaintiffs' arguments that *Brown v. Kentucky Legislative Research Commission*, 2014 WL 12862253 (E.D. Ky. May 9, 2014) (Report and Recommendations) *adopted by Brown v. Kentucky*, 2014 WL 12862645 (E.D. Ky. July 28, 2014), is the most analogous case to which this Court should look for similar awards is well-taken.  While substantively similar, in that case, the plaintiffs did not request, nor did the court require the parties to provide, proposed maps for redistricting, and the case was decided on summary judgment briefing without trial.  *See id.* at *1.  These procedural differences explain Jacobsen's concern that the plaintiffs in that case "received a lower fee award, based on lower billed hours."  (Doc. 53 at 32.)

None of the *Kerr* factors necessitate a further reduction or increase in the lodestar figure.

### III.   Paralegal Fees

Paralegal fees are recoverable under § 1988.  *Missouri*, 491 U.S. at 285.  Such fees are recoverable under the policy that "encouraging the use of lower cost paralegals rather than attorney wherever possible . . . encourages cost-effective

25

delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes." *Id.* (internal quotation marks omitted).

Plaintiffs initially requested fees for paralegal work in the amount of $3,184.00 to reflect 39.8 hours of work, (Doc. 48 at 22), but Plaintiffs withdraw $104 of that request based on 1.3 hours of work that are not compensable, (Doc. 54 at 18–19). Jacobsen does not contest the $80 an hour rate Plaintiffs request. (Doc. 53 at 26.) But Jacobsen argues that many of the requested paralegal hours should be excluded because they relate to work on Plaintiffs' proposed maps; this argument fails for the reasons stated above. Jacobsen also submitted an affidavit from a former Montana paralegal who stated that much of the type of work Plaintiffs' paralegal performed was performed by lower-paid legal assistants at the law firm where the affiant previously worked. (Doc. 53-2.) This isolated example does not compel a finding that Plaintiffs' paralegal expended an unreasonable amount of time. Plaintiffs directed work to the paralegal to "reduce[] the work hours claimed by licensed attorneys in this case," which aligns with the purposes of fee recovery under § 1988. *See Missouri*, 491 U.S. at 285. Plaintiffs are entitled to recovery of paralegal fees in the amount of $3,080.00.

## CONCLUSION

In light of the above,

IT IS ORDERED that Plaintiffs' motion for attorney fees and non-taxable costs, (Doc. 47) is GRANTED IN PART and DENIED IN PART.  It is GRANTED insofar as Plaintiffs are awarded $89,590.80 in fees, which includes paralegal fees in the amount of $3,080.00.  It is DENIED insofar as Plaintiffs seek expert fees in the amount of $5,280.00.

IT IS FURTHER ORDERED that post-judgment interest shall accrue at the rate of 1.03% from the date of the judgment until paid.  28 U.S.C. § 1961.

DATED this ___6___th day of July, 2022.

_____
Donald W. Molloy, District Judge
United States District Court